# EXHIBIT 5

# Holland & Knight

800 17th Street N.W., Suite 1100 | Washington, DC 20006 | T 202.955.3000 | F 202.955.5564
Holland & Knight LLP | www.hklaw.com

Gerald A. Morrissey III
Partner
gerald.morrissey@hklaw.com

July 15, 2025

*Via email: jkissane@wfw.com*
John Kissane
Partner
Watson, Farley & Williams LLP
120 West 45th Street, 20th Floor
New York, New York 10036

      Re:    Demand for Adequate Assurances ICO Ship Management Agreement dated August 8, 2021

Dear John:

We refer to correspondence from you dated July 14, 2025, received at 4:20 pm EDT (the "WFW Letter"), in which you, on behalf of Rose Cay Maritime, LLC ("RCM"), provided notice to Holland & Knight with respect to our client, Pennantia, LLC ("Pennantia") that, amongst other things:

(1) RCM's affiliate and/or subcontractor and/or alter ego Dove Cay, LLC (which RCM has described as RCM's "special crewing agent") ("DC") has filed notices of claims of purported maritime liens against all of the vessels in the fleet in the aggregate amount "in excess of $29 million" (the "Claims of Liens");

(2) RCM claims that the Vessel Operating Account under the parties' Ship Management Agreement, dated August 8, 2021 (the "Agreement"), is underfunded, claiming current account funding "is approximately $7,230" and that the account funding should be "in excess of $14 million per independent auditor Citrine [sic] Copperman's email on February 11, 2025";

(3) "RCM demands payment of all amounts due to the various vendors and that the Vessel Operating Account is fully funded in accordance with the previously provided budget by Friday, July 18, 2025"; and

(4) If Pennantia does not comply with RCM's payment and account funding demands, that RCM would "order the crews of the [Pennantia] vessels stop work."

Atlanta | Austin | Birmingham | Boston | Century City | Charlotte | Chattanooga | Chicago | Dallas | Denver | Fort Lauderdale
Houston | Jacksonville | Los Angeles | Miami | Nashville | Newport Beach | New York | Orlando | Philadelphia | Portland
Richmond | San Francisco | Seattle | Stamford | Tallahassee | Tampa | Tysons | Washington, D.C. | West Palm Beach

2
July 15, 2025
Watson, Farley & Williams LLP

As you are aware from our detailed correspondence to RCM on December 26, 2024, to WFW (and cc'ing Alex Parker and RCM) on February 26, 2025, and now having seen the purported invoices that form the basis for the Claims of Liens, it is Pennantia's view that RCM has manipulated the operating account to manufacture the appearance of a liquidity crisis, when that does not exist. It is Pennantia's further view that RCM has permitted, caused, or conspired with DC to concoct amounts that are not due and owing, at least $16,405,586 of which are newly invented charges for which neither DC nor RCM has any basis to claim from Pennantia, has applied grossly inflated interest rates which it knows do not apply, and has used these falsities to allege maritime liens on the vessels where none of the alleged charges would constitute maritime liens. Specifically:

**The Claimed Underfunded Vessel Operating Account**

With respect to the purported underfunding of the Vessel Operating Account, as an initial matter, it is clear that RCM has directly manipulated the operating account to artificially, and falsely, report nearly depleted funding. As you know, RCM directly controls the payments and timing of payments out of the Vessel Operating Account. With respect to the assertion that the balance yesterday, July 14, 2025, was "approximately $7,230" when the letter was sent, your letter omits a payment to the account earlier in the day of $350,000, such that the actual balance of the Vessel Operating Account at the time of your letter was approximately $357,000, and the actual balance of the Revenue Account was approximately $245,000, in total approximately $600,000.

Moreover, the true balance of the Vessel Operating Account on July 14, 2025 should have been in excess of $2.6 million. However, on July 11, 2025, RCM directed a payment of $2.3 million to DC *two weeks early*. The typical monthly payments to DC are made towards the end of each month, and specifically, the last weekly cash flow forecast that Pennantia received from RCM, on June 23, 2025, shows that payment was scheduled to go out the week of July 28, 2025, consistent with past practice. Yet RCM made that payment on July 11, 2025, apparently in an effort to manufacture this purported liquidity crisis. In addition, to further the financial manipulation, RCM appears to have moved yesterday's $350,000 deposit out of the operating account, presumably to maintain the artificially low balance in the Vessel Operating Account.

