# Holland & Knight

787 Seventh Avenue, 31st Floor | New York, NY 10019 | T 212.513.3200 | F 212.385.9010
Holland & Knight LLP | www.hklaw.com

Michael J. Frevola, Partner
212.513.3516

July 31, 2025

Honorable Sidney H. Stein
United Stated District Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl St.
New York, NY

Re:     25-cv-5904, Pennantia, LLC v. Rose Cay Maritime, LLC and Dove Cay, LLC
        <u>Report on Mediation and Request to Order RCM to Delay the Effective Date of
        Termination of Management Agreement</u>

Your Honor,

We represent Plaintiff Pennantia, LLC ("Pennantia") and write to: (1) provide a report as to the results of the mediation between Pennantia, as plaintiff, and Defendants Rose Cay Maritime, LLC ("RCM") and Dove Cay, LLC ("DC") (collectively "Defendants") that took place yesterday, July 30, 2025, as agreed during the conference before the Court on Friday, July 25, 2025 (the "Conference"), and (2) to request that this Court issue an order delaying the proposed effective date of termination set forth in the termination notice issued by RCM dated July 24, 2025, for the reasons set forth below.

### A. The Mediation

The parties mediated before William Bennett, Esq. of Blank Rome LLP for a total of approximately ten hours yesterday, from 10:00 am to approximately 8:00 pm. Without going into the specifics of the parties' positions, the mediator facilitated substantial discussion, exchange of positions and certain factual representations, and elicited a counter offer from Defendants to Plaintiff's prior pending settlement proposals. Plaintiff made a counter offer to Defendants' counter offer, but the mediation ended without Defendants responding with a further counter offer. The exchange of offers from both parties agreed in principal, for the purposes of settlement, on a framework of settlement and on several elements of the framework, including (1) a resolution of any current third-party expenses, (2) settlement of the DC Credit Receivables, (3) settlement of new management fee invoices advanced by DC, (4) RCM/DC continuing to operate the Vessels for at least three months for an agreed monthly management fee, and (5) agreement on payment of new vender/third-party reimbursements. The settlement exchanges and framework contemplated that resolution of items 2 and 3 would resolve the DC Notices of Claims of Liens,

Atlanta | Austin | Birmingham | Boston | Century City | Charlotte | Chattanooga | Chicago | Dallas | Denver | Fort Lauderdale
Houston | Jacksonville | Los Angeles | Miami | Nashville | Newport Beach | New York | Orlando | Philadelphia | Portland
Richmond | San Francisco | Seattle | Stamford | Tallahassee | Tampa | Tysons | Washington, D.C. | West Palm Beach

and the continuation of operations would resolve the notice of termination and facilitate the process of selling the Vessels. The primary differences in the settlement exchanges concerned the total amount of certain proposed settlement payment items and the timing of certain proposed payment amounts. Assuming that Defendants are willing to agree, Pennantia is willing to have the Court inquire with the mediator as to the specific details of the mediation as well as the parties' respective positions.

### B. The Termination Notice Delay Request

As Your Honor heard during the Conference, RCM served on Pennantia a Notice of Termination, which notice advised that it will be "effective as of Friday, August 1, 2025." That Notice of Termination bases the termination on a purported breach of Part II, Clause 22(b)(i) (failure of Pennantia to pay monies owed) of the parties' Ship Management Agreement (the "Agreement").

Your Honor may recall that – during the Conference – Pennantia raised the issue that an amount of approximately $2.3 million in the Pennantia operating account was withdrawn by RCM on July 11, 2025, over two weeks early, for what Pennantia thought was a premature payment of crew wages and other operating expenses for the month of August 2025. The undersigned raised the issue to the Court of whether RCM had withdrawn those funds to apply them to interest charges claimed by DC under the disputed credit receivables arrangement among the parties (rather than to pay the crew). Your Honor asked counsel for Defendants for what purpose the $2.3 million was withdrawn: to pay the crew or for other purposes? Following that question, Your Honor indicated something to the effect that "there is only one answer to that question" (suggesting that payment of crew wages was the only proper purpose).

During the mediation yesterday, Defendants' counsel represented, with Defendants' principals present, that the $2.3 million was not used to pay the crew, but rather was applied by RCM to pay its affiliate DC's disputed interest claim under the credit receivables arrangement. This supports Pennantia's position that the Defendants manipulated the Vessel Operating Account–which RCM is obliged to manage properly–in a manner to created the appearance of a depleted account and a financial crisis (as claimed by Pennantia). Almost immediately after paying itself disputed interest with misallocated funds, RCM asserted a default against Pennantia for an alleged underfunding, asserting that "[t]he lack of funding jeopardizes the safety to the vessels, environment and, most importantly, the seafarers," asserting that Plaintiff was responsible for "insufficiently funding the vessels," and concluding that it "leaves RCM no other choice but to order that the crews of the vessels stop work."

Considering that RCM's sole stated basis for termination of the Agreement is the purported non-payment by Pennantia of amounts owed to DC, an RCM affiliate and alter-ego, Pennantia respectfully submits that RCM should not be permitted to terminate the Agreement absent a finding by this Court that the alleged financial crisis exists as presented. As set forth in our pleadings, the Vessel Operating Account in July should have had over two million dollars in it at that time, not $7,230, and the $2.3 million should have been available for August crew wages. In addition, as Your Honor is aware, when asked how much Defendents' needed to operate for 30 days, they responded with $1,600,000, which Pennantia readily agreed to pay, and in fact did pay. Pennantia therefore respectfully requests that this Court stay the intended August 1, 2025 effective

date of termination stated by RCM and issue an order for RCM to show cause why it should be allowed to terminate the Agreement under these circumstances.[1]  With the Court having already set August 12, 2025 as a hearing date for the parties' maritime lien claims, Pennantia respectfully submits that it may be convenient to set the termination issue for hearing on that same date.

Of course, Pennantia also is willing to appear before Your Honor once again to seek resolution of the parties' disputes as the parties did make progress before the mediator, and is ready and willing to provide any additional information that might be needed by the Court to resolve this issue.

We thank Your Honor for his attention to this matter, and look forward to receiving the Court's decision as to how it determines this matter should proceed.

Respectfully submitted,

HOLLAND & KNIGHT LLP

_s/ Michael J. Frevola_
Michael J. Frevola

---

[1] While Pennantia previously has explained why other issues raised by RCM as to termination (such as accelerating the unmatured credit receivables obligation) likewise are pretextual, Pennantia respectfully suggests that RCM should respond to the Court's show cause order first and Pennantia then will rebut RCM's purported termination basis (or bases).