UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PENNANTIA, LLC,

          Plaintiff,

-  against-.

ROSE CAY MARITIME, LLC,
AND DOVE CAY, LLC,

         Defendants.

Case No. 25-cv-5904-SHS

**DOVE CAY, LLC MEMORANDUM OF LAW
IN OPPOSITION TO PENNANTIA, LLC'S APPLICATION
FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**LENNON, MURPHY & PHILLIPS, LLC**
*Attorneys for Defendant Dove Cay, LLC*
Patrick F. Lennon, Esq.
Kevin J. Lennon, Esq.
Elliot T. Williams, Esq.
Steven R. Winters, Esq.
The Graybar Building
420 Lexington Avenue – Suite 300
New York, NY 10170
(T) (212) 490-6050
(F) (212) 490-6070

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.........................................................................................1

STATEMENT OF FACTS ............................................................................................1

ARGUMENT ...............................................................................................................4

I.      Dove Cay's Maritime Liens Are Valid
        and Enforceable Under CIMLA ............................................................4

II.     Dove Cay Provided "Necessaries" Under CIMLA
        and Is Entitled to a Maritime Lien .......................................................5

III.    Dove Cay Provided Necessaries to Pennantia's Vessels
        at the Direction of Rose Cay, Pennantia's Authorized Agent ...............6

IV.     Dove Cay Is Not a Mere Subcontractor,
        and the "Subcontractor Rule" Does Not Apply .....................................7

V.      Dove Cay is a Bona Fide Lienor ..........................................................11

VI.     Dove Cay's Maritime Lien Includes All Charges
        for Necessaries, Including Markups and Interest .................................12

VII.    Pennantia Will Not Suffer Irreparable Harm .......................................16

VIII.   Equity and Public Interest
        Do Not Warrant a Preliminary Injunction ...........................................17

CONCLUSION ..........................................................................................................19

## TABLE OF AUTHORITIES

**Cases**

*Atlantic & Gulf Stevedores, Inc. v. M/V Grand Loyalty,*
608 F.2d 197 (5th Cir. 1979) ................................................................................9

*Basank v. Decker,*
449 F. Supp. 3d 205 (S.D.N.Y. 2020) ..................................................................4

*Beech v. FV WISHBONE,*
113 F. Supp. 3d 1203 (S.D. Ala. 2015) ..............................................................11

*Belcher Oil Co. v. M/V GARDENIA,*
766 F.2d 1508 (11th Cir. 1985) ..........................................................................12

*Bradford Marine v. M/V "Sea Falcon"*
64 F.3d 585 (11th Cir. 1995) ................................................................................5

*Brenntag Int'l Chemicals, Inc. v. Bank of India,*
175 F.3d 245 (2d Cir. 1999) ..........................................................................16, 17

*Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.,*
601 F.2d 48 (2d Cir. 1979) .............................................................................17, 18

*Crescent Towing & Salvage Co. v. M/V ANAX,*
40 F.3d 741 (5th Cir. 1994) ................................................................................15

*Galehead, Inc. v. M/V ANGLIA,*
183 F.3d 1242 (11th Cir. 1999) ..........................................................................10

*Gelfand v. Stone,*
727 F. Supp. 98 (S.D.N.Y. 1989) ........................................................................16

*General Electric Credit & Leasing Corp. v. Drill Ship Mission Exploration,*
668 F.2d 811(5th Cir. 1982) ..................................................................................6

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,*
527 U.S. 308 (1999) ............................................................................................16

*In re Buholm Fisheries, Inc.,*
No. C03-675C, 2003 U.S. Dist. LEXIS 24970 (W.D. Wash. Sep. 2, 2003) ..........15

*In re Feit & Drexler, Inc.,*
760 F.2d 406 (2d Cir. 1985) ................................................................................16

*ING Bank, N.V. v. M/V Charana Naree,*
446 F. Supp. 3d 163 (W.D. La. 2020) ..................................................................15

*ING Bank N.V. v. M/V Temara,*
892 F.3d 511 (2d Cir. 2018) ..................................................................................4

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,*
596 F.2d 70 (2d Cir. 1979) ..................................................................................16

*JBR, Inc. v. Keurig Green Mt., Inc.,*
618 Fed. Appx. 31 (2d Cir. 2015) ..........................................................................4

*Kirno Hill Corp. v. Holt,*
618 F.2d 982 (2d Cir. 1980) ..................................................................................8

*Lewis v. N.Y. State Bd. of Elections,* No. 8:24-CV-0849 (GTS/CFH),
2024 U.S. Dist. LEXIS 162931 (N.D.N.Y. 2024) ................................................18

*Marine Fuel Supply & Towing, Inc. v. M/V Ken Lucky,*
869 F.2d 473 (9th Cir. 1988) ............................................................................7, 9

*Marine Coatings of Alabama, Inc. v. United States,*
932 F.2d 1370 (11th Cir. 1991) ............................................................................9

*Medina v. Marvirazon Compania Naviera, S.A.,*
709 F.2d 124 (1st Cir. 1983) ..............................................................................11

*Moore v. Consol. Edison Co. of New York,*
409 F.3d 506 (2d Cir. 2005) ..................................................................................4

*M/V BELNOR,*
1988 WL 71731498 (D. Mass. Apr. 15, 1988) ....................................................14

