The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – Phone
(212) 490-6070 - Fax

1599 Post Road East
Westport, CT 06880
(203) 256-8600 – Phone
(203) 255-5700 - Phone
(203) 256-8615 – Fax
(203) 255-5702 - Fax



August 7, 2025

<u>*Via ECF*</u>
Honorable Sidney H. Stein
United Stated District Court Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *Pennantia, LLC v. Rose Cay Maritime, LLC and Dove Cay, LLC*
           U.S. District Court – Southern District of New York
           Case No.      25-cv-5904 SHS
           LMP Ref.:     6816

Dear Judge Stein,

      We represent Defendant, Dove Cay, LLC ("DC") and write in response to the latest improper letter motion filed by Plaintiff, Pennantia, LLC ("Pennantia") last evening. *See, ECF No. 36.*

      Pennantia's aforesaid letter motion violates S.D.N.Y. Local Rule 7.1 ("L.R. 7.1"). *See, Citibank N.A. v. Super Sayin' Publ'g, LLC*, 2017 U.S. Dist. LEXIS, at *2-4 (S.D.N.Y. March 1, 2017); *Shehaid v. Lifson*, 2011 U.S. Dist. LEXIS, at * fn 2. (S.D.N.Y. Sept. 22, 2011). This is a basis for the Court to summarily dismiss Pennantia's letter motion.

      The thrust of Pennantia's letter motion is to ask this Court, with no legal basis offered, to lift a Panamanian vessel arrest. This is absurd and should be rejected. This Court should, instead, adhere to basic principles of international comity and allow Pennantia to raise whatever arguments it believes it may have to the Panamanian court. Paraphrasing your Honor's recent determination, in response to another of Pennantia's inappropriate letter motion, "If Pennantia believes that defendants have improperly [arrested the vessel], it may seek to [vacate the arrest] in the course of [the Panamanian] litigation." *See, ECF No. 25.* In any event, Pennantia's request flies in the face of the "practice in [the S.D.N.Y.] to allow Supplemental Rule B attachments of [property] in amounts . . . awarded or expected to be awarded in separate proceedings." *See, Golden Horn Shipping Co. v. Volans Shipping Co.*, 2016 U.S. Dist. LEXIS 51037, at *13 (S.D.N.Y. Apr. 15, 2016)(confirming the issuance of a Supplemental Rule B attachment in aid of a London

Arbitration). DC's arrest and attachment of the RCM 270 and tug Lynne Rose is no different than the practice in this District. As explained below, DC has fully secured its claims against Pennantia without arresting the entire Pennantia Fleet.

Pennantia's submission of a Declaration from PBF Holding Company LLC ("PBF"), as the charter of the arrested vessel, is also stridently improper and, moreover, irrelevant. PBF is not a party to this action and lacks standing before this Court. Pennantia and PBF are in contractual privity and PBF should be dealing strictly with Pennantia. While Pennantia couches this as an exercise in mitigation it should be noted that by virtue of the vessel arrest that DC has fully secured its *in personam* claims against the vessel owner by attachment and the question of whether DC has valid maritime liens is immaterial to the *in personam* attachment. Additionally, DC has avoided the need to carry out multiple arrests of the Pennantia Fleet in order to secure its claims. Hence, DC has in fact acted to mitigate and reduce the business exposure and disruption to Pennantia. Further, and as this Court is no doubt well aware, the custom and practice in vessel arrests is to post substitute security in a form and amount agreed by the parties, or directed by the Court, in order to release the arrested vessel. Pennantia has failed to do so and offered no rationale for its failure. However, had it done so the vessel would be underway to California and PBF's claims would be eliminated. Rather than proceed on this customary route (and perhaps Pennantia cannot because it is artificially capital constrained), or even challenge the arrest in Panama, Pennantia brough this issue to your Honor in an improper letter motion to address the arrest. However, Pennantia offers only its nonspecific theory regarding a Panamanian legal action, here, rather than in Panama, which simply improper. Pennantia fails to offer DC any security for its *in personam* and *in rem* claims. Plainly, it could have arranged security and then challenged the arrest but it failed do so. Instead, it has come to this Court with its improper and insufficient letter motion which should be summarily rejected.

DC is also obliged to dispel Pennantia's assertion that it, along with Rose Cay Maritime, LLC, ("RCM") are "in full operation control" of the Pennantia fleet. Just yesterday Pennantia intervened with non-party McAllister Towing and Transportation ("McAllister") to redirect the RCM 260 to Brooklyn, NY instead of Philadelphia, PA as had been directed by RCM. *See Exhibit 1 attached hereto consisting of emails between McAllister and DC counsel.* Pennantia also redirected the RCM 262 from Providence, RI to New York. As the Court is aware, RCM was the ship manager for the Pennantia fleet and DC provided crewing to the Pennantia fleet. The email exchanges attached hereto show that (a) DC (and RCM) do not actually have "full operational control" of the Pennantia fleet and (b) Pennantia is interfering with the operations of the Pennantia fleet although both RCM and DC are obliged to continue to render services. As a result, the RCM 260, a tank barge, that Pennantia has ordered to NY, with dirty bottoms and without the accompaniment of a tug boat, in case of emergency, that will strand crews, instead of safely at the lay berth that DC has arranged for, or at a minimum with the accompaniment of a tug from the Pennantia Fleet. Pennantia's orders actively interfere with DC's obligation to ongoing obligation to safely crew the Pennantia Fleet, until Pennantia appoints a substitute crewing and technical manager, giving rise to potential violations of U.S. Coast Guard's regulations and RCM's SMS, among many others.

