HOLLAND & KNIGHT LLP
Michael J. Frevola
F. Robert Denig
Chiara Kalogjera-Sackellares
787 Seventh Avenue
New York, New York 10019
michael.frevola@hklaw.com
robert.denig@hklaw.com
chiara.sackellares@hklaw.com
Telephone: 212.513.3200
Fax: 212.385.9010

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Pennantia, LLC,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>Rose Cay Maritime, LLC, and<br>Dove Cay, LLC,<br><br>　　　　　Defendants. | In Admiralty<br><br>Case No. 1:25-CV-05904-SHS<br><br>**DECLARATION OF CHRISTOPHER CRESCENZO** |

I, Christopher Crescenzo, declare as follows:

　　　1.　　I am a Director at Citrin Cooperman & Company, LLP, a licensed independent CPA firm ("Citrin").

　　　2.　　Citrin provides Pennantia, LLC ("Pennantia") financial services such as month-end bookkeeping, general accounting support, financial reconciliation, review of financial statements, including Pennantia balance sheets, and assistance with preparation of financial certifications to Pennantia's lenders.

3. Citrin has provided the foregoing services from about the time Pennantia commenced operations in 2021 to the present, and I have been actively engaged on the Pennantia account since approximately March 2023.

4. Upon information and belief, Rose Cay Maritime, LLC ("RCM") is the manager of the Pennantia vessels under a Ship Management Agreement between Pennantia and RCM dated August 8, 2021.

5. Pennantia's day-to-day financial transactions and financial information reviewed by Citrin is managed by RCM and generally provided by RCM from RCM's internal operational and financial software systems, including VMS and Helm, RCM's use of a Bill.com platform and associated Bill.com account, and RCM's access to a Vessel Operating Account.

6. The Vessel Operating Account and Bill.com were jointly accessible and controllable by both Pennantia and RCM.

7. Pennantia also has a Vessel Revenue Account for direct deposit of operating revenue (such as revenue from third-party vessel charters).

8. RCM had viewing access, but not control access, to the Vessel Revenue Account.

9. In the normal course of business, it was Pennantia's practice to periodically transfer funds from the Vessel Revenue Account, and/or from other sources, into the Vessel Operating Account.

10. In the normal course of business, other than Pennantia's deposits into the Vessel Operating Account, the use and disbursement from the Vessel Operating Account was managed by RCM.

11. In the normal course of business, RCM would transfer funds from the Vessel Operating Account to Bill.com, which was used by RCM to manage accounts payable.

12.     In the normal course of business, RCM would post vendor invoices to Bill.com and pay vendor invoices from Bill.com.

13.     For a relatively short period of time, until approximately mid-2022, RCM's crewing and technical manager was Foss Maritime Company, LLC ("Foss").

14.     From approximately mid-2022 until the recent present, RCM's crewing and technical manager was RCM's affiliate Dove Cay, LLC ("DC").

15.     In the normal course of business, RCM posted DC invoices to Bill.com on a monthly basis for the crewing and technical management expenses expected to be incurred for each subsequent month.

16.     A sampling of DC invoices is illustrative. Invoice DC20240301, dated due on March 1, 2024, describes the crewing charges as "March-24" crewing. Invoice DC20240701, dated due on July 1, 2024, describes the crewing charges as "July-24" crewing. True and correct copies of the referenced invoices are attached as Exhibits 1 and 2, respectively.

17.     The line items on the monthly DC invoices in Exhibits 1 and 2 are representative of the monthly DC invoices that I have seen during my involvement with the Pennantia account, which listed line item categories for the following:

- "Total Crew incl. Benefits, Travel & Grub," with a sub-allocation for specific vessels;

- "Shoreside Team" expenses, including sub-line items for "Operations," "Engineering," "Bookkeeper," "HSEQ," "Regulatory," "Purchasing," and "Personnel," each of which listed a number of employees for each category, none of which were allocated to any specific vessel or vessels;

3

- "Provision for T&E Expenses," which was a fixed $45,000 per month, which was not allocated to any specific vessel or vessels; and

- "Admin Expenses," which was a fixed $55,000 per month, which was not allocated to any specific vessel or vessels.

