Exhibit 2

DocuSign Envelope ID: BBAC7EE7-F9CB-4C5C-B47D-B2F333778AE8



**Subject:**     **Letter of Agreement Concerning Rose Cay Fleet ("LOA")**

Dear John Parrott,

1.  Effective as of August 3, 2021 ("**Effective Date**") and with reference to the above and further to our discussions over numerous weeks, Rose Cay Maritime, LLC ("**Company**") has selected Foss Maritime Company, LLC ("**Contractor**") as the preferred contractor for Company's assessment, transition and management of a fleet of vessels ("Vessels") recently purchased from bankruptcy and managed by Company (the "**Project**"). Company and Contractor may from time to time hereinafter be referred to individually as a "**Party**" or collectively as the "**Parties.**"

2.  Company intends to award the Project to Contractor subject to the execution of a mutually acceptable Fleet Management Agreement between Company and Contractor ("**Agreement**").

3.  This LOA authorizes Contractor, and Contractor hereby undertakes, upon execution of this LOA, to act as agent on behalf of Company and provide administrative, logistics, survey, engineering work, providing vessel crew, and any other appropriate activities, as requested in writing, via email or other means, by Company's authorized agents, employees, or officers (the "**Work**") in order to facilitate the planning and performance of the Project.  While Company authorizes Contractor to act as its agent in performance of these preliminary tasks, Contractor shall obtain Company's express, written consent, via email or other means, prior to undertaking any contractual obligation reasonably anticipated to exceed $10,000.00 for any single scope of work or purchase.  Such advance written consent does not apply to Contractor's fees and expenses for work undertaken by Contractor itself for Company which will be paid by Company at the rates specified in *Attachment No. 1*.

4.  Company and Contractor further agree:

    a)  that subject to the terms and conditions contained herein, this LOA is intended to be a legally binding document;

    b)  to negotiate in good faith in an effort to reach a mutually acceptable Agreement; and

    c)   that by entering into this LOA, the Parties are not agreeing that the terms and conditions contained herein and applicable during the term of the LOA will be incorporated into the Agreement.

5.  Notwithstanding any other provision of this LOA, either party may terminate this LOA at any time and in its sole discretion upon 30 days' prior written notice.

    In the event either party terminates this LOA prior to execution of the Agreement, or in the event that no Agreement is agreed within ninety (90) days of the date hereof ("**Target Date**"), or by the Extended Target Date defined in accordance with **Article 6** below, Contractor shall be paid for all Work performed at the rates specified in *Attachment No. 1*, and shall be reimbursed all costs and charges: (i) incurred for the Work by Contractor**,** (ii) related to cancellations for contracts or other committed costs that Contractor can end by the date of such termination, (iii) for contracts that Company consented to and Contractor cannot end by the date of such termination, and (iv) all other committed costs that Contractor cannot end by the date of such termination; provided that Contractor exercises reasonable efforts to mitigate such costs and charges. Company shall defend and

DocuSign Envelope ID: BBAC7EE7-F9CB-4C5C-B47D-B2F333778AE8

indemnify Contractor for all contractual obligations undertaken on Company's behalf in accordance with **Article 3**.

6. In the event the Agreement is not executed by Contractor and Company by the Target Date, this LOA shall expire unless the Target Date is extended by mutual written agreement of the Parties ("**Extended Target Date**"). If the LOA expires, however, Company shall have no further obligation to Contractor other than as stipulated in this LOA, and Contractor shall be entitled to terminate any Work previously undertaken and shall have no further obligation whatsoever to Company.

   The ownership of the non proprietary Work undertaken by Contractor shall pass to Company for use only on or in connection with the Project.

7. This LOA shall not be amended or modified unless mutually agreed in writing by the Parties.

8. All communications on this matter shall be sent to:
   a) Company for the attention of John Parrott (parrott@rosecaycap.com); Collier Walsh Nakazawa (barbara.holland@cwn-law.com) _____; and
   b) Contractor for the attention of Jeff Horst (jhorst@foss.com); Legal Department (sperras@saltchukmariness.com).

9. The Parties undertake to treat all information exchanged between them in relation to this LOA and the Project as strictly confidential. Save in the event the Parties enter into the Agreement, this obligation of confidentiality shall survive the expiration or termination of this LOA for a period of five (5) years. This provision is not intended to supercede or modify the existing NDA between the Parties.

10. The Parties shall agree in writing, in their respective sole discretion, on the issuance of any press release or public statement concerning this LOA or the negotiations related to the Agreement.

11. This LOA shall be effective as of the Effective Date and, if not sooner terminated in accordance with the provisions hereof, shall terminate upon execution of the Agreement. In the event that the Agreement is executed, the liabilities of the Parties for Work performed pursuant to this LOA shall be governed by the Agreement.

12. Pending execution of the Agreement, the terms of this LOA including all attachments shall govern the relationship between Company and Contractor.

13. The terms and conditions of this LOA and all disputes arising from or relating to this LOA shall be interpreted and governed in accordance with the U.S. general maritime law, and to the extent not inconsistent therewith by the law of the State of New York, excluding any choice of law rules that would allow the application of laws of another jurisdiction.

14. Except as otherwise expressly provided in this LOA, each Party hereby waives and releases any claim against the other Party arising in relation to this LOA for any special, indirect or consequential

DocuSign Envelope ID: BBAC7EE7-F9CB-4C5C-B47D-B2F333778AE8

damages including but not limited to the following: lost production, lost product, lost business, cost of or loss of use of property owned or supplied by a Party, loss of revenue, profit or anticipated profit,

delay, business interruption (including the cost of overheads incurred or unabsorbed during business interruption) and other similar losses whether direct or indirect and any consequential losses whatsoever suffered by a Party or its officers, directors, employees, representatives, agents or insurers, whether or not such consequential or indirect costs, losses or liabilities are defined and/or characterized as consequential, incidental or indirect by applicable law and whether or not foreseeable, and even in the event of fault, tort (including negligence, in whole or in part and whether active or passive), strict liability of Contractor, or breach of contract by Contractor.

