UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PENNANTIA, LLC,

                        Plaintiff,

            -v-

ROSE CAY MARITIME, LLC, and
DOVE CAY, LLC,

                      Defendants.

25-cv-5904 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

Plaintiff Pennantia, LLC has moved for a preliminary injunction to enjoin defendants Rose Cay Maritime, LLC and Dove Cay, LLC from pursuing the Notices of Claims of Maritime Liens asserted by Dove Cay against Pennantia's vessels.

Pennantia's motion for a preliminary injunction is denied because Pennantia has failed to meet its burden of establishing that a preliminary injunction is warranted; simply put, Pennantia has failed to show that it will suffer irreparable harm in the absence of the requested injunction. Pennantia has also failed to show that it is likely to succeed on the merits and has not shown that either the balance of equities or the public interest favors the issuance of the requested injunction.

        **I.   FACTS**

Plaintiff Pennantia is a maritime company that owns eighteen vessels—ten tank barges and eight tugboats—which it bought at a bankruptcy auction in 2021 (the "Pennantia Fleet"). (ECF No. 9 ("First Trump Decl.") ¶¶ 1, 4; ECF No. 33 ("Parker Decl.") ¶ 21.) Pennantia has two members: Contrarian Capital Management, L.L.C. (which holds an 86.25% interest in Pennantia) and defendant Rose Cay (which holds a 13.75% interest). (First Trump Decl. ¶¶ 1, 5.)

Defendant Rose Cay is a company that was engaged by Pennantia to act as the manager of the Pennantia Fleet pursuant to a ship management agreement called the "Shipman 2009" (the "Shipman"). (ECF No. 9-1.) The Shipman provided that Rose Cay would provide:

    1) "Technical management," which includes "providing competent personnel to supervise the maintenance and general efficiency of the Vessel," "arranging and supervising dry-docking, repairs, alterations, and the maintenance of the Vessel," "arranging the supply of

necessary fuel, stores, spares and lubricating oil," and "arranging for the supply of provisions" (*id.* Pt. II, Sec. 2, Cl. 4),

2) "Crew management," which includes "selecting, engaging and providing for the administration of the Crew, including . . . payroll arrangements, pension arrangement, tax, social security contributions and other mandatory dues related to their employment," "ensuring that all Crew have passed a medical examination," "arranging transportation of the Crew, including repatriation," "training of the Crew," "conducting union negotiations," and "arranging Crew Insurances" (*id.* Pt. II, Sec. 2, Cl. 5), and

3) "Commercial management," which includes "seeking and negotiating employment for the Vessel," "arranging for the provision of bunker fuels," "voyage estimating and accounting and calculation of hire, freights, demurrage and/or despatch monies due from or due to the charterers of the Vessel," "assisting in the collection of any sums due to the Owners related to the commercial operation of the Vessel," and "appointing agents" (*id.* Pt. II, Sec. 2, Cl. 6).

The Shipman set forth the fees that Rose Cay would receive in exchange for its services. (*Id.* Annex E.) Pursuant to the Shipman, Pennantia expressly authorized Rose Cay to "take such actions as they may from time to time in their absolute discretion consider to be necessary to enable them to perform the Management Services in accordance with sound ship management practice." (*Id.* Pt II, Sec. 1, Cl. 3.) Pennantia also executed a power of attorney appointing Rose Cay as Pennantia's authorized agent to:

> (i) bind Pennantia with respect to contracts, agreements and undertakings related to the operations of Pennantia, including but not limited to charter agreements, repairs and maintenance, bunker fuel, ship yard agreements, insurance and other standard day-to-day requirements of the business (the "<u>Contracts</u>"), (ii) through the authorized signatories of Rose Cay, set forth in <u>Exhibit A</u> [*i.e.*, Alex J. Parker and John Parrott], make, execute and deliver all Contracts on behalf of Pennantia; and (iii) to do and perform generally all such acts and things that shall be necessary or convenient in order to carry out the foregoing.

(ECF No. 33-2 ("Power of Attorney") at 1.)

After Pennantia bought the Pennantia Fleet in 2021, the vessels required significant repairs to return them to service following a period of neglect. (*See* First Trump Decl.