In short, the cause of the artificially low balance is RCM's direct manipulation of the balances to create the appearance of a lack of funding, not a lack of necessary funding from Pennantia. As a result, RCM's assertions that "lack of funding jeopardizes the safety to the vessels, environment and, most importantly, the seafarers," which is in turn the basis for RCM's threat to stop work, are simply fabricated.

RCM's claim that the operating account balances should be "in excess of $14 million per independent auditor Citrine [sic] Copperman's email on February 11, 2025" is similarly fabricated. First, the basis for the stated $14 million funding figure—"Citrine [sic]Copperman's email on February 11, 2025"—is based on a 13 Week Cash Flow Forecast from RCM, dated February 11, 2025. That forecast is plainly not current. However, the cash flow forecast used by Citrin improperly included an Operating Disbursement line item in the amount of $6,082,126 for "Dove

3
July 15, 2025
Watson, Farley & Williams LLP

Cay Payables." As discussed below, and repeatedly in the past, that amount is not currently due and payable and is now duplicative of amounts claimed as maritime liens in the aggregate $29.4 million Claims of Liens. The February 11, 2025 cash flow forecast also ignored the approximately $3.5 million of cash at the time in the Revenue Account and bill.com accounts. Putting aside legitimate questions that Pennantia had (and continues to have) concerning certain elements of RCM's reimbursements that appear improper under the Agreement and RCM's continued failure to substantiate reimbursements with supports that are required under the Agreement, the two corrections noted above would reduce the Citrin calculation of the "Estimated Funding Request" from $14,223,638.78 to $4,641,512.89.

With respect to funding requirements today, RCM has not provided a cash flow forecast since June 23, 2025, which is now three weeks out of date. Without a current and accurate cash flow forecast there is no basis for RCM to demand specific amounts of advance Vessel Operating Account funding levels from Pennantia. Furthermore, the general premise of RCM's 60 day funding demand is based on a misinterpretation of intent language in Annex C(e) of the Agreement, and the funding practices of the parties.

In relevant part, Annex C(e) provides that "it is the intent of the parties that the funds in the Vessel Operating Account at the time each Estimated Reimbursement Payment is made as described below should approximate sixty (60) days of estimated Management Reimbursement based the average of the most recent Actual Reimbursable Expenses and current Estimated Reimbursement, or such other formula from time to time mutually agreeable to the parties." However, RCM has not complied with the requirements of the Estimated Reimbursement Payment provisions in Annex C. RCM has not provided monthly Reimbursement Statements with details of Actual Reimbursable Expenses required under Annex C(g), which are required to substantiate Estimated Reimbursement Payments pursuant to Annex C(e). Nor has RCM provided the required monthly certification signed by a Responsible Officer in connection with actual invoices submitted for reimbursement required by Annex C(h), nor the quarterly certifications required by Annex C(i).

Nor, in any case, have the parties in practice followed the operating account founding formula or process in Annex C. As demonstrated by the long standing practice, the "such other formula from time to time mutually agreeable to the parties" has included (i) not treating the funds that are the subject of the credit receivables arrangements as currently due or owing operating disbursements, (ii) for RCM to provide 13 week cash flow estimates, and (iii) Pennantia depositing operating funds for current operations on an as needed basis, not a lump sum advance of two months of cash based on RCM's future predictions.

In sum, RCM's demand for funding of in excess of $14 million is not supported by the Agreement, the funding practices of the parties, or current or accurate estimates of funding needs. The alleged failure to fund $14 million does not present a threat to any vessel operations or safety concerns and does not present any basis for RCM's "stop work" threats. Notwithstanding the excessive demand for advance funding of 60 days of inflated estimates, Pennantia will continue, as has been

4
July 15, 2025
Watson, Farley & Williams LLP

its practice, of funding necessary current obligations for crew and third party vendors, and necessary for the safe operation of the vessels.