*O'Rourke Marine Servs. L.P., L.L.P. v. M/V COSCO HAIFA,*
730 Fed. Appx. 89 (2d Cir. 2018) ..........................................................................9

*Payne v. SS Tropic Breeze,*
423 F.2d 236 (1st Cir. 1997) ..................................................................................5

*Piedmont & Georges Creek Coal Co. v. Seaboard Fisheries Co.,*
254 U.S. (1920) ......................................................................................................5

*Portland Pilots, Inc. v. NOVA STAR M/V,*
875 F.3d 38 (1st Cir. 2017) ....................................................................................5

*Purgess v. Sharrock,*
    33 F.3d 134 (2d Cir. 1994) ...........................................................................................6

*Seide v. Crest Color, Inc.,*
    835 F. Supp. 732 (S.D.N.Y. 1993) ...............................................................................16

*Status Int'l S.A. v. M&D Maritime,*
    994 F. Supp. 182 (S.D.N.Y. 1998) ...............................................................................11

*Stevens Technical Services, Inc. v. United States,*
    913 F.2d 1521 (11th Cir. 1990) ....................................................................................10

*Sweetheart Cup Co. v. Buchberg Inv. Holdings, Inc.,*
    No. 02 Civ. 6576, 2005 U.S. Dist. LEXIS 47222 (S.D.N.Y. 2005) ............................8

*The OSWEGO NO. 2,*
    23 F. Supp. 311 (W.D.N.Y. 1938) ................................................................................14

*Tom Doherty Assocs. v. Saban Entm't, Inc.,*
    60 F.3d 27 (2d Cir. 1995) ..............................................................................................16

*U.S. Oil Trading LLC v. M/V VIENNA EXPRESS,*
    911 F.3d 652 (2d Cir. 2018) ........................................................................................8, 9

## **Statutes**

46 U.S.C. §§ 31341–31343 ...................................................................................... *passim*

46 USC § 31341(a) ................................................................................................... *passim*

46 U.S.C. § 31343(c)(2) ........................................................................................... *passim*

## PRELIMINARY STATEMENT

Despite Plaintiff's assertions to the contrary, Dove Cay has a quintessential maritime lien for necessaries provided at the behest of Pennantia and its authorized agent, RCM. It cannot be reasonably disputed that RCM is an authorized agent as contemplated by maritime law and the Commercial Instruments and Maritime Lien Act ("CIMLA") as it was entrusted with the management and operation of each vessel in the Pennantia Fleet by virtue of the Ship Management Agreement executed by Pennantia and RCM on August 8, 2021.

At the direction of RCM, and with Pennantia's knowledge and approval, Dove Cay provided technical management services, including, but not limited to, paying operational expenses, paying crew wages, providing food and supplies, and providing transportation—each of which was critical to the maintenance, navigation, and safety of the vessels. Dove Cay is entitled to a maritime lien for the provision of its services and necessaries to the vessels and Pennantia's arguments to the contrary are unsupported by law or fact and are merely efforts to avoid paying for the necessaries provided by Dove Cay. Accordingly, this Court should deny Pennantia's request for injunctive relief and find that Dove Cay has valid maritime liens.

## STATEMENT OF FACTS

This matter arises out of the bankruptcy of the Bouchard Transportation Co., Inc. ("Bouchard"), following numerous operational and safety issues, including a catastrophic casualty with loss of life, which led to the loss of ABS classification and the recission of U.S. Coast Guard ("USCG") issued Certificates of Inspection ("COI") for the Bouchard fleet of vessels. With the loss of its certifications, the Bouchard fleet became commercially unviable and the vessels were distressed and deteriorating assets that were disposed of during the Bouchard bankruptcy. *See*, Declaration of Alex J. Parker ("Parker Decl.") at ¶ 9.

Plaintiff, Pennantia, LLC ("Pennantia" or "Plaintiff") purchased eighteen vessels of the Bouchard fleet during the bankruptcy, consisting of ten (10) barges and eight (8) tugs (the "Pennantia Fleet" or "Vessels"). In summer 2021, Rose Cay Maritime ("RCM") was formed for the purpose of returning a portion of the Bouchard fleet to life and commercially operate the vessels in a safe and profitable manner. *See*, Parker Decl. at ¶ 10. Pennantia and RCM entered into a Ship Management Agreement ("Shipman") dated August 3, 2021 by which RCM would act as a commercial manager responsible for the management and operation of each vessel in the Pennantia Fleet. *Id.* at ¶ 18, 26–28. RCM and Pennantia worked together to engage Foss Maritime Company, LLC ("Foss") to provide technical, crew, and commercial management to the Pennantia Fleet, which was reflected by Foss's identification as the technical manager in the Shipman between Pennantia and RCM. *See,* Exhibit 1 to Parker Decl.

In or about November of 2021, it started to become apparent that Foss was unable to perform the services required to effectively manage and provide necessaries to the Pennantia Fleet and was unable to timely and safely return the fleet to service. *See,* Parker Decl. at ¶ 34–37. These issues were further compounded by Pennantia's underfunding of operating accounts used by Foss to manage and supply the vessels. Due to the breakdown in the relationship, Foss ultimately issued a notice of termination on February 2, 2022, for an effective termination date of March 2, 2022, following which Foss instituted an arbitration before the Society of Maritime Arbitrators against Pennantia and RCM to recover unpaid costs and fees, alleging liens for necessaries, crew wages, and interest.