This brings us to the reality of the untenable situation created by Pennantia. RCM and DC were compelled to terminate agreements regarding the Pennantia fleet due to Pennantia's chronic

arrears, under-funding and non-funding of critical expenses in connection with RCM and DC's rendering of services and provision of necessaries to Pennantia's fleet. However, due to the fact that Pennantia has not replaced RCM, nor has it sold the Pennantia Fleet, RCM (which holds the Document of Compliance required for the continued operation of the Pennantia fleet) and DC (which provides the crews and necessaries) are still rendering those services and provision of necessaries to Pennantia's fleet but lack any funding from Pennantia to continue to do so. Rather than address DC's reasonable requests to address the ongoing funding deficiency, and to provide a clear plan to move forward with specifics and a timeline, Pennantia opts to litigate and/or or ignore the reality of the situation. Pennantia has shown its intention to obfuscate and distract from the underlying issues that caused the ship management termination, including its chronic underfunding and the creation of a hostile work environment, with frivolous litigation, false statements, unreasonable demands, all the while driving up costs to DC, who respectfully asks the Court to intervene and help address and mitigate while it continues to provide "safe manning" to Pennantia's fleet but remains without funding from Pennantia to continue to do so.

In keeping with your Honor's directive that the parties should continue with the mediation process, DC filed a submission with the mediator, attorney Bill Bennett, yesterday at 3:30 p.m. in which it detailed the aforementioned untenable situation created by Pennantia. Mr. Bennett promptly acknowledged the DC submission and requested a response from Pennantia counsel as to how they wish to proceed. Pennantia counsel "responded" at 6:07 p.m. by ignoring all of DC's serious ongoing operational concerns, and instead proposing the nonsensical transfer of vessel arrest (while copying Mr. Bennett into its email and advising that they would respond separately to DC's correspondence, but failing to do so) and unilaterally imposing an 8:00 p.m. deadline for DC to respond. When DC did not agree to Pennantia's unreasonable request, citing at a minimum a basic need to confer with Panamanian counsel, Pennantia then submitted its inappropriate letter motion at 9:27 p.m.

Giving further context to Pennantia's penchant to engage in litigation by email, and its desire to dictate the terms of engagement, is its filings earlier this week. Pennantia counsel wrote the undersigned at 3:44 p.m. on August 4 to demand documents regarding the Panamanian arrest. Although not known to Pennantia counsel, this was while I was undergoing a root canal. The undersigned wrote Pennantia counsel at 7:01 p.m. to acknowledge his message, letting him know I had been undergoing root canal when he wrote, but had relayed the request and would need to take instructions from Panamanian counsel. Instead of making further inquiry, Pennantia rushed to file a letter motion to compel (again in violation of L.R. 7.1 and this Court's Individual Rule 2(G)) with the Court seeking substantive relief (ECF No. 34) at 12:51 p.m. on Tuesday. Having received guidance from its Panamanian counsel, DC furnished Pennantia with the requested documents at 2:58 p.m. and demanded that Pennantia withdraw its letter motion by 5 p.m. With apparent recognition of the inappropriateness of its course of conduct, Pennantia withdrew its letter motion. *See, ECF No. 35.*

Clearly, Pennantia views matters very one-sidedly and has elected to engage in litigation tactics that should not be countenanced by this Court. Pennantia previously elected to wait less than one day to file an inappropriate, and now withdrawn, letter motion. Pennantia proceeded to wait less than 4 hours to file a further inappropriate letter motion. DC elects, instead, to recommend that because there are clear and compelling circumstances for the resolution of the circumstances

put in motion by Pennantia's conduct that the Court hold a conference on August 12, 2025 following the hearing set for 11:00 a.m. on the validity of DC's maritime liens. At such a conference the issues submitted by DC to the mediator, and which Pennantia has failed to address, notwithstanding its promise of a response, can be raised with your Honor for resolution and/or briefing on a schedule agreed by the parties or set by the Court.

      Finally, in connection with your Honor's request for an accounting, DC includes herewith its accounting of the funds received from Pennantia. As your Honor will observe, Pennantia's July 29, 2025 payment of $1.6M resulted in a funding shortfall of roughly $800,000 for July. Additional funds of approximately $763,000 still resulted in a shortfall of almost $21,000 for July. It is now a full week into August and Pennantia has made no further funding for DC to continue to provide crews, services, and necessaries to the Pennantia Fleet which gives rise to the immediate concerns set forth herein and now coupled with Pennantia's operational interference, renders it next to impossible for DC to continue to provide "safe manning" as ordered by the Court. This is particular the case where Pennantia has failed and/or refuses to provide DC with funds to do so. Pennantia's continued failure to provide the necessary funding and interference will force DC to take further risk mitigation measures to ensure the crews, environment, and vessels are safe.

Respectfully submitted,

Kevin J. Lennon

KJL/bhs
Encl.