18. Neither the representative invoices at Exhibits 1 and 2 – nor any other DC monthly invoice that I have seen during the course of my work with RCM and Pennantia – included a charge for either (a) a 10% markup on other vendor invoices or (b) additional fixed management or overhead fees (other than the $55,000 "Admin Fee," the $45,000 "Provision for T&E Expenses," and the various "Shoreside Team" charges that appeared to include office and/or administrative expenses for "Bookkeeper" and undefined "Personnel").

19. During the course of my review of invoices for this Declaration, it has come to my attention that DC monthly invoices currently in Bill.com, including Exhibits 1 and 2, had recently been re-uploaded to Bill.com. The information button next to the invoice DC20240301, for example, showed that the copy of the March 2024 invoice was posted to Bill.com on May 8, 2025.

20. Except for information button showing new received/uploading dates, the system does not show that changes were made to re-uploaded invoices.

21. Citrin did not receive any notice from RCM or the Bill.com system that changes were being made, and there is no indication on the face of the invoices themselves indicating what information was modified or changed , e.g., the recently re-uploaded past invoices in Bill.com do not include the kind of references typically found on re-issued or replaced invoices, such as stating that an invoice has been "revised" or "re-issued," stating a date of reissue, or otherwise flagging or identifying changed on new information.

22. Pennantia, through its counsel, provided copies of invoices DC20240301 and Invoice DC20240701, which I was advised that Pennantia had downloaded and saved from Bill.com around the time they were originally posted. The enclosed two invoices bear the same invoice numbers, dates, and financial information as the invoices in Exhibit 1 and 2, but neither contain the language that appears at the bottom of the invoices currently in Bill.com. True and correct copies of the referenced invoices are attached as Exhibits 3 and 4.

23. The current versions of the reloaded invoices from Bill.com in Exhibits 1 and 2 appear identical to the copies of invoices provided by Pennantia in Exhibits 3 and 4, except that the re-uploaded versions in Exhibits 1 and 2 have additional language on the bottom of each invoice stating:

> Balances are due upon receipt of this invoice, 30-days prior to service. If the balance of an invoice is not paid in full on due date a late fee of 3% per month monthly per Pennantia - SHIPMAN 2009 Box 13, will be applied to all balances past due. Please note that if there are invoice balances past due, then all payments received will be applied to first to accrued late fees and interest, then to the outstanding principal balance on past due invoices.
>
> If unpaid invoices are referred for collection, the Customer will be charged for all associated costs and expenses, including attorney fees.[1]

### The DC Credit Receivables Purchase and Deferral Arrangements

24. Since the time I became involved with Pennantia and RCM I was aware that Pennantia had been contending with working capital shortfalls, which I have been advised related to over budget costs of returning vessels to service and that Contrarian Capital Management, L.L.C. ("CCM") and RCM, on information and belief, the owners of Pennantia, addressed by

---

[1] I understand from counsel for Pennantia that more recent invoices that have been issued by DC contain slightly revised (but generally similar) language at the bottom of those invoices.

entering into credit receivables purchase and deferral arrangements with DC, although I am not aware if any definitive agreement or agreements were entered into regarding deferrals.

25. Based on information and belief, to address the working capital shortfalls, starting on or about July 2022 through 2024, CCM purchased approximately $6 million of DC receivables, which Pennantia treats as debt. Based on information and belief, CCM has not sought repayment of principal or interest, nor has Pennantia repaid principal or interest, on the CCM credit receivables to CCM.

26. Based on information and belief, also to address the working capital shortfalls, during that same time period Pennantia, RCM and DC began deferring payment of approximately $5.5 million of past DC receivables by keeping the most recent two to three monthly DC invoices open on a rolling basis, and applying each new payment to the oldest trailing prior DC invoice in a process that maintained the approximately $5.5 million DC credit receivables balance, and kept open DC invoices under 90 days.