15. Indemnity

15.1    For purposes of this LOA, the term "Company Group" shall mean the Company, its parent and its and their affiliates, each of their customers, financing parties, and its and all of their other contractors and subcontractors of any tier (except for Contractor herein and its subcontractors of any tier), and all the affiliates and respective directors, officers, employees, agents, invitees of all the foregoing, and the vessels, the vessels' owners, underwriters, operators and their affiliates and respective directors, officers, employees and agents (excluding Contractor herein and its subcontractors of any tier).

15.2    For purposes of this LOA, the term "Contractor Group" shall mean the Contractor, its parent and its and their affiliates, each of their contractors and subcontractors of any tier, and all the affiliates and respective directors, officers, and employees of all of the foregoing.

15.3    THE CONTRACTOR SHALL BE RESPONSIBLE FOR AND SHALL RELEASE, SAVE, INDEMNIFY, DEFEND AND HOLD HARMLESS THE COMPANY GROUP FROM AND AGAINST ALL CLAIMS, LOSSES, DAMAGES, COSTS, (INCLUDING LEGAL COSTS AND REASONABLE ATTORNEY FEES), EXPENSES AND LIABILITIES IN RESPECT OF:

(A)    LOSS OF OR DAMAGE TO PROPERTY OF THE CONTRACTOR GROUP WHETHER OWNED, HIRED, LEASED OR OTHERWISE PROVIDED BY THE CONTRACTOR GROUP ARISING FROM OR RELATING TO THE PERFORMANCE OF THE LOA INCLUDING BUT NOT LIMITED TO LOSS OF OR DAMAGE TO PROPERTY IN CONNECTION WITH LOADING, UNLOADING, INGRESS, AND EGRESS OF PEOPLE AND PROPERTY; AND,

(B)    INJURY INCLUDING DEATH OR DISEASE TO ANY MEMBER OF THE CONTRACTOR GROUP ARISING FROM OR RELATING TO THE PERFORMANCE OF THE LOA INCLUDING BUT NOT LIMITED TO INJURY, DEATH OR DISEASE IN CONNECTION WITH LOADING, UNLOADING, INGRESS, AND EGRESS OF PEOPLE AND PROPERTY; AND,

(C)    LOSS OF PRODUCTION, LOSS OF PRODUCT, LOSS OF USE, LOSS OF REVENUE, AND LOSS OF PROFIT OR ANTICIPATED PROFIT, (IN ALL CASES WHETHER DIRECT, INDIRECT OR CONSEQUENTIAL), THAT MAY BE SUFFERED OR INCURRED BY ANY MEMBER OF THE CONTRACTOR GROUP ARISING FROM OR RELATING TO ARTICLE 16.3(A) OR (B).

15.4    EXCEPT AS OTHERWISE PROVIDED IN ARTICLE 16.3, THE COMPANY SHALL BE RESPONSIBLE FOR AND SHALL RELEASE, SAVE, INDEMNIFY, DEFEND AND HOLD HARMLESS THE CONTRACTOR GROUP FROM AND AGAINST ANY CLAIMS, LOSSES, DAMAGES, COSTS, (INCLUDING

DocuSign Envelope ID: BBAC7EE7-F9CB-4C5C-B47D-B2F333778AE8



LEGAL COSTS AND REASONABLE ATTORNEY FEES), EXPENSES AND LIABILITIES IN RESPECT OF OR ARISING OUT OF OR RELATING TO THE PERFORMANCE OF THIS LOA, INCLUDING WITHOUT LIMITATION:

(A)    LOSS OF OR DAMAGE TO PROPERTY OF THE COMPANY GROUP (INCLUDING BUT NOT LIMITED TO THE VESSELS AND THEIR CARGO) WHETHER OWNED, HIRED, LEASED OR OTHERWISE PROVIDED BY THE COMPANY GROUP, INCLUDING BUT NOT LIMITED TO SALVAGE AND WRECK REMOVAL, ARISING FROM OR RELATING TO THE PERFORMANCE OF THE LOA INCLUDING BUT NOT LIMITED TO LOADING, UNLOADING, INGRESS, AND EGRESS OF PEOPLE AND PROPERTY; AND,

(B)    INJURY INCLUDING DEATH OR DISEASE TO ANY MEMBER OF THE COMPANY GROUP ARISING FROM OR RELATING TO THE PERFORMANCE OF THE LOA INCLUDING BUT NOT LIMITED TO LOADING, UNLOADING, INGRESS, AND EGRESS OF PEOPLE AND PROPERTY; AND,

(C)    INJURY, DEATH, OR DISEASE, AND PROPERTY LOSS OR DAMAGE, OF ANY THIRD PARTIES (INDIVIDUALS AND ENTITIES WHO ARE NOT A MEMBER OF COMPANY GROUP OR CONTRACTOR GROUP) ARISING FROM OR RELATING TO THE PERFORMANCE OF THE LOA INCLUDING BUT NOT LIMITED TO LOADING, UNLOADING, INGRESS, AND EGRESS OF PEOPLE AND PROPERTY;

(D)    POLLUTION OR THE THREAT OF POLLUTION EMINATING FROM THE VESSELS OR OTHER PROPERTY OF COMPANY GROUP, CONTRACTOR GROUP, OR ANY THIRD PARTIES, INCLUDING BUT NOT LIMITED TO CLEAN-UP EXPENSES, FINES, AND PENALTIES, ARISING FROM OR RELATING TO THE PERFORMANCE OF THE LOA INCLUDING BUT NOT LIMITED TO LOADING, UNLOADING, INGRESS, AND EGRESS OF PEOPLE AND PROPERTY; AND,

(E)    LOSS OF PRODUCTION, LOSS OF PRODUCT, LOSS OF USE, LOSS OF REVENUE, AND LOSS OF PROFIT OR ANTICIPATED PROFIT, (IN ALL CASES WHETHER DIRECT, INDIRECT OR CONSEQUENTIAL), THAT MAY BE SUFFERED OR INCURRED BY ANY MEMBER OF THE COMPANY GROUP OR ANY THIRD PARTIES ARISING FROM OR RELATING TO THE PERFORMANCE OF THE LOA INCLUDING BUT NOT LIMITED TO LOADING, UNLOADING, INGRESS, AND EGRESS OF PEOPLE AND PROPERTY.