2

¶ 8; Parker Decl. ¶ 13.) Pennantia and Rose Cay agreed that Rose Cay would engage Foss Maritime Company, LLC to act as a technical and crewing sub-manager to bring the Pennantia Fleet back to service. (First Trump Decl. ¶ 9; Parker Decl. ¶¶ 13, 17–19.) Rose Cay and Foss entered into a "Letter of Agreement Concerning Rose Cay Fleet" (the "Foss LOA") in August 2021 to govern their relationship. (ECF No. 33-1.) Foss ceased performance under the Foss LOA in early 2022 due to issues completing the return-to-service project on time and within budget. (Parker Decl. ¶¶ 33–37; First Trump Decl. ¶ 9.)

Defendant Dove Cay was formed in the spring of 2022 and, with Pennantia's knowledge and approval but without Pennantia's written consent, was engaged by Rose Cay to step into the sub-manager role vacated by Foss. (First Trump Decl. ¶¶ 10, 12; Parker Decl. ¶¶38–44.) Rose Cay and Dove Cay share Alex J. Parker as a principal of both companies. (*See, e.g.*, ECF 43-1 (Alex Parker as signatory for both Rose Cay and Dove Cay).) Rose Cay engaged Dove Cay to provide crew and technical management services to Rose Cay via a "Crew and Technical Management Agreement" (the "CTMA") dated April 14, 2022. (ECF No. 43-1.) The CTMA provides that "the terms and conditions of the [Foss LOA,] including . . . any subsequent extension and amendments to the [Foss] LOA with their respective Appendices are hereby incorporated by reference into [the CTMA] and shall be considered part of [the CTMA] and shall be performed subject to the terms and conditions contained therein." (*Id.*)

Pennantia had liquidity issues as a result of the over-budget return-to-service project in early 2022. (First Trump Decl. ¶ 22.) To address those liquidity concerns, Contrarian Capital Management and Dove Cay agreed to what the parties call a "credit receivables arrangement" through which, among other things, Contrarian and Dove Cay effectively loaned Pennantia $12 million, with Dove Cay loaning Pennantia $5.5 million of that amount (the "Dove Cay Credit Receivables"). (ECF No. 43 ("Second Trump Decl.") ¶ 32.) According to Pennantia, the parties to the credit receivables arrangement agreed that the Dove Cay Credit Receivables would not be treated as currently due and owing and any repayment would be delayed until "either sufficient operating revenue became available after current expenses, or in connection with the sale of the Vessels." (*Id.* ¶ 34.)

In early July 2025, Dove Cay filed Notices of Claims of Maritime Liens against all eighteen vessels in the Pennantia Fleet pursuant to 46 U.S.C. § 31343(a) and 46 C.F.R. § 67.250. (First Trump Decl. ¶¶ 53–56.) The total amount of Dove Cay's asserted maritime liens is $29,409,943. (First Trump Decl. ¶ 56; Parker Decl. ¶ 57; ECF No. 9-2 (Notices of Claims of Maritime Liens).) Of this $29,409,943, $16,405,586 is allegedly based on technical and crewing management fees plus a 10% markup on "necessaries" procured by Dove Cay, and the remaining $13,004,356 is based on the alleged balance of

3

the Dove Cay Credit Receivables, including both principal and accrued interest. (First Trump Decl. ¶¶ 59, 61; Parker Decl. ¶ 57.) In essence, Dove Cay asserts that Pennantia has failed to pay management fees owed to Dove Cay, has failed to pay Dove Cay's 10% markup on "necessaries" procured for the Pennantia Fleet by Dove Cay, and has failed to repay the Dove Cay Credit Receivables.

Pennantia initiated this action by a complaint filed on July 20, 2025. (ECF No. 1.) The next day, Pennantia moved by order to show cause for a temporary restraining order and preliminary injunction against Rose Cay and Dove Cay enjoining them from (1) ordering the crews of Pennantia's vessels to stop work, (2) pursuing Dove Cay's Notices of Claims of Maritime Liens against the vessels, and (3) obstructing Pennantia's access to its vessels. (ECF No. 10 ("Mot.") at 27.) The parties resolved the first and third of these issues by agreement at the pretrial conferences held in this matter on July 25 and August 1 and Pennantia no longer pursues those portions of its request for a preliminary injunction. (*See* July 25, 2025 Hearing Tr. at 8:2–24, 20:8–12; Aug. 12, 2025 Hearing Tr. ('Aug. 12 Tr.") at 2:7–21.) Pennantia now seeks solely a preliminary injunction enjoining Rose Cay and Dove Cay from pursuing Dove Cay's maritime liens against the Pennantia Fleet.