**The Claimed Amounts Owed**

With respect to the all of amounts claimed, there are no amounts due under the Agreement. Of the claimed amounts owed to DC, $16,405,586 of the invoices—described as "Annual Technical Management Services & Necessaries"–are comprised of purported (1) "technical management services" fees from DC to Pennantia, and (2) a 10% "cost plus" markup for "necessaries" from DC to Pennantia. There is no contractual or other basis for DC to invoice Pennantia for either "technical management services" or a 10% markup on expenses Pennantia previously paid other vendors since 2022. Indeed, the Agreement specifically provides that "[Pennantia] shall reimburse [RCM], ***on a direct pass-through basis, and without markup, for the actual direct expenses incurred by [RCM] for performance of the Crewing and Technical Management Services provided for the Vessels*** . . ." (emphasis added).

Pennantia has never seen these charges or these invoices before now, and they appear to have been generated for the purpose of filing maritime lien claims. Indeed, although the invoices purport that charges have been due and owing going back to 2022, and state "Invoice Dates" and "Due Dates" of 12/31/2022, 12/31/2023 and 12/31/2024, those invoices were never presented on those dates. DC, for its part, never charged Pennantia for the "technical management services" fees or 10% markups, nor did Pennantia agree to any such charges. Furthermore, as the quoted language above makes clear, no mark-ups for the charges now claimed were authorized under the Agreement – only actual direct expenses, which all were paid to the underlying vendors.

The balance of the amount claimed in the DC Claims of Liens, $13,004,356, relates to the (1) the deferred receivables, in a principal amount that was originally $5.5 million, and as now invoiced appears to be stated as $4,891,231. Your letter makes reference to both the original $5.5 million amount and well as appearing to refer to the current principal by the assertion that "Pennantia owes over $4 million to various vendors and Dove Cay, LLC") and (2) asserted interest on that principal of $8,113,125.

As to the principal, the deferred receivables principal is not currently due and payable, rather, the principal was to be paid either if sufficient operating revenue become available after current expenses, or in connection with the sale of vessels. Indeed, consistent with that understanding, RCM's weekly 13 week cash flow forecast did not include a "Dove Cay Payable" line item at any time until after the November 11, 2024, 13 week cash flow forcast. After that time, although RCM unilaterally claimed it was due and owing, with interest—in the amount of $9,489,869 in RCM's December 16, 2024 letter, as well as in your February 18, 2025 letter, in the most recent June 23, 2025, 13 week forecast as $9,816,307, and now in the Claims of Liens ballooning to $13,004,356—Pennantia has consistently rejected the assertions that it represents a current payable amount.

5
July 15, 2025
Watson, Farley & Williams LLP

Regarding the purported interest, you state that "interest had been accrued at 3% per month and continued to accrue," but that is plainly incorrect. Although your letter does not specifically identify a purported current interest amount, nor does your letter purport to validate the interest claimed in the Claims of Liens, the interest does not accrue at 3%. Originally there was no interest, but pursuant to the letter agreement between Dove Cay and Pennantia, dated March 31, 2024, signed by Alax Parker, DC describes the "vendor financing" (then listed as $4.9 million), and represents that "Pennantia . . has not been charged any financing charge or interest," but that "on April 1, 2024, Dove Cay will begin charging" interest "at a rate of 1% per month." Thus, to the extent that interest is accruing on the deferred receivables, the calculation is zero interest from inception to April 1, 2024, and 1% per month thereafter. It is notable that Citrin Copperman, in the February 11, 2025 email and analysis that you cite, reported the "Dove Cay Payables" claimed by RCM as $6,082,126, which reflects an interest calculation more consistent with the agreement of the parties.

**RCM's Failures to Perform Under the Agreement**

RCM continues to refuse to perform its obligations under the Agreement and is in material breach of the Agreement.

With respect to the notice to Pennantia regarding the Claims of Liens, which you state was made "pursuant to Shipman Annex C(l)," the Agreement requires that RCM certify that there are no outstanding liens on the vessels, other than maritime liens arising in due course and promptly paid when due. Agreement, Annex C(i)(iv). RCM has not done so, and indeed, despite multiple requests to RCM's counsel at Freehill, Hogan & Mahar to provide information on the basis for the lien claims, the only response we have received is to direct us to communicate with counsel for DC.