Following the deterioration of the relationship with Foss, RCM sought a replacement technical manager and contacted multiple industry fixtures but was unable to find a suitable replacement for Foss without incurring extensive additional costs and operational shutdowns. *See*,

Parker Decl. at ¶ 39–40. During this period, Foss continued to manage the Pennantia Fleet on an *ad hoc* basis and worked to transition the technical management of the fleet to RCM. *Id.* at ¶ 41–43. On or about April 14, 2022, RCM engaged Dove Cay, LLC ("Dove Cay") to step into the shoes of Foss and take over as technical manager and supplier of necessaries to the Pennantia Fleet. *Id.* at ¶ 41.

Since April 14, 2022, Dove Cay has provided technical management services, including the provision of necessaries, payment of crew wages, and transportation, to the vessels in the Pennantia Fleet and has been either directly or indirectly paid by Pennantia for the provision of some of these services. *See,* Parker Decl. at ¶ 47–52.[1] Pennantia was aware that Dove Cay was stepping into the role vacated by Foss and authorized the services and necessaries provided by Dove Cay, both on its own and through its authorized agent RCM. *Id.* at ¶ 50–52. Despite its awareness of and benefit derived from Dove Cay's services, Pennantia routinely failed to adequately fund the operation and costs of the Pennantia Fleet in an effort to operate the fleet in an "artificially capital constrained business model." *Id.* at ¶ 54. To date, Pennantia has failed to pay over $29,000,000 to Dove Cay for services and provisions of necessaries to the Pennantia Fleet. *Id.* at ¶ 57. In direct reliance on the individual vessel's credit within the Pennantia Fleet, Dove Cay deferred invoices for its technical management services and the reimbursement of necessaries. *Id.* at ¶ 59. Ultimately, Dove Cay filed Notices of Liens with the USCG for each vessel in the Pennantia Fleet due to the outstanding amounts owed to Dove Cay, following which Pennantia instituted this action.

---

[1] On July 31, 2025, Dove Cay provided a notice of termination of services to Pennantia with an effective date of August 1, 2025 but continues to provide services on an *ad hoc* basis, as was previously done by Foss.

**ARGUMENT**

Pennantia seeks a Temporary Restraining Order and Preliminary Injunction, as against Dove Cay, prohibiting it from pursuing its Notices filed with the USCG NVDC against the various Vessels. It is well established that "the standard for an entry of a [temporary restraining order] is the same as for a preliminary injunction," *Basank v. Decker,* 449 F. Supp. 3d 205, 210 (S.D.N.Y. 2020), and that both "[are] an extraordinary and drastic remedy…that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005). "To successfully seek a preliminary injunction, a moving party must show four elements: (1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief." *JBR, Inc. v. Keurig Green Mt., Inc.*, 618 Fed. Appx. 31, 33 (2d Cir. 2015). Because Pennantia has failed to carry its burden as to any of the four elements by clear evidence, it is not entitled to the relief it seeks against Dove Cay.

I.    **Dove Cay's Maritime Liens Are Valid and Enforceable Under CIMLA**

Pennantia argues that Dove Cay does not have a maritime lien on the Vessels and, therefore, Pennantia is likely to succeed on the merits of its underlying claim. Pennantia is incorrect. A party has a valid and enforceable lien under the Commercial Instruments and Maritime Lien Act ("CIMLA"), where it has: (1) provided goods or services that were "necessaries;" (2) that the party claiming the lien provided the necessaries to the vessel; and (3) that the necessaries were provided "on the order of the owner or a person authorized by the owner." *See, ING Bank N.V. v. M/V Temara*, 892 F.3d 511, 518–19 (2d Cir. 2018); *see also,* 46 U.S.C. §§ 31341–31343. Dove Cay has unquestionably provided necessaries to the Vessels and has done so upon the authority of Pennantia

and/or a person authorized by Pennantia, namely RCM, Pennantia's authorized agent pursuant to the Shipman. Dove Cay's claims are fully supported by the statutory text of CIMLA, the presumptions of authority under admiralty law, and long-standing principles of commercial necessity and fairness in maritime commerce.

## II.  Dove Cay Provided "Necessaries" Under CIMLA and Is Entitled to a Maritime Lien

The term "necessaries," as contemplated by CIMLA, includes such items and services as "repairs, supplies, towage, and the use of a dry dock, and are to be liberally construed to include what is reasonably needed in the ship's business." *Piedmont & Georges Creek Coal Co. v. Seaboard Fisheries Co.*, 254 U.S. 1, 10 (1920); *see also, Bradford Marine v. M/V "Sea Falcon,"* 64 F.3d 585, 589 (11th Cir. 1995) (holding that the term necessaries is "liberally construed to include what is reasonably needed in the ship's business, such as goods or services that are useful to the vessel, keep her out of danger, and enable her to perform well the functions for which she has been engaged.").