27. The consistent practice was that – when RCM paid DC each month for DC to pay its expenses for the subsequent month – RCM (and upon information and belief DC) accounted for the payment to DC by applying the prior invoice that was shown on the books as due over 60 days, on a rolling basis, such that no DC invoices would be outstanding over 90 days.

28. While I was not privy to any agreements between Pennantia, RCM and or DC on the handling of the $5.5 million DC credit receivables deferrals, the typical rolling balance of the deferred DC invoices was approximately $5.5 million.

29. Regarding interest, the DC credit receivables balance originally bore no interest.

30. In April 2024, RCM provided a copy of an agreement between DC and Pennantia dated March 31, 2024, modifying the interest agreement on the DC credit receivables principal,

which provided that, as of April 1, 2024, interest would begin accruing on the DC credit receivables principal at 1% per month. A true and correct copy of the March 31, 2024 DC/Pennantia agreement is attached as Exhibit 5.

31. As of April 1, 2024, I therefore began calculating the interest accrual on the DC credit receivables principal balance on the books of Pennantia at 1% interest per month.

32. In or about November or December 2024, Alex Parker requested that I recalculate the interest accrual on the DC credit receivables back to its origination at a 3% per month rate.

33. Because that was not consistent with the reported calculation in Pennantia's prior audited and certified annual financial statements, and conflicted with the March 31, 2024 DC and Pennantia agreement to commence 1% interest accrual as of April 1, 2024 (*see* Exhibit 5), after initially performing the requested 3% calculations and discussing with Pennantia, I reverted to the 1% post April 1, 2024 calculation. Citrin has continued to calculate and report the interest accrual since that time on the basis of the agreed upon terms, i.e., no interest through March 31, 2024, and 1% per month from April 1, 2024.

**RCM/DC Request to Calculate Vessel Operating Account Advance Funding**

34. On February 7, 2025, Alex Parker of RCM provided me with a "13-week cash flow forecast" dated February 4, 2025 and requested that I calculate what the amount of funding would cover 60 days of estimated expenses based on the estimates provided by RCM in its 13-week cash flow forecast.

35. Prior to that time, I had not been involved with calculation of, or reviewing, the level of funding for the Vessel Operating Account.

36. The 13-week cash flow forecast provided by RCM included a line item for a lump sum of $9,761,102 stated as immediately payable the week of February 3, 2025, described as

7

"Dove Cay Payables."  A true and correct copy of the RCM February 4, 2025 13-week cash flow forecast is attached as Exhibit 6.

37. I understood the "Dove Cay Payables" as a reference to the DC credit receivables.

38. I had not previously seen any 13-week cashflow forecast, nor any forecast or invoice from RCM or DC, seeking immediate payment of a lump sum amount for the DC credit receivables or "Dove Cay Payables."

39. RCM provided the 13-week cash flow forecast in a PDF format, which therefore did not show any underlying calculations, however, the $9,761,102 "Dove Cay Payables" appeared to be based on a calculation of interest at 3% per month instead of interest of 1% per month from April 1, 2024.

40. Pursuant Mr. Parker's request, I calculated an estimate of funding for 60 days of funding based on RCM's 13-week cashflow forecast; however, as to the "Dove Cay Payables" amount, I recalculated RCM's stated amount based on Citrin's previous accounting for the DC credit receivables principal and accrued interest based on 1% per month from April 1, 2024, which was also consistent with Pennantia's audited annual financial statements based on the same calculation, which at that time I calculated as $6,082,126.  A true and correct copy of my February 2025 calculations is attached as Exhibit 7.

41. Other than the interest calculation noted above, I did not evaluate the underlying basis for any of the forecasted revenue, collections, balances or disbursements stated in RCM's 13-week cash flow forecast, nor did I evaluate RCM's basis for including the entire Dove Cay Payables balance and accrued interest as an immediately payable Operating Disbursement.

42. I circulated the calculation at that time to Pennantia (including Josh Trump) and to RCM/DC (including Alex Parker).

8

**Alex Parker's 2025 Request to Estimate What DC's Management Fees Would Have Been if DC Had Charged on the Basis of the Foss LOA**

43. In or about February or March 2025, Alex Parker requested that I perform a calculation of what DC would have charged if DC's charges had been based on the terms of a "Letter of Agreement Concerning Rose Cay Fleet" that RCM had entered with Foss on August 3, 2021 (the "LOA").