15.5    NOTWITHSTANDING ANY PROVISION OF THIS LOA TO THE CONTRARY, ALL LIABILITY EXCLUSIONS AND INDEMNITIES GIVEN UNDER THIS ARTICLE 15 SHALL APPLY IRRESPECTIVE OF CAUSE AND NOTWITHSTANDING THE SOLE OR CONCURRENT NEGLIGENCE, UNSEAWORTHINESS, BREACH OF DUTY (WHETHER STATUTORY OR OTHERWISE), STRICT LIABILITY, OR ANY OTHER LEGAL FAULT OF THE INDEMNIFIED PARTY OR OTHER INDEMNIFIED INDIVIDUAL OR ENTITY AND SHALL APPLY IRRESPECIVE OF ANY CLAIM IN TORT, UNDER CONTRACT OR OTHERWISE AT LAW.

16.    Insurance.

16.1    The provisions of this Insurance Article shall in no way limit the Parties' indemnity obligations, liability or responsibility, or any other obligations, liability or responsibility under this LOA. The Parties' indemnity obligations shall in no way limit their obligations under this Article 16.

DocuSign Envelope ID: BBAC7EE7-F9CB-4C5C-B47D-B2F333778AE8



16.2    Company Group shall procure and maintain at its sole cost and expense (including payment of deductibles) the following insurance policies throughout the term of this LOA ("Company Insurance"):

(a)    Hull and Machinery insurance on each Vessel for its full agreed value, including salvage, war risks, and excess liabilities;

(b)    Protection and Indemnity insurance with a P&I Club which is a member of the International Group of P&I Clubs and provision of standard club coverages afforded members, including but not limited to liability coverage for bodily injury, wrongful death, property loss or damage, pollution risks, diversion expenses, wreck removal, tower's liability, charterer's liability, cargo legal liability, with limits of not less than $100,000,000.00;

(c)    Marine General Liability Insurance with limits of not less than $20,000,000;

(d)    Worker's Compensation and Employer's liability insurance (including Maritime Employer's Liability Insurance) to include US Longshore and Harbor Workers and any applicable state employers liability with $1,000,000.00 limits per person per event/accident to include bodily injury or disease;

(e)    Business Automobile Liability including coverage for all owned, hired, and non-owned vehicles with $1,000,000.00 combined single limit, each occurrence, bodily injury and property damage liability;

(f)    Company shall cause its customers to procure and maintain all risks cargo insurance on any cargo intended to be transported by a Vessel with limits equal to the full value of the cargo; and

(g)    Any additional insurance procured by Company to cover the risks arising from or relating to the Vessels.

16.3    Contractor shall procure and maintain at its sole cost and expense (including payment of deductibles) the following insurance policies throughout the term of this LOA ("Contractor Insurance"):

(a)    First Party Property Insurance on all property of Contractor for its full agreed value;

(b)    Not Used;

(c)    Marine General Liability Insurance with limits of not less than $20,000,000;

(d)    Worker's Compensation and Employer's liability insurance (including Maritime Employer's Liability Insurance) to include US Longshore and Harbor Workers and any applicable state employers liability with $1,000,000.00 limits per person per event/accident to include bodily injury or disease; and

(e)    Business Automobile Liability including coverage for all owned, hired, and non-owned vehicles with $1,000,000.00 combined single limit, each occurrence, bodily injury and property damage liability.

16.4    For all insurance policies of the providing Party, whether or not required by the LOA, the provider of the insurance, whether Company or Contractor (or someone else in their Group), shall, as or on behalf of the providing Party, to the extent of the risks and liabilities assumed by the providing Party (whether Company

DocuSign Envelope ID: BBAC7EE7-F9CB-4C5C-B47D-B2F333778AE8

FOSS

or Contractor) ensure: (i) that subrogation is waived against the other Party and its Group; (ii) that the other Party and its Group are named as additional named insureds, each Party to provide the other Party with the names of such additional insureds upon execution of the LOA, to the full limits of each such policy on a broad form basis including coverage for the sole or concurrent negligence of each additional named insured and not being restricted to: (a) "ongoing operations;" (b) coverage for vicarious liability; or (c) circumstances in which the named insured is partially negligent; (iii) that all such coverage is primary and non-contributory with any insurance providing any coverage to any member of the other Party and its Group; and (iv) that no additional insured will be precluded from coverage on the ground that it is an insured under any such policy or that its claim is against the providing Party or any member of its Group. The coverage afforded to an additional insured is intended to be distinct from, and shall not limit, any liability of the providing Party to indemnify the other Party and its Group. Any watercraft exclusions shall be deleted and be unenforceable against any additional insured unless equivalent coverage is provided under another policy. All policies are to contain a provision that any breach by the providing Party or any member of its Group of any warranty, covenant, or representation in any of the policies is not to prejudice any claim by the additional named insureds. All policies shall not be subject to cancellation without the insurer first giving the providing Party and the other Party and any member of its Group advance notice thereof in accordance with policy terms. All policies of insurance shall be placed with insurance companies with a minimum rating by A.M. Best Company of A minus or equivalent. Failure of any Party's insurance shall not impact enforceability of the release, defense, indemnity, hold harmless, and insurance obligations that each Party assumes herein. Neither failure to comply nor full compliance with the insurance provisions set out herein limits or relieves any Party from the release, defense, indemnity, hold harmless, and insurance obligations that each Party assumes herein. The requirements for insurance in the limits and for the coverage stated in this Contract are not and shall not be construed to be a representation by either Party that this insurance is adequate or limits the liability of the Parties to one another. Each providing Party shall release, defend, indemnify, and hold the additional named insureds harmless from any insurance premiums, calls, supplemental calls, or similar costs related to insurance coverage provided by the providing Party.

16.5    Each Party shall provide the other Party with certificates of insurance evidencing compliance with the insurance obligations in this LOA and shall produce certificates of insurance upon renewal of each policy during the term of this LOA.