## II. APPLICABLE LAW

"'A preliminary injunction is an extraordinary and drastic remedy' and 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025) (quoting *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Practice P.C.*, 120 F.4th 59, 79 (2d Cir. 2024)).

To obtain a preliminary injunction, a party must show that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Hudson Shore Assocs. Ltd. P'ship v. New York*, 139 F.4th 99, 106 (2d Cir. 2025).

Of these four prerequisites, "'[t]he irreparable harm requirement is the single most important prerequisite for the issuance of a preliminary injunction' and 'must therefore be satisfied before the other requirements for an injunction can be considered.'" *St. Joseph's Hosp. Health Ctr.*, 131 F.4th at 106 (quoting *State Farm*, 120 F.4th at 80). "To establish irreparable harm, the moving party must show an 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *Id.* (quoting *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020)). "[I]t is settled law that when an injury is compensable through money damages there is no irreparable harm," *Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, 75 F. Supp. 3d 592, 607 (S.D.N.Y. 2014) (alteration in original) (citation

4

omitted), and monetary "compensation need only be 'adequate' for preliminary relief to be unwarranted, not perfect," *St. Joseph's Hosp. Health Ctr.*, 131 F.4th at 106 (quoting *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 358 (2d Cir. 2024)).

In certain circumstances, however, monetary harms can constitute irreparable harms, such as when a defendant is judgment-proof either because the defendant is or imminently will be insolvent or because the defendant has demonstrated an intent to frustrate any eventual judgment against it. *See Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 250 (2d Cir. 1999) ("[C]ourts have excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents."); *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985) ("Even where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transferring its assets out of the jurisdiction." (citation modified)).

"Courts refer to preliminary injunctions as prohibitory or mandatory. Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 883 F.3d 32, 36 (2d Cir. 2018). "Because mandatory injunctions disrupt the status quo, a party seeking one must meet a heightened legal standard," *id.* at 37, by "show[ing] a *clear or substantial* likelihood of success on the merits and mak[ing] a *strong showing* of irreparable harm," *Daileader*, 96 F.4th at 356 (emphasis in original) (quoting *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)).

### III. APPLICATION

Pennantia has failed to carry its burden of demonstrating that it will suffer irreparable harm in the absence of preliminary injunctive relief; Pennantia's request for a preliminary injunction is therefore denied. Additionally, Pennantia has failed to show that it is likely to succeed on the merits and that the balance of equities and the public interest support the issuance of a preliminary injunction.

#### A. Irreparable Harm

##### 1. *Pennantia Requests a Mandatory Injunction.*

As an initial matter, Pennantia's requested injunction is best characterized as a mandatory, rather than a prohibitory, injunction because the requested injunction seeks to alter the status quo between the parties. At the time Pennantia brought this lawsuit, Dove Cay had already filed Notices of Claims of Maritime Liens against the Pennantia

Fleet with the U.S. Coast Guard. (*See* ECF No. 1-2 (Notices of Claims).) By virtue of this motion, Pennantia now seeks to alter the status quo by asking the Court to prohibit defendants from pursuing Dove Cay's Notices of Claims of Maritime Liens. As a request for a mandatory injunction, Pennantia "must meet a heightened legal standard," *N. Am. Soccer League*, 883 F.3d at 37, by "show[ing] a *clear or substantial* likelihood of success on the merits and mak[ing] a *strong showing* of irreparable harm," *Daileader*, 96 F.4th at 356 (emphasis in original) (quoting *Schneiderman*, 787 F.3d at 650).[1]

### 2. *Pennantia Has Failed to Show Irreparable Harm.*

Pennantia conceded that the harm it will suffer in the absence of a preliminary injunction is money damages but asserts that such harm would nevertheless be irreparable. (ECF No. 10 ("Mot.") at 25–26; ECF No. 41 ("Reply") at 13–14; Aug. 12 Tr. at 6:3–10:24.) First, Pennantia urges that the threatened monetary harm is irreparable because defendants are likely to be judgment-proof given that, other than their management of the vessels, "Defendants have no other material business or material assets of any significance from which to satisfy a judgment awarded against Defendants." (Mot. at 26.) Second, Pennantia contends that Dove Cay's pursuit of its Notices of Claims of Maritime Liens would frustrate the potential sale of the Pennantia Fleet or, at a minimum, harm its ultimate sale price, which would inflict a monetary harm difficult or impossible to quantity. (*Id.*; Reply at 14.) Third, Pennantia asserts that defendants' conduct leading up to this litigation—allegedly breaching the Shipman, frustrating Pennantia's access to the vessels, and filing the notices of claims of maritime liens—demonstrates defendants' intent to frustrate any future judgment against them. (Mot. at 26.)