Annex C(j) of the Agreement requires RCM to keep "proper and detailed books and records of Manager sufficient to demonstrate compliance with the terms of this Agreement, and in compliance bookkeeping and/or accounting standards applicable to Manager as of the date of this Agreement." And Annex C(k) provides that:

> (k) Owner shall have the right to examine and audit the books and records of Manager at any reasonable time, which shall include Vessel records and all records sufficient to substantiate and audit the Manager's compliance with its obligations under this Agreement and any Management Agreement, and to make copies (including electronic copies of computer records) and obtain print-outs of such books and records.

Agreement, Annex C(k). Not only has RCM failed to certify that absence of liens, or provided any information on the Claims of Liens, our letter to RCM of December 26, 2024, expressly requested that:

6
July 15, 2025
Watson, Farley & Williams LLP

> Pursuant to Pennantia's rights under the Management Agreement, Pennantia formally requests that RCM promptly provide any and all of the invoices it purports are allegedly "in respect of" the $5.5 million Claimed Overdue Amounts with any and all supporting invoices and documentation, including showing that there has been no mark-up, administrative costs, or shore side costs included in such invoices. Pennantia also requests copies of any and all agreements between RCM and DC pertaining to services provided purportedly relating to the Management Agreement, and all relevant records of any and all services, charges and costs for DC performance of services to RCM or in connection with the Management Agreement or Pennantia vessels. We remind you that RCM is obligated to provide the foregoing pursuant to Sections 13(a), 18(d) and (e), and Annex C(j) and (k), among others, and failure to do so will constitute a breach of the Management Agreement."

RCM did not provide the requested information then or since, among other ongoing refusals to provide access to information.

Part II, Clause 18 ("General Administration") of the Agreement, RCM is required to provide Pennantia with documents concerning the vessels in the Pennantia Fleet:

> On giving reasonable notice, ***[Pennantia] may request, and [RCM] shall in a timely manner make available, all documentation, information and records in respect of the matters covered by this Agreement*** either related to mandatory rules or regulations or other obligations applying to [Pennantia] in respect of the Vessel (including but not limited to STCW 95, the ISM Code and ISPS Code) to the extent permitted by relevant legislation.

Agreement, Part II, Clause 18(e) (emphasis added). RCM likewise is refusing to abide by Part II, Clause 19 ("Inspection of Vessel") of the Agreement, which makes clear that this is Pennantia's right as a matter of course:

> [Pennantia] ***may at any time*** after giving reasonable notice to [RCM] inspect the Vessel ***for any reason they consider necessary***.

Agreement, Part II, Clause 19 (emphasis added).

What is really going on here is that RCM and its affiliate and sub-contractor DC, including Alex Parker and the other principals thereof, are engaging in yet another iteration of RCM's long-standing pattern of obstruction and interference with Pennantia's contemplated sale of its vessels. We expressly called this out in our letter to RCM on December 26, 2024. RCM has no rights to restrict Pennantia from selling any vessels under management with RCM, and indeed sale of vessels is expressly permitted by, and addressed in, the Agreement. Upon a sale of a vessel or vessels, the Agreement expressly terminates as to that vessel or vessels. In addition, in other

7
July 15, 2025
Watson, Farley & Williams LLP

communications we understand that RCM has expressed interest in purchasing the vessels, or Pennantia, rather than Pennantia selling vessels to a third-party buyer of Pennantia's choosing.

As potential sale options have gotten closer to fruition, RCM's obstruction has only increased. After months of stonewalling, Pennantia was forced to utilize admiralty Rule D proceedings to arrest its own vessels in order to gain access for inspection and access to records. Yet, despite this, RCM is again preventing access to the vessels, including multiple requests since July 1, 2025 for limited vessel access for inspections that to date RCM, though its counsel, has refused to confirm or provide.