In order to determine whether services are "necessaries" within the meaning of CIMLA, and thus support the assertion of a maritime lien, "[t]he appropriate test…is whether the goods or services in question were necessary to the continued operation of the vessel." *Bradford Marine,* 64 F.3d at 589 (quoting *Payne v. SS Tropic Breeze*, 423 F.2d 236, 241 (1st Cir. 1997)). Dove Cay provided necessaries to the Vessels through its provision of technical management services, including, but not limited to, paying operational expenses, paying crew wages, providing food and supplies, and providing transportation—each of which was critical to the maintenance, navigation, and safety of the Vessels. *See, e.g.*, Parker Decl. at ¶ 53; *Portland Pilots, Inc. v. NOVA STAR M/V,* 875 F.3d 38, 44–45 (1st Cir. 2017) (holding that the provision of laundry equipment and services constituted necessaries and engaging in extensive analysis and identifying that "transportation of

drinking water, food, drilling equipment, and supplies;" "water taxi service to and from vessel;" insurance for the vessel; and accounting services could all be considered necessaries giving rise to a maritime lien); *General Electric Credit & Leasing Corp. v. Drill Ship Mission Exploration*, 668 F.2d 811, 813–15 (5th Cir. 1982) (holding that "[o]ne who advances money to pay crew's wages is entitled to a maritime lien" and that the provision of food was similarly necessary to the vessel). The services and supplies provided by Dove Cay are exactly the type that are routinely recognized by courts as necessaries within the meaning provided for by CIMLA giving rise to a maritime lien.

Pennantia has admitted that the services provided by Dove Cay are essential to the functional operation of the Vessels as one of its core arguments is that the cessation of these services would "be a complete shut down of all commercial operations of the Vessels" and could lead to unsafe conditions. *See, e.g.*, Pennantia's Memo. at p. 14–16 (ECF No. 1); *see also*, *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact."). By Pennantia's own admission, the services provided by Dove Cay are exactly the type of services that constitute necessaries supporting Dove Cay's maritime lien.

### III.    Dove Cay Provided Necessaries to Pennantia's Vessels at the Direction of RCM, Pennantia's Authorized Agent

In order for a maritime lien to exist, the services need to have been provided at the direction of the vessel's owner or by a person authorized by the vessel's owner. CIMLA provides, in pertinent part, that "a person entrusted with the management of the vessel at the port of supply" and/or "an officer or agent appointed by – (A) the owner; (B) a charterer; (C) an owner pro hac vice; or (D) an agreed buyer in possession of the vessel" is presumed to have the authority to procure necessaries for a vessel. *See,* 46 USC § 31341(a). Here, Dove Cay provided services to the Vessels at the request of RCM, who was unambiguously authorized to act on Pennantia's behalf

by virtue of the Shipman which expressly authorized RCM, as the manager of the Vessels, to "take such actions as they may from time to time in their absolute discretion consider to be necessary to enable them to perform the Management Services in accordance with sound ship management practice" and to delegate or subcontract any of the management services, including technical management. *See*, Exhibit 1 to Parker Decl.; *see, also, Marine Fuel Supply & Towing, Inc. v. M/V Ken Lucky*, 869 F.2d 473, 476–77 (9th Cir. 1988) (holding that the managing agent of the vessel's disponent owner was a person authorized to bind the vessel and whose orders could create a maritime lien). Additionally, Pennantia executed a power of attorney, appointing RCM as their authorized agent to:

> (i) bind Pennantia with respect to contracts, agreements and undertakings related to the operations of Pennantia, including but not limited to charter agreements, repairs and maintenance, bunker fuel, ship yard agreements, insurance and other standard day to day requirements of the business (the "Contracts"), (ii) through the authorized signatories of Rose Cay, set forth in Exhibit A, make, execute and deliver all Contracts on behalf of Pennantia; and (iii) to do and perform generally all such acts and things that shall be necessary or convenient in order to carry out the foregoing.

*See,* Exhibit 2 to the Parker Decl. By the plain language of CIMLA, the Shipman, and the power of attorney, RCM was an authorized agent whose orders could bind the Vessels and create maritime liens. Dove Cay provided necessaries to the Vessels on RCM's orders and, as such, Dove Cay has a valid maritime lien for the necessaries it provided to the vessels in the Pennantia Fleet.

## IV.    Dove Cay Is Not a Mere Subcontractor, and the "Subcontractor Rule" Does Not Apply

Pennantia unconvincingly argues that Dove Cay was a subcontractor and thus is prohibited by the general maritime rule that a subcontractor retained by a general contractor cannot assert a maritime lien. However, Pennantia's reliance on the so-called "subcontractor rule" is misplaced and fails for two reasons: (1) Dove Cay is not a subcontractor as its services were rendered at

RCM's instruction, in RCM's capacity as the manager of the Pennantia Fleet and an authorized agent of Pennantia under the Shipman; and (2) Pennantia had a significant and ongoing involvement with, and awareness of, Dove Cay's services.