44. For the purpose of the requested calculation, Alex Parker provided me a copy of the Foss LOA. A true and correct copy of the LOA is attached as Exhibit 8.

45. I performed a calculation on the basis of the Foss LOA dated August 3, 2021 in Exhibit 8.

46. I did not perform the calculation on the basis of any amendment to the Foss LOA, and specifically I did not perform the calculation on the basis of Amendment 8 to the Foss LOA. I recall that I had seen a reference to an amendment No. 8, and that I received a copy of Amendment 8, but I did not perform the calculations on the basis of Amendment 8.

47. I performed the requested calculation for the relevant periods in 2022, 2023, 2024, and for January to April 2025. A true and correct copy the "Summary", "Management Fee" and "Outside Mgmt Fee by Vessel" tabs of my calculations are attached as Exhibit 9.

48. In material respects, the calculation comprised two main elements: (1) a 10% markup of all operating costs paid by Pennantia for those periods, i.e. the payments for third party vendor invoices, and (2) an additional daily fixed management fee for the vessels.

49. I calculated the totals as $5,262,798 and $10,659,594, and in aggregate, $15,922,393.

50. I have since reviewed the four "Dove Cay Management" invoices that DC recently posted to Bill.com for 2022, 2023, 2024 and January-April 2025, stating "Invoice Dates" and "Due

Dates" of 12/31/2022, 12/31/2023, 12/31/2024 and 5/1/2025, respectively, and the "Dove Open Invoices Statement" with a "Statement Date" of July 1, 2025 (the "Lien Invoices"). True and correct copies of the Lien Invoices are attached as Exhibit 10.

51. The Lien Invoices were not presented, or posted on Bill.com, on or near the stated invoice dates, but rather all appeared for the first time on about July 2, 2025.

52. Prior to seeing the foregoing Lien Invoices in July 2025, I have never seen the referenced Lien Invoices at any time prior to July 2025.

53. Prior to recently seeing the foregoing Lien Invoices, I have never seen DC charges reflected therein for a 10% markup on Pennantia's third party vendor payments since 2022 or the additional DC fixed management fees since 2022, which together amount to $16,405,586 of the total $29.4 million aggregate amount of the Lien Invoices.

54. I understand from Pennantia's counsel that the Lien Invoices are the basis for the notices of claims of liens recorded by DC against the vessels on July 7, 2025, in an aggregate amount of $29.4 million.

55. The aggregate totals of the five Lien Invoices appear to be comprised of three components: (1) a 10% markup on all operational costs paid by Pennantia; (2) an additional fixed management fee per vessel; and (3) the DC credit receivables balance and accrual of interest based on a rate of 3% per month, in a stated amount of $13,004,356.

56. The foregoing invoices and categories appear to be based on a calculation of amounts as if DC had charged on the basis of an agreement with a 10% markup on reimbursed pass though costs and with additional fixed management fees, similar in concept to the calculation estimate that I had undertaken for Alex Parker earlier in 2025 (at Exhibit 9), but calculating slightly different and higher total amounts than reported in my "Summary" tab in Exhibit 9, and a

10

calculation of the DC credit receivables with interest accrual based on 3% rate from inception, along with what appears to be periodic application of portions of cash payments of DC invoices not fully applied to the invoices paid, but partially paid to claimed interest, resulting in additional accrual of daily interest also at 3%.

57. Based on information and belief, none of the $16,405,586 of the underlying Lien Invoices, described as "Annual Technical Management Services & Necessaries," represent amounts that ever were due or owing, or unpaid, for crew costs or "necessaries" provided to the vessels. Rather, the claimed amounts are markups claimed by DC from RCM or Pennantia for acting as an agent, not for the provision of funds to pay crew wages or for goods or supplies provided to vessels.