17.    This LOA is signed and entered in two (2) originals by the duly authorized representatives of Company and Contractor effective as of the Effective Date.

Yours Sincerely,
Rose Cay Maritime, LLC

Acknowledged and accepted by
Foss Maritime Company, LLC

By: _John Parrott_ (DocuSigned by)
F95BCE90CAEC405

By: _Will Roberts_ (DocuSigned by)
592C7068D26A468

Name: __John Parrott_____

Name: ____Will Roberts_____

Title: ___Chief Executive Officer_____

Title: ____President_____

Executed as authorized represenative for
Alex Parker Mangaging Partner

6

DocuSign Envelope ID: BBAC7EE7-F9CB-4C5C-B47D-B2F333778AE8



August 2, 2021

# Rose Cay & Foss Maritime
## Appendix A
### Summary of Services, Rates and Applications

Foss Maritime is committed to the success of Rose Cay and look forward to being the techincal and operational manager of the ATB fleet that Rose Cay is acquiring.

Further to our on-going discussion, Foss offers the following schedule of intended pricing for Foss management and operational services from the date of service commencement through December 31, 2021 or when final fleet management agreement signed.  This rate schedule offered in advance of final contract negotiations.

**Schedule Start Date:**                     On or around August 4, 2021

**Foss Management Team:**           Jeff Horst – Commercial Manager
Marjorie Zoretic – Rose Cay Project Manager
Sloane Perras - Legal
Paul Hendricks – HSQE Project Manager
Dave Dumont – Fleet and SY Project Consultant
Mike O'Connor – HR and Crewing Manager
Jerry Silla – Engineering Manager

**Fleet Responsibility on Day 1:**    B252/Evening Breeze (crewed)
B250/Evening Star (lay-up crew)
B270/Kim Buchard (crewed)
B260 (crew – 1 tankerman)
B262 (crew – 1 tankerman)
B225/Jane (layed up one crew)
B242/Morton Bouchard IV (lay up no crew)
B245/Danielle Bouchard (Layed up one crew)
B295/Bouchard Girls (lay up crew)
B210/ Brendan J Bouchard (lay up crew)

**Additional Fleet Responsibility:**    TBA assets aquired by Rose Cay and assigned to Foss for technical and operations management.

**Day 1 RTS Inside Mgmt Fee:**    Foss intends to utilize existing personnel on launch date to:
A)  Standup the organizational structure
B)  Project manage the required services
C)  Hire, train and manage marine personnel
D)  Standup HSQE organization and structure
E)  Cyber Security based on current Foss organization and structure
F)  Facilitate operations
G)  24 hour fleet monitoring and dispatch

7

DocuSign Envelope ID: BBAC7EE7-F9CB-4C5C-B47D-B2F333778AE8



H) Purchasing functions
I) Existing Foss I.T. Systems

**Day 1 RTS Outside Mgmt Fee:**    Services to be billed Time & Materials or Cost Plus:

A) HSQE compliant expenses & resources
B) Crew Costs – Wage and Fringe
C) Crew, Foss shoreside and consultant travel
D) Fleet vessel costs to include but not limited to:
    a. Commisary
    b. Cell/Sat Phone
    c. Deck Supplies
    d. Engine Supplies
E) M&R, Drydock & Overhauls expenses & resources
F) Moorage
G) Shipyard project management expenses and resources
H) Fleet layup expenses
I) FTE shoreside employees 100% dedicated to Rose Cay
J) Purchasing outlays
K) Capital Improvements & regulatory required upgrades
L) I.T. hardware for vessels

**Passthrough:**    A) Training
B) Insurance Premiums
C) Licenses, fees, taxes and registrations

Below is the scheduled management fee and anticipated shoreside resources required as the vessels under management grows. The estimated shoreside headcount will be reviewed as we transition to live operations.

| 29-Jul-21 | 1-3 Vessels | | | 4-6 Vessels | | | 7-10 Vessels | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Shore Position AVG. Cost | 150,000 | | | 150,000 | | | 150,000 | | | |
| Regional Head Count | TBA | | | Estimated 6 | | | Estimated 8 | | | |
| Regional Management Support | TBA | | | TBA | | | TBA | | | |
| # of Vessels | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| Annual Management Fee ($500/day/vessel) | $182,500 | $365,000 | $547,500 | $730,000 | $912,500 | $1,095,000 | $1,277,500 | $1,460,000 | $1,642,500 | $1,825,000 |

Foss catagorizes a tug/barge unit, in this case, as a "vessel". Unpaired ATB units at $250/day.

**Crew Estimates:**
Foss requires the use of an outside crewing and benefits service to facilitate the first 60-90 days of vessel operation. A careful study of benefits and service costs requires we quote a preliminary fringe percentage of 59%, with 15% of that expense paid to the benefit service providor. Foss will work diligently to minimize the utilization of this outside service to 90 days or less.

Following please find the estimated crew cost per day based on the planned day 1 fleet – including the tankerman currently deployed on the B260 and B262. The wages are based on an

DocuSign Envelope ID: BBAC7EE7-F9CB-4C5C-B47D-B2F333778AE8



average of Bouchard salaries + 59%.  With a few exceptions, are inline with comparables we received from the marketplace.