However, there is no evidence in this record that defendants will be judgment-proof beyond Pennantia's unsupported statement that they have no business apart from managing the Pennantia Fleet and will be judgment-proof if a money judgment is entered against them. To establish irreparable harm justifying injunctive relief under the insolvency exception, Pennantia must show that defendants are insolvent or that defendants' insolvency is likely and imminent. *See CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 782 (2d Cir. 2010) (per curiam) (stating that "[p]redicate to injunctive relief under [the insolvency] exception, a movant must show that the risk of insolvency is

---

[1] Pennantia's itself characterizes its application as one for mandatory relief. (Aug. 12 Tr. at 37:7–18.) Even if Pennantia's motion were construed as a request for a prohibitory injunction, Pennantia has failed to meet the lower standard of showing a likelihood of success on the merits and irreparable harm as well as failing to meet the higher standard of showing a clear or substantial likelihood of success on the merits and making a strong showing of irreparable harm.

likely and imminent" and finding that the movant failed to establish such risk of likely and imminent insolvency through "purely speculative allegations" that a defendant might later become insolvent). The only support Pennantia offers for its conclusion that defendants will be judgment-proof is a representation from Contrarian's managing director, Joshua Trump, simply that defendants have discussed with him the issue of winding down their businesses in the event of a sale of the Pennantia Fleet. (First Trump Decl. ¶ 40.)

This is insufficient to establish a likelihood that defendants would be unable to satisfy a money judgment against them such that any potential monetary harms suffered by Pennantia should be considered irreparable, rather than compensable by an award of monetary damages. *See Alpha Cap. Anstalt v. Shiftpixy, Inc.*, 432 F. Supp. 3d 326, 340–41 (S.D.N.Y. 2020) (declining to issue preliminary injunction because the movant "has not proven indisputably . . . that [the defendant] is insolvent or on the brink of insolvency"); *Levy v. Young Adult Inst., Inc.*, No. 13-cv-2861, 2015 WL 170442, at *8 (S.D.N.Y. Jan. 13, 2015) (no irreparable harm where the plaintiffs offered "no evidence that [the defendant] is or will be insolvent" and contended only that the defendant "*may* lack sufficient assets to pay a judgment if [the plaintiffs] are successful at some point"); *Sea Carries Corp. v. Empire Programs, Inc.*, No. 04-cv-7395, 2006 WL 3354139, at *5 (S.D.N.Y. Nov. 20, 2006) (no irreparable harm where the plaintiff "has not shown there to be a 'substantial chance' that a judgment against the defendants . . . would otherwise be uncollectible" because the plaintiff "has not made a claim that the parties to be enjoined . . . are insolvent or about to become so"); *Mitsubishi Power Sys., Inc. v. Shaw Grp., Inc.*, No. 04-cv-1251, 2004 WL 527047, at *2 (S.D.N.Y. Mar. 16, 2004) (no irreparable harm because the movant failed to show "that [the party to be enjoined] is insolvent or that 'there is a substantial chance' that [it] will be insolvent upon final resolution of the parties' pending arbitration proceeding" (quoting *Brenntag*, 175 F.3d at 249–50)); *Meringolo v. Power2ship,* No. 03-cv-4476, 2003 WL 21750009, at *3–5 (S.D.N.Y. July 28, 2003); *Gen. Transp. Servs. v. Kemper Ins. Co.*, No. 5:03-cv-620, 2003 WL 21703635, at *3–4 (N.D.N.Y. June 25, 2003) (no finding of irreparable harm based on risk of insolvency despite defendant's default on $700 million of its notes, credit rating downgrade, investigation by regulatory agencies, and substantially reduced workforce).

Pennantia's additional contention that the existence of the maritime liens might diminish the price of any future sale of the Pennantia Fleet is relevant to the amount of Pennantia's potential monetary harm, not its irreparability, and is too speculative to establish the likelihood of imminent irreparable harm sufficient to justify preliminary injunctive relief. And Pennantia's circular argument that defendants have demonstrated an intent to frustrate a future judgment against them based only on the wrongs of which Pennantia complains in its complaint fails to establish that defendants will likely

attempt to frustrate a judgment against them, such as by moving assets out of the jurisdiction. *Cf. In re Feit & Drexler, Inc.*, 760 F.2d 406.