The most recent effort to manufacture false charges, the filing of unsubstantiated Claims of Liens against the title of every vessel in the fleet, and concoct a false liquidity crisis through manipulation of the Vessel Operating Account in order to threaten to stop work (and presumably create yet another means to stop Pennantia's access to its vessels), is the most recent iteration of RCM's efforts to interfere with Pennantia's sale of its vessels.

We previously put RCM on notice that any attempt by RCM, or its affiliate/subcontractor DC, to leverage the Agreement to interfere with a contemplated sale would constitute a breach of its obligations to Pennantia as Owner under the Agreement, and further, may constitute unlawful interference with Pennantia's contractual relations under applicable law. This includes RCM failing to provide access to information and records relating to the vessels and management services to which Pennantia has the right to access under the Agreement. We do so again now, and furthermore, note that foreseeable damages in the event that RCM, DC or its principals persist in their course of conduct, including the threat to stop work, include damages for breach of the Agreement, damages for breach of underlying charters and contractual obligations, damages for tortious interference with a sale of the vessels and/or for loss or diminution in value of the vessels.

**In addition, please note that RCM, DC, Alex Parker, Ellen T. Arthur and Jeff Hornstein may be subject to liability and/or legal action in connection with the foregoing, including discovery requests. Accordingly, we demand that each of these entities and individuals immediately take steps to preserve and retain documents, communications, and electronically stored information relating to RCM's and DC's respective provision of services to Pennantia, Pennantia's requests for information and access to the vessels (either for Pennantia, third party inspectors or prospective purchasers), RCM's or DC's consideration of a potential purchase or other transactions on its own behalf in connection with the vessels, and the Pennantia sale process generally.**

Because of (1) RCM's manipulation of the Vessel Operating Account and underfunding claims, (2) RCM's threat to order the crews of the Pennantia vessels to stop work, (3) RCM's demand that Pennantia pay over $29 million in changes either never owed or not currently due, (4) RCM's refusal to provide all documentation, information and records regarding the vessels as requested

8
July 15, 2025
Watson, Farley & Williams LLP

by Pennantia under the Agreement, and (5) RCM's refusal to provide Pennantia access to its vessels, Pennantia has serious concerns that RCM will continue to perform under the Agreement going forward. Accordingly, Pennantia makes the following requests for adequate assurance of performance of the Agreement in compliance with its terms, specifically:

(1) Please confirm not later than 5 pm EDT on Wednesday, July 16, 2025, that RCM is withdrawing its claim to fund the Vessel Operating Account in an amount of approximately $14 million;

(2) Please confirm not later than 5 pm EDT on Wednesday, July 16, that RCM is withdrawing its demand that Pennantia pay the amounts allegedly due by Friday, July 18, 2025;

(3) Please confirm not later than 5 pm EDT on Wednesday, July 16, that RCM will not "order the crews of the [Pennantia] vessels stop work";

(4) Please confirm not later than 5 pm EDT on Wednesday, July 16, that RCM will provide to Pennantia all documentation, information and records regarding the vessels as requested by Pennantia under the Agreement; and

(5) Please confirm as soon as possible, and in no event later than 5 pm EDT on Wednesday, July 16, that RCM will provide Pennantia access to its vessels as repeatedly demanded to RCM's counsel Freehill, Hogan & Mahar.

If RCM refuses to provide the requested confirmations (and prompt performance on those confirmations) within the requested time frame, Pennantia will consider this to be a failure to provide the requested adequate assurances and reserves its right to declare RCM in repudiation of its obligations under the Agreement.

Pennantia looks forward to receiving RCM's response as a matter of urgency.

Sincerely,

Gerald A. Morrissey III
Michael J. Frevola

cc:
  Josh Trump, jtrump@contrariancapital.com
  Alex Parker, Alex@rosecaycap.com
  John Parrot, parrott@rosecaycap.com
  Ellen T. Arthur, Earthur@rosecaycap.com

9
July 15, 2025
Watson, Farley & Williams LLP

  Jeffrey Hornstein, jhornstein@rosecaycap.com
 Dove Cay, LLC
   1321 Upland Drive, Ste. 20183
   Houston, TX 77043