Clause 3 of Part II of the Shipman states:

> The Managers shall carry out the Management Services in respect of the Vessel as agents for and on behalf of the Owners. The Managers shall have authority to take such actions as they may from time to time in their absolute discretion consider to be necessary to enable them to perform the Management Services…

This is a clear and express grant of agency authority from Pennantia to RCM to act on behalf of the Vessels. RCM's authority was not merely ministerial but rather included absolute discretion to act on behalf of Pennantia and take actions necessary to ensure proper ship management. *See, e.g., Kirno Hill Corp. v. Holt,* 618 F.2d 982, 985 (2d Cir. 1980) ("Federal maritime law…embraces the principles of agency"); *Sweetheart Cup Co. v. Buchberg Inv. Holdings, Inc.*, No. 02 Civ. 6576, 2005 U.S. Dist. LEXIS 47222, at * 6 (S.D.N.Y. 2005) (engaging in analysis of cases interpreting a grant of "absolute" or "sole" discretion and finding that it was limited only by the obligation of good faith and fair dealing inherent in any contract). The engagement of Dove Cay to replace Foss as the original technical manager named in the Shipman falls squarely within this authority.

Pennantia relies on *U.S. Oil Trading LLC v. M/V VIENNA EXPRESS*, 911 F.3d 652 (2d Cir. 2018) for the proposition that a subcontractor cannot assert a maritime lien. Pennantia's reliance on the "subcontractor rule" is misplaced because this rule does not apply to Dove Cay. As stated in *M/V VIENNA EXPRESS*, and as quoted in Pennantia's motion, the "subcontractor rule" only applies to "[s]ubcontractors who deal with a contractor or a middle-man," *id.* at 662, which has no application here where Dove Cay dealt with RCM, the appointed manager of the Vessels and Pennantia's authorized agent, pursuant to the Shipman. In short, the "subcontractor rule" does not apply because Dove Cay is not a subcontractor.

Pennantia's interpretation of the "subcontractor rule" is so broad that it threatens to swallow the entire concept of a maritime lien. Pennantia argues that the vessel owner itself has to be involved in the selection of a service provider in order for a maritime lien to arise, but this is directly contrary to the holding in *M/V VIENNA EXPRESS* and contrary to the widely accepted law of maritime liens. The court in *M/V VIENNA EXPRESS* clearly states that the "subcontractor rule" does not apply where "an entity authorized to bind the ship controlled the selection of the subcontractor and/or its performance." *M/V VIENNA EXPRESS,* 911 F.3d at 663. It is an axiom of maritime law that an authorized agent may bind a vessel and lead to the creation of a maritime lien, and there is no requirement, as Pennantia suggests, that the vessel owner itself has to be involved in the process of selecting a service provider. *See, e.g.*, 46 USC § 31341(a) (outlining those parties, other than the owner, who have presumptive authority to bind a vessel and create a maritime lien); *O'Rourke Marine Servs. L.P., L.L.P. v. M/V COSCO HAIFA,* 730 Fed. Appx. 89, 91 (2d Cir. 2018) (noting that a party would have a maritime lien if they adduced evidence that they had been hired by a statutorily authorized person or if a statutorily authorized person had selected them as a supplier); *M/V Ken Lucky,* 869 F.2d at 477 ("A claimant's dealing with an intermediary at the port rather than a charterer or owner does not preclude the existence of a lien.").

Moreover, courts have recognized that "prior authorization by the owner to the party procuring the repairs is not an essential requisite to preserving a lien position" and that a maritime lien may arise where a vessel owner, or its authorized agent, such as RCM here, gives "authorization, either factual or fairly presumed, given prior to or during performance of the services, or ratified subsequent to performance." *Marine Coatings of Alabama, Inc. v. United States,* 932 F.2d 1370, 1376 (11th Cir. 1991) (citing *Atlantic & Gulf Stevedores, Inc. v. M/V Grand Loyalty,* 608 F.2d 197, 202 (5th Cir. 1979); *see also*, *Stevens Technical Services, Inc. v. United*

*States,* 913 F.2d 1521, 1534–35 (11th Cir. 1990) (holding that a maritime lien was valid where the vessel owner was aware of the service provider, and was involved in "discussing, testing and inspecting work done by" the service provider).

Here, RCM—as Pennantia's authorized agent—selected Dove Cay, and Pennantia was not only aware of and accepted the benefit of Dove Cay's services, but they have also made partial payment and have expressly acknowledged Dove Cay's role in providing necessaries to the Vessels *See,* Parker Decl. at ¶ 50–52. Instructively, in *Galehead, Inc. v. M/V ANGLIA*, 183 F.3d 1242 (11th Cir. 1999), the Eleventh Circuit recognized that a lien may attach to a vessel even without formal authorization, provided the vessel owner's involvement with the subcontractor was "significant and ongoing." *Id.* 183 F.3d at 1245 ("Where the level of involvement between the owner and the third-party provider was significant and ongoing during the pertinent transaction, the courts have found a triable issue of fact about whether the third-party deserved a lien."). This is exactly the case here, as Pennantia knew of Dove Cay's provision of services, has made partial payments for Dove Cay's services, and continued to benefit from Dove Cay's services without objection. *See*, Parker Decl. at ¶ 50-52.

This is not a situation where Dove Cay is some distant subcontractor retained by a general contractor and unknown to the vessel owner, as is the case in the authorities relied upon by Pennantia. Rather, Dove Cay was specifically designated by RCM with Pennantia's knowledge and provided services to the Vessels upon the authorization of RCM, in its capacity as the Vessel's manager under the Shipman. Pennantia had actual knowledge of Dove Cay's role, was actively engaged in negotiations with Dove Cay, received invoices, accepted Dove Cay's services, made payments and never objected to Dove Cay's involvement. Pennantia's subcontractor rule argument lacks any merit.