58. Based on information and belief, the $13,004,356 remainder of the Lien Invoices is based on the principal of the DC credit receivables, with interest accrual based on 3% per month back to 2022, and with RCM also allocating portions of invoice payments to partial payments of accrued interest.

59. I have subsequently reviewed Addendum 8 to the Foss LOA, which I understand from Pennantia's counsel was executed on or about April 8, 2022. A true and correct copy of the Foss LOA Amendment 8 is attached as Exhibit 11.

60. The rates and charges agreed in Foss LOA Amendment 8 are materially different than the rates and charges in the original Foss LOA of August 3, 2021.

61. I have since performed a similar calculation of what DC would have charged RCM/Pennantia under the Foss LOA previously requested by Alex Parker in early 2025, but taking into account LOA Amendment 8.

62. I concluded that if DC had applied the rates and terms of the Foss LOA, as amended by Amendment 8, DC would have charged RCM/Pennantia approximately **$64,862,093**.

63. Actual charges issued by DC, and paid by RCM to DC, from the inception of DC's services to date, total **$77,184,873**.

### RCM's Recent Payments to DC

64. I was asked to review the recent DC invoices and payment records in Bill.com.

65. DC's invoice for July 2025 expenses posted to Bill.com, bearing Invoice No. DC2025070, in the amount of the $2,379,251, was dated June 16, 2025, stated a due date of July 1, 2025, and was paid by RCM to DC on June 25, 2025. To the best of my knowledge and belief, a true and correct copy of the invoice, which was provided to me by counsel for Pennantia and represented as a copy downloaded from Bill.com contemporaneously with the invoicing and/or payment in June 2025, is attached as Exhibit 12.

66. The June 16, 2025 invoice, dated due on July 1, 2025, and paid in the last week of June 2025, is consistent with the practice of paying in advance the payment for the DC crewing and technical management expenses for the month of July 2025.

67. I was also provided, and I reviewed, a copy of a new version of the June 16, 2025 invoice (the "New June 16 Invoice"), which was represented to me as having recently been submitted by counsel for DC as an exhibit in a submission to the Court in this proceeding, apparently for use as evidence by DC of recent payments of Pennantia's funds from RCM to DC. A true and correct copy of the New June 16 Invoice, Document 37-2, Filed 08/07/25, is attached as Exhibit 13.

68. The New June 16 Invoice in Exhibit 13 bears the same invoice number DC20250701, the same June 16, 2025 invoice date, and the same July 1, 2025 due date as the

original June 16, 2025 invoice at Exhibit 12 that RCM used Pennantia funds to pay DC on June 25, 2025 for DC's July 2025 crewing and technical management expenses.

69. Despite the same invoice number and date, and identical "Total Crew incl. Benefits, Travel & Grub" (i.e. food), in both versions of the invoices is $1,933,960, but for unknown reasons, two sub-line items for the same number of "Shoreside Team" – for "Engineering," and for unidentified "Personnel" employees – was increased by $4,673 more than the amount originally-invoiced on June 16, 2025.

70. Despite the relatively small difference, as stated above, the $2,379,251, amount invoiced on June 16, 2025 for July expenses was paid to DC on June 25, 2025.

71. The New June 16 Invoice at Exhibit 13 also adds a new section at the bottom of the page in a box labeled "Payments Received," which reports the following three payments and dates:

- $1,600,000.00, on 7/29/2025,
- $318,000.26, on 7/31/2025,
- $445,010.31, on 7/31/2025,

for a total of "Payments Received" of $2,363,010.57.

72. The New June 16 Invoice at Exhibit 13 appears to apply the three stated payments to DC totaling $2,363,010.57 to the balance of the June 16, 2025 invoice (as stated in the revised invoice as $2,383,924) and reports an "Invoice Balance Due" to DC of $20,913.43.

73. However, the "Payments Received" section of the New June 16 Invoice omits multiple other payments made by RCM to DC in June/July 2025 totaling an additional $4,781,041:

- The June 16, 2025 invoice balance of $2,379,251 was paid by RCM to DC from Pennantia funds from Bill.com on June 25, 2025, which payment is omitted from the "Payments Received" section of the New June 16 Invoice at Exhibit 13.