| Crew Costs - Currently Crewed Vessels | | | Wage & Fringe | Tug/Barge 270 | Tug/Barge 250 | Tug/Barge 252 | Barge 260 | Barge 262 | Tug Danielle |
|---|---|---|---|---|---|---|---|---|---|
| Tug/Barge 270 - 260K bbl barge / 10 crew | Captain | Day | $ 1,371 | $ 1,371 | $ 1,371 | $ 1,371 | $ - | $ - | $ - |
| Tug/Barge 250 - 60k bbl barge / 5 crew | Mate | Day | $ 1,193 | $ 1,193 | $ 1,193 | $ 1,193 | $ - | $ - | $ - |
| Tug/Barge 252 - 55K bbl barge / 5 crew | Chief Engineer | Day | $ 1,232 | $ 1,232 | $ - | $ - | $ - | $ - | $ 1,232 |
| Barge 260 - Pumpman Only | Assistant Engineer | Day | $ 1,174 | $ 1,174 | $ - | $ - | $ - | $ - | $ - |
| Barge 262 - Pumpman Only | Lead Pumpman | Day | $ 848 | $ 848 | $ 848 | $ 848 | $ 848 | $ 848 | $ - |
| Tug Danielle - Chief Engineer Only | Pumpman | Day | $ 731 | $ 731 | $ - | $ - | $ 731 | $ 731 | $ - |
| | Deck Hand | Day | $ 453 | $ 453 | $ 453 | $ 453 | $ - | $ - | $ - |
| | Deck Hand | Day | $ 453 | $ 453 | $ 453 | $ 453 | $ - | $ - | $ - |
| | QMED | Day | $ 453 | $ 453 | $ - | $ - | $ - | $ - | $ - |
| | | Per Day | $ 7,910 | $ 4,319 | $ 4,319 | $ 1,580 | $ 1,580 | $ 1,232 | |

**Shipyard Planning, HSQE and Consultant Rate Schedule:**
Foss will charge $ 150/hour + expenses to facilitate the implimention of the following:

      A)  Shipyard scope and management
      B)  Regulatory compliance program development
      C)  OCIMF compliance
      D)  Non-Tank and tank vessel response plans
      E)  Security plans
      F)  Class compliance

DocuSign Envelope ID: BBAC7EE7-F9CB-4C5C-B47D-B2F333778AE8



Outside consults charges at Cost + 10%.  Unless otherwide outlined, Foss project consulting fees would apply per the below tariff less a 15% discount:

 

## Harbor Marine Group
### 2021 Consulting Rates

These rates shall apply to all projects performed by the Consultant for the Client during the period of January 1, 2021 to December 31, 2021 except as contracted through a separate project specific agreement.  Hourly consulting rates will increase annually for additional phases of multi-year projects.

#### HOURLY CONSULTING RATES

Rates listed are for standard in-house services or local services.  Services to be performed on-board vessels and/or in remote locations will be negotiated separately on a project basis for the specific services required.

| | |
|---|---|
| President, CEO, COO | $330 |
| V.P. Engineering / Operations | $250 |
| Director of Engineering / Operations | $208 |
| Engineer / Project Manager 6 | $196 |
| Engineer / Project Manager 5 | $178 |
| Engineer / Project Manager 4 | $160 |
| Engineer / Project Manager 3 | $144 |
| Engineer / Project Manager 2 | $127 |
| Engineer / Project Manager 1 | $113 |
| Senior Designer | $127 |
| Designer | $113 |
| Technical Aide | $110 |
| Administrator | $94 |

Additional engineering, technical, and operational specialists are available on a project basis.

#### DIRECT EXPENSES AND OTHER OUTSIDE SERVICES

Direct expenses will be invoiced at their actual cost plus markup as follows:

| | |
|---|---|
| Materials and travel expenses | 10% |
| Other outside services | 10% |

Receipts for direct expenses will be provided only when specifically requested by Client.

#### CONSULTING TERMS AND CONDITIONS

Consulting services shall be provided in accordance with the Harbor Marine Group 2021 Consulting Terms and Conditions.

**First 14 days Estimated Expenses:**

Based on the current crew requirements for the vessels outlined and the need to immediately attack the regulatory and shipyard planning components, Foss estimates the first 14 days of operation to entail the following expenses.

DocuSign Envelope ID: BBAC7EE7-F9CB-4C5C-B47D-B2F333778AE8



| 14 Days: | Base | Rate | Per | 14 Days |
|---|---|---|---|---|
| **Management Fee:** | 3 ATBS | $ 500 | Day | $ 21,000 |
| | 2 Barges | $ 250 | Day | $ 7,000 |
| | 1 Barge | $ 250 | Day | $ 3,500 |
| **Crew Costs** | 20 Crew | $19,706 | Day | $275,884 |
| **20% of Total Hours - Regulatory Compliance** | 125 | $ 150 | Hour | $ 18,750 |
| **10% of Total Hours - Shipyard Planning** | 100 | $ 150 | Hour | $ 15,000 |
| **Travel - 2 pax x 4 days ea** | 8 | $ 500 | Day | $ 4,000 |
| | | | **TOTAL** | $345,134 |

Foss will only charge for time spent and crew employed.                    (END)

DocuSign Envelope ID: 3286DF6B-C261-446A-AA4D-4ED15E1094C6



**Subject:    Amendment 1 to Letter of Agreement Concerning Rose Cay Fleet ("LOA")**

**Dear Mr. Parker,**

1.  The Parties mutually agree to enter into this **Amendment 1** of that certain August 3, 2021 LOA by and between Rose Cay Maritime, LLC ("**Company**") and Foss Maritime Company, LLC ("**Contractor**") for the Project.  Terms not defined in this Amendment 1 shall be defined pursuant to the language of the LOA.

2.  The parties continue to negotiate in good faith a Fleet Management Agreement.

3.  The parties have mutually agreed to an Extended Target Date of December 17, 2021.

4.  Other than as set forth in Section 3 above, all terms of the LOA shall survive and continue as if fully incorporated into this Amendment 1.

5.  In the event of a conflict between the terms of this Amendment 1 and the LOA, this Amendment 1 shall supersede and control.

Acknowledged and accepted by:

**Rose Cay Maritime, LLC**                    **Foss Maritime Company, LLC**

By: _Alex Parker_                              By: _Will Roberts_
    AC41B8EFEE54490                        592C7068D26A468

Name: Alex Parker                              Name: Will Roberts

Title: Authorized Person                       Title: President

---

**Foss Maritime Company**                    www.foss.com

DocuSign Envelope ID: C564C8FF-6259-4A7D-805E-AADA7B6033AA

**Subject: Amendment 2 to Letter of Agreement Concerning Rose Cay Fleet ("LOA")**

**Dear Mr. Parker,**

1. The Parties mutually agree to enter into this **Amendment 2** of that certain August 3, 2021 LOA, as extended by that certain Amendment 1by and between Rose Cay Maritime, LLC ("**Company**") and Foss Maritime Company, LLC ("**Contractor**") for the Project. Terms not defined in this Amendment 2 shall be defined pursuant to the language of the LOA.