### B. Likelihood of Success on the Merits

Pennantia has failed to meet its burden to show a likelihood of success on the merits, let alone a clear or substantial likelihood of such success required for a mandatory injunction.

#### 1. *Elements of a Maritime Lien Pursuant to CIMLA*

Turning to the validity of Dove Cay's asserted maritime liens against the vessels, pursuant to the Commercial Instruments and Maritime Lien Act ("CIMLA"), "a party who provides necessaries . . . to a vessel is entitled to assert a maritime lien" against the vessel so long as the party "provided the necessaries 'on the order of the owner or a person authorized by the owner.'" *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 515, 519 (2d Cir. 2018) (citing 46 U.S.C. § 31342). "Specifically, CIMLA requires three elements for a maritime lien: (1) that the goods or services at issue were 'necessaries,' (2) that the entity 'provid[ed]' the necessaries to a vessel[,] and (3) that the entity provided the necessaries 'on the order of the owner or a person authorized by the owner.'" *Id.* at 519 (citing 46 U.S.C. § 31342(a)).

##### a. *The Goods or Services at Issue Were "Necessaries."*

As to the first element of a maritime lien, Dove Cay provided "necessaries" to the vessels. "Necessaries" include goods or services "reasonably needed in the ship's business" or goods or services "necessary to the continued operation of the vessel." *Bradford Marine v. M/V Sea Falcon*, 64 F.3d 585, 589 (11th Cir. 1995) (first quoting *J. Ray McDermott & Co. v. Off-Shore Menhaden Co.*, 262 F.2d 523, 525 (5th Cir. 1959); and then quoting *Payne v. SS Tropic Breeze*, 423 F.2d 236, 241 (1st Cir. 1970)). Dove Cay provided technical and crew management services, including paying operational expenses, paying crew wages, providing food and supplies, and providing transportation. (CTMA, Cl. 4; Foss LOA Art. 3, App. A; Parker Decl. ¶ 46.) Paying the crew and providing food and transportation to the crew are manifestly necessary to the continued operation of the vessels and are therefore "necessaries." In fact, other courts have construed "necessaries" broadly. *See, e.g., Portland Pilots, Inc. v. NOVA STAR M/V*, 875 F.3d 38, 44–45 (1st Cir. 2017) (collecting cases and noting that the provision of laundry services; the transportation of drinking water, food, drilling equipment, and supplies;

8

water taxi service to and from the vessel; insurance for the vessel; and account services constituted necessaries giving rise to maritime liens).[2]

Citing 102-year-old and 76-year-old out-of-circuit precedents, Pennantia contends that a breach of a ship management agreement cannot give rise to a maritime lien. (Mot. at 20; Reply at 9.) However, Dove Cay has asserted maritime liens based not on the breach of a contract between Dove Cay and Pennantia but based on Dove Cay's provision of necessaries to the vessels of the Pennantia Fleet, which provides the basis for a maritime lien.

### b. *The Necessaries Were Provided to a Vessel.*

The second element for a maritime lien—that the entity asserting the lien provided the necessaries to a vessel—is not in dispute.

### c. *The Necessaries Were Provided on the Order of a Person Authorized by the Owner.*

As to the third element for a maritime lien under CIMLA, Dove Cay provided the necessaries "on the order of . . . a person authorized by the owner." 46 U.S.C. § 31342.

Dove Cay provided the necessaries at the direction of Rose Cay, who the owner—Pennantia—authorized to act on Pennantia's behalf in both the Shipman and a Power of Attorney. (*See* Shipman Pt. II, Sec. 1, Cl. 3 (Rose Cay is authorized to "take such actions as they may from time to time in their absolute discretion consider to be necessary to enable them to perform the Management Services in accordance with sound ship management practice"); Power of Attorney at 1 (Rose Cay is authorized to "bind Pennantia with respect to contracts, agreements and undertakings related to the operations of Pennantia").) Further, under CIMLA, "a person entrusted with the management of the vessel at the port of supply" or "an officer or agent appointed by . . . the owner" is presumed to have the authority to procure necessaries for a vessel. 46 U.S.C. § 31341(a). Dove Cay therefore provided the necessaries "on the order of . . . a person authorized by the owner."[3]

---

[2] It is unnecessary to determine if the entire amount of the Dove Cay Credit Receivables are "necessaries" because the Court concludes that at least some of the asserted bases for Dove Cay's maritime liens are in fact "necessaries."