## V.       Dove Cay is a Bona Fide Lienor

Pennantia also argues that because Dove Cay and RCM share common ownership or executives, Dove Cay should be denied its lien rights as an "insider." This is both legally and factually incorrect. Maritime law only denies liens to owners or part-owners of vessels. *See, Beech v. FV WISHBONE*, 113 F. Supp. 3d 1203, 1211–12 (S.D. Ala. 2015). Maritime law follows the federal common law on corporate separateness and in analyzing corporate identity. *See, Status Int'l S.A. v. M&D Maritime*, 994 F. Supp. 182, 186 (S.D.N.Y. 1998) (holding that a party had failed to overcome the presumption of corporate separateness and dismissing an alter ego claim). Dove Cay and RCM are separate legal entities and the presumption of corporate separateness applies to them and should not be disregarded. Pennantia merely declares, *ipse dixit*, that "RCM and DC are corporate doppelgangers" without bothering to engage in any required factual assertions much less any veil piercing analysis. Given Pennantia's abject failure to allege any facts supporting an alter ego claim, its argument that Dove Cay is not a stranger to the Vessels is without merit and should be ignored. *See, id.* (dismissing plaintiff's claims where the sole allegation was that one party was "wholly owned" by another and holding that "[t]his allegation alone is insufficient to overcome the presumption of corporate separateness.").

Furthermore, Pennantia's attempt to characterize Dove Cay as an owner, joint venturer, or party with a "beneficial interest" is likewise unsupported by fact or law. Dove Cay does not appear on any vessel registry, it has no equity, title, or dominion over the Vessels, and it acted strictly as a service provider retained by RCM. The equitable bar against owners asserting liens is inapplicable, as that rule protects third-party creditors from insiders—not bona fide necessary suppliers like Dove Cay. *See*, *Medina v. Marvirazon Compania Naviera, S.A.*, 709 F.2d 124 (1st Cir. 1983).

Similarly, Pennantia's argument that Dove Cay is not entitled to a lien on the supposed basis that it knew RCM lacked authority to bind the Vessels is without merit. Pennantia asserts that the Shipman provides that Pennantia will reimburse RCM on a pass-through basis, without markup, for "the actual direct expenses incurred by [RCM] for performance of the Crewing and Technical Management Services provided for the Vessels" and that—on the basis of its insufficient alter ego assertion—Dove Cay knew that RCM was not entitled to a markup for its services. Absent from this argument is any indication that RCM was not an authorized agent with the authority to bind the Vessels as contemplated by CIMLA. The fact that RCM may have been prohibited from earning a markup under the Shipman has no bearing on the value of the services provided by Dove Cay to the Vessels. In short, Pennantia's contention that Dove Cay may or may not have known of RCM's contractual limits under the Shipman, such as reimbursement caps, is irrelevant. It is only actual notice of a prohibition on liens, or express lack of authority, and not contractual pricing limitations, which may serve to defeat a lien under CIMLA. *See*, *Belcher Oil Co. v. M/V GARDENIA*, 766 F.2d 1508, 1512 (11th Cir. 1985).

## VI.    Dove Cay's Maritime Lien Includes All Charges for Necessaries, Including Markups and Interest

Dove Cay's liens against the Vessels total over $29 million, comprised of:

1. $16.4 million for technical and crewing services (including reimbursements and a standard 10% markup); and

2. $13 million in unpaid invoices and accrued interest (including $5.5 million principal and accrued interest).

*See,* Parker Decl. at ¶ 57.

### A.  Pennantia's objection to the markup is legally irrelevant.

CIMLA does not require services to vessels be provided at "cost" and Pennantia's arguments regarding the amount of Dove Cay's liens are entirely unavailing because Dove Cay's liens are related to amounts actually incurred in the provision of necessaries to the Vessels and, in any event, are reasonable. What matters is whether such services qualify under CIMLA as necessaries—and as explained above, the clearly do. Further:

- The 10% markup was standard industry practice;

- Pennantia had knowledge of and a fair opportunity to object to the pricing but failed to do so;

- Pennantia accepted Dove Cay's services rendered to its Vessels and issued partial payment.

*See,* Parker Decl. at ¶ 49–52.

The Shipman between Pennantia and RCM does not prohibit Dove Cay from charging markup and interest for services provided by Dove Cay. The fact that RCM may have agreed to provide services to Pennantia "at cost" and without markup or interest has no legal effect on Dove Cay's provision of services to the Vessels pursuant to its agreement with RCM. Dove Cay is not a party to the Shipman. Its rights and pricing terms arise exclusively from its own contractual relationship entered into with RCM, as the authorized agent of Pennantia and is not governed by the terms of the Shipman.

Under basic principles of contract and corporate law:

- A principal's agreement with its agent does not automatically restrict the agent's subcontracting relationships;

- A subcontractor's pricing and credit terms are governed by its own agreement with the contractor—not by upstream agreements to which it is not a party.