- A July 3, 2025 payment of $1,804 from RCM to DC from Bill.com for crew related reimbursements is omitted from the "Payments Received" section of the New June 16 Invoice at Exhibit 13.

- A July 7, 2025 payment of $76,079 from RCM to DC from Bill.com for payment of RCM's lawyers in connection with the EDNY Rule D action is omitted from the "Payments Received" section of the New June 16 Invoice at Exhibit 13.

- RCM's payment to DC of $2,323,907 from Bill.com on July 11, 2025, which I confirmed was paid to DC from Bill.com is omitted from the "Payments Received" section of the New June 16 Invoice at Exhibit 13.

74. The New June 16 Invoice at Exhibit 13 does not show that the "Payments Received" were used for payment of current crewing expenses in July 2025 and the stated funding deficit of $20,913.43 is not accurate.

75. The June 25, 2025 payment to DC of $2,379,251 (omitted from the "Payments Received" section of the New June 16 Invoice) was for DC's July 2025 crewing and technical management expenses.

76. Although RCM's payment of the $2,323,907 to DC on July 11, 2025 (omitted from the "Payments Received" section of the New June 16 Invoice) was approximately two weeks early, the payment of that sum in July reflects RCM's advance payment of DC's August 2025 crewing and technical management expenses. However, because RCM did not post a DC invoice for August crewing to Bill.com, it is not clear what RCM or DC used the funds for.

77. As to the omitted payments, I have no personal information on why DC omitted them from a statement of "Payments Received", but it appears from Bill.com that RCM allocated those payments to older invoices, as follows: INV20250529-REIMB for the $1,804 amount,

14

INV20250512-REIMB for the $76,079 legal bill amount and invoices INV20250527-REIMB, INV20250205-REIMB, INV20250627-REIMB, INV20250430-REIMB for the remainder.

78. RCM did not provide any information on the basis for, or the use of, any of the three "Payments Received" listed on the New June 16 Invoice at Exhibit 13 that indicate use of those payments for July 2025 DC crewing or technical expenses:

- The $1.6 million payment on July 29, 2025, was not paid via Bill.com; instead, it was wired by RCM to DC directly from the Vessel Operating Account without any indication of its use or allocation.

- The two remaining "Payments Received" in the amounts of $318,000.26 and $445,010.31 were paid by RCM to DC from Pennantia funds in Bill.com, and indicated that RCM allocated those payments to an invoice from April 2025 (suggesting RCM was paying down a portion of the DC credit receivables, not using the funds for current July 2025 expenses).

- The three payments withdrew all of the remaining funds in the Vessel Operating Account and the Bill.com account.

79. To accurately reflect payments received by DC on the basis of the New June 16 Invoice, and subsequently received by DC from RCM using Pennantia funds, the "Payments Received" section of the New June 16 Invoice should also include the (1) $2,379,251 June 25, 2025 payment, and (2) the July 11, 2025 $2,323,907 payment.

80. Taking into account the actual payment of the June 16, 2025 invoice for July expenses on June 25, 2025 and the payment of $2,323,907 on July 11, 2025, it does not appear that the $1.6 million payment or any of the "Payments Received" should have been used for July 2025 DC Crewing expenses.

15

80. Taking into account the actual payment of the June 16, 2025 invoice for July expenses on June 25, 2025 and the payment of $2,323,907 on July 11, 2025, it does not appear that the $1.6 million payment or any of the "Payments Received" should have been used for July 2025 DC Crewing expenses.

81. Taking into account the additional payments to DC of $4,781,041 that are omitted from the "Payments Received" section of the new June 16 Invoice, the "Invoice Balance Due" of $20,913.43 is not accurate, and should instead reflect a positive credit balance of at least between $4,703,158 to $4,760,127.57 (depending on the appropriateness of the two direct reimbursements of $1,804 and $76,079).

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Philadelphia, Pennsylvania, this 10th day of August 2025.

*Christopher Crescenzo*
Christopher Crescenzo