2. The parties continue to negotiate in good faith a Fleet Management Agreement.

3. The parties have mutually agreed to an Extended Target Date of January 17, 2021.

4. Other than as set forth in Section 3 above, all terms of the LOA shall survive and continue as iffully incorporated into this Amendment 2.

5. In the event of a conflict between the terms of this Amendment 2 and the LOA, this Amendment 2 shall supersede and control.

Acknowledged and accepted by:


**Rose Cay Maritime, LLC**
*Alex Parker*
AC41B8EFEE54490...

By:_____


**Foss Maritime Company, LLC**
*William Roberts*
592C7068D26A468...

By: _____


Name: Alex Parker

Name: William Roberts


Title: Authorized Person

Title: President

DocuSign Envelope ID: CBBBE13A-D78A-4CB7-8A66-ACDA61449DC3

ALWAYS SAFE. ALWAYS READY.



**Subject: Amendment 3 to Letter of Agreement Concerning Rose Cay Fleet ("LOA")**

**Dear Mr. Parker,**

1. The Parties mutually agree to enter into this **Amendment 3** of that certain August 3, 2021 LOA, as extended by that certain Amendment 1 and Amendment 2 by and between Rose Cay Maritime, LLC ("**Company**") and Foss Maritime Company, LLC ("**Contractor**") for the Project. Terms not defined in this Amendment 3 shall be defined pursuant to the language of the LOA.

2. The parties continue to negotiate in good faith a Fleet Management Agreement.

3. The parties have mutually agreed to an Extended Target Date of March 31, 2021.

4. Other than as set forth in Section 3 above, all terms of the LOA shall survive and continue as if fully incorporated into this Amendment 3.

5. In the event of a conflict between the terms of this Amendment 3 and the LOA, this Amendment 3 shall supersede and control.

Acknowledged and accepted by:

DocuSigned by:

*Alex Parker*

**Rose Cay Maritime, LLC**

AC41B8EFEE54490...

DocuSigned by:

*William Roberts*

**Foss Maritime Company, LLC**

592C7068D26A468...

By:_____          By: _____

Name: Alex Parker                    Name: William Roberts

Title: Authorized Person             Title: President

---

**Foss Maritime Company**          T: 206.281.3800          www.foss.com
450 Alaskan Way S., Suite 706      F: 206.281.4702
Seattle, WA 98104

DocuSign Envelope ID: 9BAE37A3-0D3E-45CF-9AA0-E4B382EAA00B



**Subject:    Amendment 4 to Letter of Agreement Concerning Rose Cay Fleet ("LOA")**

**Dear Mr. Parker,**

1. The Parties mutually agree to enter into this **Amendment 4** of that certain August 3, 2021 LOA by and between Rose Cay Maritime, LLC ("**Company**") and Foss Maritime Company, LLC ("**Contractor**") for the Project, as extended by Amendment 1, 2, and 3.  Terms not defined in this Amendment 4 shall be defined pursuant to the language of the LOA.

2. The parties mutually agree to an LOA termination date of April 2, 2022.

3. Other than as set forth in this Amendment 4, all terms of the LOA shall survive and continue as if fully incorporated into this Amendment 4.

4. In the event of a conflict between the terms of this Amendment 4 and the LOA, this Amendment 4 shall supersede and control.

Acknowledged and accepted by:

**Rose Cay Maritime, LLC**                   **Foss Maritime Company, LLC**

By: _Alex Parker_                            By: _William Roberts_
    AC41B8EFEE54490                              592C7088D28A468

Name: Alex Parker                            Name: Will Roberts

Title: Authorized Person                     Title: President

DocuSign Envelope ID: 71C98615-C1FA-4172-9AA0-A5D5AFD4A82F



**Subject:**    **Amendment 5 to Letter of Agreement Concerning Rose Cay Fleet ("LOA")**

**Dear Mr. Parker,**

1. The Parties mutually agree to enter into this **Amendment 5** of that certain August 3, 2021 LOA by and between Rose Cay Maritime, LLC (**"Company"**) and Foss Maritime Company, LLC (**"Contractor"**) for the Project, as extended by Amendment 1, 2, 3 and 4.  Terms not defined in this Amendment 5 shall be defined pursuant to the language of the LOA.

2. The parties mutually agree to an LOA termination date of April 4, 2022.

3. Other than as set forth in this Amendment 5, all terms of the LOA shall survive and continue as if fully incorporated into this Amendment 5.

4. In the event of a conflict between the terms of this Amendment 5 and the LOA, this Amendment 4 shall supersede and control.

Acknowledged and accepted by:

**Rose Cay Maritime, LLC**

By: _Alex Parker_
AC41B8EFEEE54490

Name: Alex Parker

Title: Authorized Person

**Foss Maritime Company, LLC**

By: _Sloane Perras_
07B88FA970714DE

Name: Sloane Perras

Title: Corporate Secretary

DocuSign Envelope ID: E0512873-233F-49EB-91F0-FFD42FE4805A



**Subject:**    **Amendment 6 to Letter of Agreement Concerning Rose Cay Fleet ("LOA")**

**Dear Mr. Parker,**

1.  The Parties mutually agree to enter into this **Amendment 6** of that certain August 3, 2021 LOA by and between Rose Cay Maritime, LLC ("**Company**") and Foss Maritime Company, LLC ("**Contractor**") for the Project, as extended by Amendments 1 through 5.  Terms not defined in this Amendment 6 shall be defined pursuant to the language of the LOA.

2.  The parties mutually agree to an LOA termination date of April 6, 2022.

3.  Other than as set forth in this Amendment 6, all terms of the LOA shall survive and continue as if fully incorporated into this Amendment 6.

4.  In the event of a conflict between the terms of this Amendment 6 and the LOA, this Amendment 6 shall supersede and control.