[3] Pennantia contends that because Dove Cay purported to add a 10% markup to the costs of the necessaries, it has forfeited the ability to pursue liens (*see* Mot. at 18) but offers no support for that proposition. That argument goes at most to the appropriate value of the liens but does not address whether Dove Cay may pursue a lien.

### 2. *Pennantia's Other Objections to the Validity of Dove Cay's Maritime Liens*

Separate from the elements of a maritime lien pursuant to CIMLA, Pennantia advances several independent objections to the validity of Dove Cay's asserted maritime liens.[4] None is persuasive.

#### a. *Owner Exception*

First, Pennantia invokes what it denominates the "owner exception" to maritime liens. (Mot. at 20–23; Reply at 10–11.) Pennantia is correct that a party with an ownership interest in a vessel cannot hold a maritime lien on that vessel. *See Cantieri Navali Riuniti v. M/V SKYPTRON*, 621 F. Supp. 171, 186 (W.D. La. 1985); *Beech v. FV WISHBONE*, 113 F. Supp. 3d 1203, 1211–12 (S.D. Ala. 2015). This rule "is founded in the equitable notion that those who share responsibility for incurring the debts of the vessel ought not to be reimbursed out of that vessel's proceeds to the detriment of other lienholders." *Cantieri*, 621 F. Supp. at 186; *see also id.* ("But when the seas get rough one who looks, thinks, acts, and profits like an owner cannot retreat to the relatively safe harbor of a maritime lienor, who of course has a claim against the ship itself." (quoting *Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1209 (5th Cir. 1978))). "An important limitation" to the general principle that a provider of necessaries holds a maritime lien in the vessel "is that it applies only to strangers to the vessel." *Beech*, 113 F. Supp. 3d at 1211.

Pennantia initially contended that Rose Cay and Dove Cay "are corporate doppelgangers" or "alter egos" such that Rose Cay's ownership interest in Pennantia (and, therefore, in the vessels) should be attributed to Dove Cay and therefore Dove Cay, as an owner, cannot hold a maritime lien on the Pennantia vessels. (Mot. at 21–22.) At the August 12 hearing, however, counsel for Pennantia acknowledged that Pennantia was no longer able to pursue this alter ego theory because the evidence

---

[4] In addition to the contentions addressed below, Pennantia's reply brief raised two new arguments that were not included in its opening brief in support of its motion and which are not based on any new information Pennantia has received in the intervening period. (*See* Reply at 5–7 (contending that Dove Cay improperly applied payments from Pennantia to certain invoices); *id.* at 12–13 (contending that some of Dove Cay's claims are barred by laches).) The Court does not address these arguments raised for the first time in Pennantia's reply brief, which were available to Pennantia at the time it filed its opening brief. *Cf. Farner v. United States*, No. 15-cv-6287, 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) ("Courts have repeatedly held that arguments raised for the first time in reply briefs are waived . . . .").

reflected an arms-length agreement between Rose Cay and Dove Cay, namely the CTMA. (Aug. 12 Tr. at 20:9–24.)

Nevertheless, Pennantia, in its reply memorandum, contends that Dove Cay does not have to be the alter ego of Rose Cay in order to be disqualified from holding a maritime lien as an owner; rather it is sufficient to disqualify Dove Cay from holding a lien on a vessel if Dove Cay "ha[s] the ability to control or influence the affairs of a vessel." (Reply at 10.) Pennantia relies solely on *Beech v. FV WISHBONE*, 113 F. Supp. 3d 1203, 1211–12 (S.D. Ala. 2015), for that proposition. Pennantia overreads *Beech*. In *Beech*, the district court in Alabama emphasized that each of the plaintiffs had provided money or services to the vessel at issue on the basic understanding that they would receive an equity stake in the vessel. 113 F. Supp. 3d at 1207–10. For that reason, the *Beech* court concluded that the plaintiffs were joint venturers and partial owners of the vessel, and therefore the Court found that the plaintiffs were barred from asserting maritime liens in the vessel. *Id.* at 1211–16. That is not the case in this action, where Dove Cay claims no equity stake or investment in the vessels and where Dove Cay does not stand in the shoes of an owner of the Pennantia Fleet. Thus, any ownership exception to maritime liens does not apply here.