Here, Dove Cay contracted directly with RCM, Pennantia's authorized agent, to provide services for Pennantia's fleet of vessels. That contract allowed for, or at least did not prohibit, standard shipping industry markups and commercially reasonable interest on deferred payments for services rendered. Whether or not RCM passed those costs along to Pennantia at cost is immaterial to Dove Cay's right to charge for its own services rendered to Pennantia's Vessels.

If Pennantia contends RCM breached the Shipman by allowing markups, that may be a matter of contractual adjustment between Pennantia and RCM, but it does not function to retroactively alter, or somehow invalidate, Dove Cay's entitlement to be paid at the rates it agreed with RCM.

### B. Pennantia Accepted the Benefits of Dove Cay's Services Without Objecting to Pricing or Interest

Pennantia's argument that interest should be categorically excluded from Dove Cay's maritime liens is unsupported by maritime law, ignores longstanding commercial practice, and relies on outdated or distinguishable case law.

The cases cited by Pennantia—*The OSWEGO NO. 2*, 23 F. Supp. 311 (W.D.N.Y. 1938), and *M/V BELNOR*, 1988 WL 71731498 (D. Mass. Apr. 15, 1988)—do not hold that interest is never part of a lien but rather address interest in equity-based contexts where lien enforcement was delayed or prejudiced by laches. In *OSWEGO NO. 2*, interest was denied due to delay in enforcement and was not based on a bright-line rule. In *BELNOR*, the court limited rather than excluded interest due to the timing of the lien claim—something that is easily distinguishable here, where Dove Cay has acted diligently to assert its liens against Pennantia's Vessels. The cases Pennantia relies upon do not reflect the current understanding of CIMLA and lien jurisprudence under standard commercial arrangements.

Courts have consistently held that interest may be included in the amount of a maritime lien, particularly where it is agreed to by contract, customary in the trade; or fair under the equities of the case. *See*, *e.g.*, *Crescent Towing & Salvage Co. v. M/V ANAX*, 40 F.3d 741, 744 (5th Cir. 1994) ("[T]he maritime lien includes the principal debt, interest, and reasonable attorney's fees, where provided for in the contract."); *General Elec. Credit Corp. v. Drill Ship Mission Exploration*, 668 F.2d 811, 815 (5th Cir. 1982) ("The term 'necessaries' includes the contract price, including *interest if agreed or customary*."). It borders on trite law that "interest is included in the value of maritime lien." *In re Buholm Fisheries, Inc.*, No. C03-675C, 2003 U.S. Dist. LEXIS 24970, at *5 (W.D. Wash. Sep. 2, 2003); *see also*, *ING Bank, N.V. v. M/V Charana Naree*, 446 F. Supp. 3d 163, 176 (W.D. La. 2020)("[t]he court has discretion to award pre-judgment interest under a CIMLA maritime lien" and the "granting [of] such an award is almost automatic.").

CIMLA does not limit maritime liens to the "principal" alone. Section 31342(a) creates a lien in favor of a person who "provides necessaries" without parsing the component parts of what is owed. Courts interpreting that provision routinely include interest, attorneys' fees, and other charges if they arise from the underlying contract or customary practice. If the contract or course of dealing between Dove Cay and RCM/Pennantia includes deferred payment with interest—as reflected in the Dove Cay's Credit Receivables invoices—then the entire amount billed is "due" and recoverable via a maritime lien. *See also*, 46 U.S.C. § 31343(c)(2) (providing that "the court may award costs and attorney's fees to the prevailing party, unless the court finds that the position of the other party was substantially justified").

Dove Cay's Credit Receivables include a standard commercial interest component, explicitly invoiced as part of the credit terms for deferred payment. There is no evidence that

Pennantia ever objected to those terms before defaulting. Having accepted the benefits, Pennantia is estopped from disavowing the agreed financing costs after the fact.

## VII. Pennantia Will Not Suffer Irreparable Harm

Pennantia concedes that the only harm it alleges it will suffer is monetary harm which is not the type of harm that warrants the issuance of a preliminary injunction. *See, e.g., Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) ("For it has always been true that irreparable injury means injury for which a monetary award cannot be adequate compensation and that where money damages is adequate compensation a preliminary injunction will not issue."). In order to escape this fatal flaw in its claim for injunctive relief, Pennantia cites to a number of cases[2] for the proposition that monetary harm can constitute irreparable harm in situations involving obligations owed by insolvents.

Specifically, Pennantia cites to *Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999); *In re Feit & Drexler, Inc.*, 760 F.2d 406 (2d Cir. 1985); *Gelfand v. Stone*, 727 F. Supp. 98 (S.D.N.Y. 1989); and *Seide v. Crest Color, Inc.*, 835 F. Supp. 732 (S.D.N.Y. 1993) in support of its position that monetary harm can constitute irreparable harm where the movant has demonstrated that the debtor has demonstrated the intent to frustrate any judgment. Pennantia's reliance on these cases is misplaced as, in each of the cited cases, the moving party sought a prohibitory injunction precluding the transfer of funds by the non-moving party, whereas here, Pennantia is seeking a mandatory injunction, requiring Dove Cay to dismiss its maritime liens. *See, e.g., Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) ("The typical preliminary injunction is prohibitory and generally only seeks to maintain the status quo pending

---

[2] It should be noted that Pennantia cites generally to *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 219–20 (1999) in support of the proposition that monetary harm can constitute irreparable harm in certain circumstances. Review of this decision, however, does not reveal any discussion of this topic and the Court even stated that the issue of irreparable harm was **not** raised on appeal. *Id.* at 334, n.1 (Ginsburg, J. dissenting).

a trial on the merits. A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act.").