Acknowledged and accepted by:

**Rose Cay Maritime, LLC**

By: *Alex Parker*
 ⌐DocuSigned by:
 AC4188EFEE54400

Name: Alex Parker

Title: Authorized Person

**Foss Maritime Company, LLC**

By: *Sloane Perras*
 ⌐DocuSigned by:
 07B88FA070714DE...

Name: Sloane Perras

Title: Corporate Secretary

DocuSign Envelope ID: 097D29A7-2418-49CF-9C03-05F47A1C2EEE



**Subject:**    **Amendment 7 to Letter of Agreement Concerning Rose Cay Fleet ("LOA")**

**Dear Mr. Parker,**

1.  The Parties mutually agree to enter into this **Amendment 7** of that certain August 3, 2021 LOA by and between Rose Cay Maritime, LLC (**"Company"**) and Foss Maritime Company, LLC (**"Contractor"**) for the Project, as extended by Amendments 1-6.  Terms not defined in this Amendment 5 shall be defined pursuant to the language of the LOA.

2.  The parties mutually agree to an LOA termination date of April 8, 2022.

3.  Other than as set forth in this Amendment 7, all terms of the LOA shall survive and continue as if fully incorporated into this Amendment 7.

4.  In the event of a conflict between the terms of this Amendment 7 and the LOA, this Amendment 7 shall supersede and control.

Acknowledged and accepted by:

**Rose Cay Maritime, LLC**                    **Foss Maritime Company, LLC**

By: _Alex Parker_                             By: _Sloane Perras_
    DocuSigned by:                                DocuSigned by:
    AC41B8EFEE54400                               07B88FA970714DE

Name: Alex Parker                             Name: Sloane Perras

Title: Authorized Person                      Title: Corporate Secretary

DocuSign Envelope ID: 9ED7A20E-CAA4-4F5D-AB6D-27F78A38A170



**Subject:    Amendment 8 to Letter of Agreement Concerning Rose Cay Fleet ("LOA")**

**Dear Mr. Parker,**

1. The Parties mutually agree to enter into this **Amendment 8** of that certain August 3, 2021 LOA by and between Rose Cay Maritime, LLC ("**Company**") and Foss Maritime Company, LLC ("**Contractor**") for the Project, as extended by Amendment 1-7.   Terms not defined in this Amendment 8 shall be defined pursuant to the language of the LOA.

2. The parties have determined not to continue to negotiate on a Fleet Management Agreement

3. The parties mutually agree to work cooperatively to safely and efficiently transition the operation and technical management of each vessel covered under this LOA to Company, on the schedule set forth in Exhibit A; provided that, except as set forth expressly herein for the LYNNE M ROSE and RCM 270, the LOA will terminate on April 30, 2022. As each vessel completes the transition process to Company, the parties will execute a Protocol of Delivery and Acceptance (in the form attached as Exhibit B), execution thereof not to be unreasonably withheld, delayed or conditioned, memorializing that vessel's transition out of the scope of the LOA.

4. The parties may mutually agree in writing to extend the LOA termination date by one-week increments beyond the April 30, 2022 termination date.

5. Any and all disputes between Contractor and Company, including but not limited to a dispute arising out of or relating to the LOA, are to be submitted to confidential mediation administered under the Mediation Rules of the Society of Maritime Arbitrators, Inc. before resorting to other dispute resolution and before pursuing ancillary relief to obtain security or countersecurity and/or to arrest, attach or assert liens on each other's tangible or intangible property. The Mediator shall be a member of the Society of Maritime Arbitrators, Inc. unless otherwise agreed by the parties. The parties further agree that they retain and do not waive any rights, claims and defenses, including the right to pursue pre-judgment security, but have agreed to refrain and stay all such actions pending resolution of mediation.

6. Should any dispute remain outstanding at the conclusion of the mediation, the parties will meet and confer with participation of not less than two (2) board members of each company in attendance at a final settlement meeting to resolve the dispute and further agree to continue to refrain from pursuing ancillary relief to obtain security or countersecurity and/or to arrest, attach or assert liens on each other's tangible or intangible property.

7. Should any dispute remain outstanding at the conclusion of such meet and confer, the parties agree to continue to refrain from pursuing ancillary relief to obtain security or countersecurity and/or to arrest, attach or assert liens on each other's tangible or intangible property and further

---

DocuSign Envelope ID: 9ED7A20E-CAA4-4F5D-AB6D-27F78A38A170

agree that any remaining matter in dispute shall be referred to three (3) persons at New York, one (1) to be appointed by each of the parties hereto, and the third (3rd) by the two (2) so chosen; their decision or that of any two (2) of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the Rules of the Society of Maritime Arbitrators, Inc. The arbitrators shall be members of the Society of Maritime Arbitrators, Inc. The decision and any award of the arbitrators shall not be published by the Society of Maritime Arbitrators, Inc. and shall be kept confidential except as necessary to execute the arbitration award. The parties further agree that each side is to bear its own costs, fees and expenses for the arbitration and that the arbitrators may not issue an interim award directing either party to post security for part or all of a claim or counterclaim; shall not assess arbitration expenses and fees as provided in SMA Rules 15, 36 and/or 37; and shall not award attorneys' fees and costs incurred by either party. Following the issuance of the arbitration award, if the award remains unsatisfied as of the due date set therein, either party may pursue appropriate relief to recognize and/or enforce the arbitration award, including but not limited to obtaining security or countersecurity and/or to arrest, attach or assert liens on each other's tangible or intangible property.

8. The parties each desire an expeditious resolution of any dispute and shall use reasonable efforts to conclude the arbitration proceedings within one (1) year of a party's initiation of arbitration.