###### b. *Subcontractor Exception*

Next, Pennantia asserts that Dove Cay is barred from asserting a maritime lien because "a subcontractor cannot assert a maritime lien." (Mot. at 17 (quoting *U.S. Oil Trading LLC v. M/V VIENNA EXPRESS*, 911 F.3d 652, 662 (2d Cir. 2018)).) The U.S. Court of Appeals for the Second Circuit determined in *M/V VIENNA EXPRESS* that a subcontractor may indeed assert a maritime lien if "it can be shown that an entity authorized to bind the ship controlled the selection of the subcontractor and/or its performance." 911 F.3d at 663 (quoting *Cianbro Corp. v. George H. Dean, Inc.*, 596 F.3d 10, 17 (1st Cir. 2010)). Here, the Shipman and the Power of Attorney unequivocally granted Rose Cay the authority to bind Pennantia with respect to the vessels; thus, Dove Cay may assert a maritime lien for the necessaries it provided the vessels at Rose Cay's instruction even were Dove Cay to be a "subcontractor" because Rose Cay controlled the selection of Dove Cay.

###### c. *Foss LOA Requirement to Mediate and Arbitrate Prior to Liens*

In its reply brief, Pennantia advances a new argument based on the CTMA that the CTMA imposes a condition precedent on Dove Cay that required it to first mediate and then arbitrate any disputes it might have with Pennantia before asserting maritime liens against the Pennantia Fleet or arresting the vessels.

As an initial matter, Pennantia attempts no explanation of why it, as a non-party to the CTMA, should be permitted to enforce the terms of the CTMA against Dove Cay.

11

Moreover, the terms of the CTMA, and the Foss LOA incorporated into the CTMA, belie Pennantia's argument. Amendment 8 to the Foss LOA provides that "[a]ny and all disputes between [Foss Maritime Company, LLC] and [Rose Cay Maritime, LLC] . . . are to be submitted to confidential mediation . . . before resorting to other dispute resolution and before pursuing ancillary relief to obtain security or countersecurity and/or to arrest, attach or assert liens on each other's tangible or intangible property." (Foss LOA Amend. 8, Cl. 5.) Amendment 8 continues that, if any dispute remains outstanding after mediation and subsequent meetings, Rose Cay and Foss "agree to continue to refrain from pursuing ancillary relief to obtain security or countersecurity and/or to arrest, attach or assert liens on each other's tangible property" until after an arbitration proceeding. (*Id.* Amend. 8, Cl. 7.) Even assuming that Dove Cay should be substituted into the provisions of Amendment 8 in the place of Foss, Pennantia has offered no explanation as to why this mediate-then-arbitrate precondition for disputes between Dove Cay and *Rose Cay* would apply to disputes between Dove Cay and *Pennantia*.

Finally, it is not apparent that (or how) the terms of Amendment 8 to the Foss LOA apply to the relationship between Rose Cay and Dove Cay under the CTMA. (*See* Aug. 12 Tr. at 43:18–45:8.) Though the CTMA expressly incorporates the Foss LOA and all amendments to the Foss LOA, it is plain from the terms of Amendment 8 that the Amendment was entered into to facilitate the "safe[] and efficient[] transition [of] the operation and technical management of each vessel covered under this LOA" from Foss to Rose Cay because Rose Cay and Foss "ha[d] determined not to continue to negotiate on a Fleet Management Agreement." (Foss LOA Amend. 8, Cls. 2, 3.) In line with that purpose, Amendment 8 specified that the Foss LOA and the provisions of Amendment 8 would essentially terminate on April 30, 2022. (*Id.*) It is unclear how these provisions could have been intended to apply to the relationship between Dove Cay and Rose Cay pursuant to the CTMA, which obviously was not intended, for example, to terminate on April 30, 2022. Pennantia does not explain how to resolve these difficult questions and therefore fails to demonstrate a likelihood that it will succeed on the merits of this theory.

### d. Precise Amount of Liens

Pennantia advances two arguments about the precise amount of Dove Cay's asserted maritime liens.

#### i. Foss LOA Amendment 8 Fee Schedule

Pennantia contends for the first time in its reply brief that, because the CTMA incorporates the Foss LOA and all subsequent amendments, the amounts that Dove Cay was able to charge under the CTMA are capped at the amounts set out in Amendment 8

12

to the Foss LOA. (Reply at 1.) Pennantia urges that, based on those fee caps, Dove Cay has overcharged Pennantia for Dove Cay's services such that, on net, Dove Cay actually owes Pennantia money, and therefore there is no basis for Dove Cay's liens. (*Id.* at 2.)