Furthermore, in *Brenntag*, the court noted that "a perhaps more accurate description of the circumstances that constitute irreparable harm is that where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag*, 175 F.3d 245, 249. Pennantia concedes the harm it alleges is monetary in nature and has articulated no basis to support its argument that, were it to be successful on its underlying claims, which is denied, a monetary award would not adequately return it to the position it previously occupied. In fact, the only argument Pennantia makes is by way of alleging that RCM—but not Dove Cay—has previously breached the Shipman and the unsupported and self-serving assertion that "there is evidence that Defendants would be judgment proof." *See,* Pennantia Memo. at 26 (ECF 10). In falling woefully short of the "show, don't tell" axiom, Pennantia fails to carry its burden that it would suffer anything other than monetary harm or that Dove Cay has in any way attempted to frustrate any potential judgment in Pennantia's favor. Pennantia has failed to establish that it would suffer irreparable harm absent the issuance of a preliminary injunction dismissing Dove Cay's maritime liens. Therefore, Pennantia is not entitled to an injunction.

## VIII. Equity and Public Interest Do Not Warrant a Preliminary Injunction

Pennantia must also show that the "balance of equities [tips] decidedly toward" them. *See, Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 54 (2d Cir. 1979). In order to meet this burden, Pennantia must show that "the hardship suffered by the moving party if the preliminary injunction is denied will be so much greater that it may be characterized as a 'real hardship,' such as being 'driven out of business…before a trial could be held.'" *Lewis v. N.Y. State*

*Bd. of Elections,* No. 8:24-CV-0849 (GTS/CFH), 2024 U.S. Dist. LEXIS 162931, at * 4 (N.D.N.Y. 2024) (quoting *Buffalo Courier-Express, Inc.*, 601 F.2d at 58). Pennantia has failed to evidence that it would suffer a hardship to the extent that the equities tip decidedly in its favor.

Pennantia engages in no substantive argument or analysis of the equities and instead simply posits that equity weighs in favor of granting the preliminary injunction because absent the dismissal of Dove Cay's valid maritime liens, "the Vessels ***may*** wind up unmanned…***could*** cause a marine or environmental hazard, and Pennantia ***could*** lose their pending sale." *See,* Memo. at 27 (emphasis added). However, not only are Pennantia's claims to hardship entirely speculative, they have, at least in part, been mooted as the Vessels remain appropriately manned and crewed.[3] Further, Pennantia's argument that it ***could*** lose a purportedly pending sale, for which no documentation has been made available, does not rise to the level of hardship equal to being driven out of business since Pennantia would be in the exact same position as it is now as the owner of an extensive maritime fleet. On the other hand, if the preliminary injunction were granted, it would invalidate Dove Cay's maritime liens, effectively disposing of Dove Cay's in rem rights provided under CIMLA and granting Pennantia the substantive relief it requests in its underlying Complaint without the benefit of an actual trial on the merits following discovery.

Finally, and as noted earlier, there is no longer any risk that the Vessels would be unmanned or pose a risk to the public—nor was there ever any actual risk of such—and so there is absolutely no public interest in granting Pennantia a preliminary injunction.

---

[3] Even if this were not the case, Pennantia's arguments are without merit as even if RCM and/or Dove Cay ceased providing crewing services, Pennantia could, and would be responsible for, engaging other manning services, as is routinely done on a *custodia legis* basis in maritime proceedings.

## CONCLUSION

Pennantia has failed to establish any of the elements necessary for the issuance of a preliminary injunction. Dove Cay kept Pennantia's Vessels maintained, crewed and operational after the former technical manager, Foss, failed to do so. Dove Cay provided essential services that qualify as "necessaries" under CIMLA, in the "absolute discretion" of RCM as Pennantia's duly authorized agent. Pennantia accepted the benefits of Dove Cay's services, failed to object, and now shamefully seeks to escape responsibility through its litigation strategy asserting hyper technical and entirely unavailing defenses to Dove Cay's claims. There is no risk that Pennantia will suffer any irreparable harm and the balance of equities weighs against granting a preliminary injunction. This Court should deny Pennantia's request to issue a preliminary injunction, fully enforce Dove Cay's maritime liens against the Vessels, and reject Pennantia's attempt to nullify the liens through strained arguments that are contrary to law, fact, and equity.

Dated: New York, New York
August 4, 2025

> DOVE CAY, LLC
>
> _/s/ *Kevin J. Lennon*_____
> Kevin J. Lennon, Esq.
> Steven R. Winters, Esq.
> Elliott T. Williams, Esq.
> Patrick F. Lennon, Esq.
> LENNON, MURPY & PHILLIPS, LLC
> The GrayBar Building
> 420 Lexington Ave., Ste. 300
> New York, NY 10170
> Tel.    (212) 490-6050
> Fax.    (212) 490-6070
> kjl@lmplaw.net
> srw@lmplaw.net
> elliott.williams@lmplaw.net
> pfl@lmplaw.net
>
> *Counsel for Defendant Dove Cay LLC*