9. The parties further agree to the following:

  a) The parties will cooperate and use reasonable efforts to follow the schedule for transition as set out in Exhibit A;

  b) The parties will use reasonable efforts to ensure all cargoes to be loaded will be offloaded on or about the end of the term of the extended LOA. With the exception of the RCM 270 and LYNNE M ROSE, Company will not load a cargo that is expected to be discharged after the end of the term of the extended LOA, unless otherwise agreed in writing;

  c) The parties shall work to move the employment of certain crew members from Contractor's payroll to the Company or delegee;

  d) The RCM 252 and SUSAN ROSE shall be restricted to performing Jones Act service and lightering in the New York harbor unless Company provides two (2) days advance written notice that the vessels will undertake a voyage outside of New York harbor; provided that the vessels shall not lighter outside of New York harbor without the express prior written consent of Contractor's General Manager; and

  e) Foss will staff and operate the RCM 270 and LYNNE M ROSE with sufficient personnel for the vessels and their crew to be able to perform a round-trip voyage from US East Coast to US West Coast via the Panama Canal. Notwithstanding anything to the contrary contained herein, the parties agree that the terms of the LOA shall extend beyond termination until such time as the parties execute a Protocol of Delivery and Acceptance, execution thereof not to be unreasonably withheld, delayed or conditioned,

DocuSign Envelope ID: 9ED7A20E-CAA4-4F5D-AB6D-27F78A38A170

memorializing the transition of the LYNNE M ROSE and RCM 270 out of the scope of the LOA.

10. Company has remitted $500,000 and will remit an additional $50,000 for operations through April 15, 2022. The parties have agreed to the below all-inclusive rates for each day after April 15 that Contactor operates a vessel listed on Exhibit A in two-week intervals. Further advanced funding remittances will be wire transferred on April 15 and every 15 days thereafter until the vessels listed on Exhibit A complete their service and are transitioned to Company and the parties execute a Protocol of Delivery and Acceptance. Contractor will refund to Company, via wire transfer within five (5) days, any advanced payments to the extent the payment for a particular vessel covered days after the Protocol of Delivery and Acceptance was executed by both parties.

    a. RCM 252 & SUSAN ROSE:       $7,898.20/day
    b. RCM 270 & LYNNE M. ROSE:    $16,651.83/day

With the exception of the RCM 262, the below vessels (c, e-g) are not currently crewed. Accordingly, no payment would be due for such vessels. RCM has notified Foss it may de-crew the RCM 262 on or before April 15, 2022. If and when such vessels are fully crewed or the RCM 262 remains fully crewed after April 15, 2022 the amount(s) set out below is an all-inclusive (and not to exceed) rate, as defined above, which would be included in the agreed 15-day budget and prefunded.

    c. RCM 225 & ANNA ROSE:      $8,165.26/day
    d. RCM 262:                  $1,547.40/day
    e. RCM 245 & REBEKAH ROSE:  $12,335.90/day
    f. RCM 250 & JORDAN ROSE:   $8,060.33/day
    g. RCM 260:                  $1,547.40/day

All the above all-inclusive rates include wages, fringe, travel, lodgings and meals of all Contractor's employees—mariners and shoreside staff. The above all-inclusive rates include a $250/vessel/day management fee. The RCM 270 and Lynne M. Rose all-inclusive rate also includes $3,276.53/day in shoreside costs consisting of the day costs for a Fleet Engineering, Port Engineer 1, Tank Barge Manager 1, Business Ops Manager, Port Captain 1, Marine Personnel Mgr, Tank Barge Manager 2.

Starting May 15, 2022, and every thirty (30) days thereafter, Contractor shall in good faith review the costs incurred, which excludes the management fee, of the all-inclusive rate for each of the above vessels. To the extent that Contractor's actual costs come in lower than projected costs, Contractor will credit such savings to Company against any amounts to be paid under this Amendment 8 to the LOA. Contractor will use best efforts to review shoreside staffing and in its reasonable but sole judgment, Contractor may decrease the daily shoreside costs accordingly. Any savings achieved shall be credited to the next 15-day budget period. In no event shall Contractor be required to remit funds to Company from review of the costs incurred.

DocuSign Envelope ID: 9ED7A20E-CAA4-4F5D-AB6D-27F78A38A170

The parties will mutually agree to security coverage required by applicable laws and regulations for vessels not currently in service. Should the parties be unable to reach agreement, the recommendation of the applicable USCG sector office shall control. Notwithstanding anything to the contrary hereunder, Company shall contract with and pay for such security coverage.

11. Other than as set forth in this Amendment 8, all terms of the LOA shall survive and continue as if fully incorporated into this Amendment 8.

12. In the event of a conflict between the terms of this Amendment 8 and the LOA, this Amendment 8 shall supersede and control.

Acknowledged and accepted by:

**Rose Cay Maritime, LLC**

By: _Alex Parker_
AC41B8EFEE54490

**Foss Maritime Company, LLC**

By: _Sloane Perras_
07B88FA970714DE

Name: Alex Parker

Name: Sloane Perras

Title: Authorized Person

Title: Corporate Secretary

DocuSign Envelope ID: 9ED7A20E-CAA4-4F5D-AB6D-27F78A38A170

Exhibit A



DocuSign Envelope ID: 9ED7A20E-CAA4-4F5D-AB6D-27F78A38A170

Exhibit B

## PROTOCOL OF DELIVERY AND ACCEPTANCE

### KNOW ALL MEN BY THESE PRESENTS:

That FOSS MARITIME COMPANY, LLC ("Contractor") has transferred possession and control, and does hereby grant the delivery at \_\_\_\_\_.m. local time on this \_\_\_ day of _____, 2022 to **ROSE CAY MARITIME, LLC** ("Company"), of that certain U.S. flagged \_\_\_\_\_ [VESSEL NAME], Official Number _____ (the "Vessel"), pursuant to that certain Letter of Agreement by and between the Company and the Contractor dated August 3, 2021, as previously amended, said delivery taking place at _____, and

That the Company does hereby accept delivery of and to the aforesaid Vessel, subject to the terms of the aforesaid Letter of Agreement, the Vessel shall be removed from scope of the Letter of Agreement.

This Protocol of Delivery and Acceptance may be executed in counterparts and delivered via fax or electronic transmission and each such counterpart is deemed to be an original instrument and together constitute one Protocol of Delivery and Acceptance.

For and on behalf of Contractor:          For and on behalf of Company:

**FOSS MARITIME COMPANY, LLC**     **ROSE CAY MARITIME, LLC**

By: _____          By: _____
Name: _____          Name: _____
Title: _____          Title: _____