First, as noted above, Pennantia has not met its burden of establishing that the parties to the CTMA actually intended for the terms of Amendment 8 to govern the relationship between Dove Cay and Rose Cay under the CTMA given (1) the apparent purpose underlying Amendment 8 of facilitating Foss's exit from its role as technical manager of the Pennantia Fleet and (2) the fact that Amendment 8 itself provides that it terminated in April 2022.

Second, as also noted above, Pennantia has not explained why it as a non-party should be permitted to assert claims under and enforce the terms of a contract—the CTMA—between Rose Cay and Dove Cay.

Third, even assuming for the purposes of Pennantia's argument that the fee schedule of Amendment 8 to the Foss LOA governed the fees Dove Cay was permitted to charge and that Pennantia should be able to enforce the terms of the CTMA even though it was a non-party, Pennantia has not provided the Court with sufficient information to permit it to determine the amounts it believes were properly billed to Pennantia. Pennantia has provided simply two short sentences in an accountant's declaration setting forth—without factual support or explanation—the difference between the amount Dove Cay was permitted to have charged under the Amendment 8 framework and what Dove Cay actually charged. (*See* ECF No. 42 ¶¶ 62–63.) Pennantia has failed to satisfy its burden on this motion, whether that burden is characterized as establishing a clear or substantial likelihood of success on the merits or even a simple likelihood of success.

### ii.  Interest as Part of Maritime Liens

Finally, Pennantia contends that charges for interest should not be included in the quantum of Dove Cay's asserted maritime liens because, "regardless of the calculation of interest, none is cognizable as a maritime lien on the Vessels . . . ." (Mot. at 23.) In support of this proposition, Pennantia cites cases declining to include interest in maritime liens because of the parties' delay in asserting the liens at issue. (*See, e.g., The OSWEGO NO. 2*, 23 F. Supp. 311, 312 (W.D.N.Y. 1938) ("Interest will not be allowed because of the delay in asserting the lien."); *New Terminal Stevedoring Co. v. M/V BELNOR*, 86-mc-274, 1988 WL 71731498, at *1 (D. Mass. Apr. 15, 1988) (permitting only interest accrued after assertion of maritime lien demand). Contrary to Pennantia's suggestion, those cases do not establish an absolute bar against the inclusion of interest in maritime liens. *See, e.g., ING Bank, N.V. v. M/V Charana Naree*, 446 F. Supp. 3d 163, 176–77 (W.D. La. 2020) ("The court has discretion to award pre-judgment interest under

13

a CIMLA maritime lien . . . [and t]he contractual rate of interest is just a starting point . . . ."). Pennantia has not shown here that interest should not be included in the amount of Dove Cay's asserted maritime liens.

### C. Balance of Equities and Public Interest

Finally, Pennantia has failed to show that the balance of equities or the public interest favors the issuance of a preliminary injunction. Pennantia contends that the balance of equities favors injunctive relief because that relief would only require Dove Cay and Rose Cay to satisfy their contractual obligations, while a denial of injunctive relief would—by virtue of the maritime liens on Pennantia's vessels—impede or destroy Pennantia's ability to conclude a sale of the vessels. (Mot. at 27.) Pennantia also contends that the public has an interest in parties abiding by their contractual commitments (*id.*) and in preventing false lien claims (Reply at 15). A possible hindrance to the potential sale of the Pennantia Fleet is insufficient to tilt the balance of equities in Pennantia's favor given that any harms to Pennantia will be compensable by an award of monetary damages. Pennantia's generalized contentions about the public's interest in upholding contracts and preventing false lien claims are true but unpersuasive, and Pennantia fails to identify any specific public interest served by a preliminary injunction in this action.

### IV. CONCLUSION

This action is at its core a contract dispute between the owner of a fleet of ships and the manager of that fleet. On the record of this action as it exists today, Pennantia has failed to carry its burden of showing irreparable harm in the absence of a preliminary injunction prohibiting Dove Cay from pursuing its Notices of Claims of Maritime Liens. Further, Pennantia has failed to establish that it is likely to succeed on the merits of its claims; it has also failed to show either that the balance of equities or that the public interest favors the issuance of a preliminary injunction.

Accordingly, Pennantia's motion for a preliminary injunction preventing defendants from pursuing Dove Cay's Notices of Claims of Maritime Liens is denied.

Dated: New York, New York
August 18, 2025

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.