

The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – Phone
(212) 490-6070 - Fax

1599 Post Road East
Westport, CT 06880
(203) 256-8600 – Phone
(203) 255-5700 - Phone
(203) 256-8615 – Fax
(203) 255-5702 - Fax

August 21, 2025

**_Via ECF_**
Honorable Sidney H. Stein
United Stated District Court Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

**Re:**     ***Pennantia, LLC v. Rose Cay Maritime, LLC and Dove Cay, LLC***
U.S. District Court – Southern District of New York
Case No.        25-cv-5904 SHS
LMP Ref.:      6816

Dear Judge Stein,

We represent Defendant, Dove Cay, LLC ("DC") and submit this letter motion pursuant to this Court's equitable powers while sitting in Admiralty.[1]  Plaintiff Pennantia's Complaint designated this matter as "In Admiralty."  *See* ECF No. 1.  Historically, when the Court sits "In Admiralty" it has inherent equitable powers to afford relief to the parties appearing before it.  *See, Wilmington Tr. Co. v. M/V Miss B. Haven V,* 760 F. Supp. 2d 364, 366 (S.D.N.Y. 2010) (citing *The Sparkle,* 22 F. Cas. 874, 875, F. Cas. No. 13207 (E.D.N.Y. 1874) (No. 13, 207)("A court of admiralty is a court of equity . . . .")).

DC relies on the Court's equitable powers to afford it the relief sought herein. "Federal courts have 'inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices.'" *International Prods. Corp. v. Koons,* 325 F.2d 403, 408 (2d Cir. 1963) (*quoting Gumbel v. Pitkin,* 124 U.S. 131, 144, 8 S. Ct. 379, 31 L. Ed. 374 (1888)); *see also Schlaifer Nance & Co., Inc. v. Estate of Warhol,* 742 F. Supp. 165, 166 (S.D.N.Y. 1990) (*quoting Koons*); and *Royal Indian Raj Int'l Corp. v. Domains by Proxy, Inc*., 2011 U.S. Dist. LEXIS 78660, at *9 (S.D.N.Y. July 20, 2011).

---

[1] In the normal course, DC would have made this as a traditional motion on notice pursuant to Local Rule 7.1, however, due to the urgency of the funding situation that Pennantia has created by refusing to properly fund the Vessel Operating Account for the Pennantia Fleet, DC must result to more expedient measures, such as the instant letter motion.

DC has previously advised (ECF No. 37), and as was discussed at last week's hearing before your Honor (ECF Minute Entry, August 1, 2025), DC has been saddled with any entirely inequitable and untenable situation created by Pennantia. RCM and DC terminated agreements for the Pennantia fleet of vessels due to Pennantia's chronic funding arrears, under-funding and non-funding of critical expenses for the operation of the Pennantia Fleet.

Following RCM's termination of the ship management agreement, DC likewise gave notice to Pennantia on July 31, 2025 that it would not continue to act as the crewing and technical manager. *See* July 31, 2025 letter from Patrick F. Lennon (DC counsel) to Michael Frevola (Pennantia counsel) attached hereto as Exhibit 1. DC's July 31, 2025 notice provided the terms to which DC would agree to continue to perform its necessary functions, until Pennantia appointed a replacement crewing and technical manager. The notice served to advise Pennantia of the terms and rates pursuant to which DC would provide ongoing technical management services post-termination. Pennantia has simply ignored the notice, even after reading it aloud to your Honor, and sought to continue to take DC's services without providing any compensation to DC. The simplest response from Pennantia would have been a proposal to have DC continue on terms to date notwithstanding RCM's termination of the ship management agreement and DC's notice. Pennantia has negligently failed to engage a replacement manager and in the meantime taken advantage of DC's continued services to the Pennantia fleet without providing any funding under the Court's Order.

Pennantia has neither replaced RCM as ship manager nor DC as technical manager, nor sold its fleet. RCM continues to hold the Document of Compliance required to commercially operate the Pennantia Fleet. DC has continued to furnish the crew, supplies and other necessaries to the Pennantia fleet which are operated pursuant to a Coast Guard compliant Safety Management System. Such services have been continuously provided in the absence of any agreement with Pennantia and without any funding from Pennantia to continue to do so. At this time, however, DC has been constrained in the absence of funding by Pennantia, to demobilize the Pennantia fleet and reduce crews to safe manning. These efforts are being taken in coordination with the U.S. Coast Guard. Making matters worse, and underscoring Pennantia's bad faith, Pennantia has been paying and/or attempting to arrange payment to third-parties for services to the Pennantia fleet (as well as its lawyers, whom it is paying out of fleet revenue) while also trying to give orders to DC for vessel operations and demanding that DC direct the crew to follow these orders in the absence of any funding provided to compensate that very same crew. *See* Email exchanges by Pennantia and DC counsel dated August 12, 2025 attached as Exhibit 2.

In substantiation of its position that Pennantia's last remittance to RCM failed to pay for any expenses for the Pennantia fleet from August 1, 2025 forward, DC includes its accounting of these funds received from Pennantia. *See* DC accounting attached hereto as Exhibit 3. As shown by this accounting, Pennantia's July 29, 2025 payment of $1.6M resulted in a funding shortfall of roughly $800,000 for **July**. Additional funds of approximately $763,000 were applied by RCM but this still resulted in a shortfall of roughly $20,000 for **July**. It is now approaching three full weeks into **August** and Pennantia refuses to make any further funding for DC's continued provision of services.

As a consequence, and as Pennantia was previously made aware, and is referred to above, DC is now undertaking to remove its crews from the Pennantia fleet in coordination with the U.S. Coast Gurd.  Pennantia was previously requested to advise its plan and point of contact for requisite U.S. Coast Guard communications so that DC may safely coordinate demobilization.  DC also called upon Pennantia to coordinate with U.S. Coast Guard for the orderly transition of vessel operations, ideally with a 45-day notice period.  Furthermore, it has also requested that sufficient funds be provided for crew, fuel, tank cleaning, hurricane response, insurance, port dues, and other vessel necessaries for the 45-day period with such funds  be held by a mutually agreed upon escrow agent. Rather than cooperate, Pennantia has ignored these requests, insisted DC and RCM maintain full crew and management responsibilities, made no payment nor provided requisite funding for necessaries, and has consistently hid behind the Court's order with no end in sight – while also soliciting DC's crew employees for future employment – which constitutes tortious interference and breaches Pennantia's covenant of good faith and fair dealing.

Both RCM and DC noticed Pennantia to not misrepresent the continued Court ordered engagement to third parties, as the relationship is formally terminated. However, Pennantia subsequently represented to the insurance markets that in fact, DC and RCM were ordered by the Court to maintain the status quo, and now weeks later there remains no payment, no communicated plan, no funding for operations or necessaries, just demands for free work, and an inequitable attempt to take advantage of the Court's order. Within U.S. Coast Guard guidelines, DC has been forced to reduce manning, and respectfully asks the Cort to order Pennantia to have its barges cleaned to ensure they are gas free and to engage a replacement ship manager. DC and RCM should not be compelled to maintain management, crew, or any other costs without payment. Recently, DC discharged cargo from one of Pennantia's barges despite nonpayment and completed another equipment move and demanded payment.  Pennantia failed to remit any payment. A continued dialogue has been maintained with the Mediator but no payment has been made by Pennantia. All parties were aware that services would not, and could not, continue unless payment was received, to which Owners requested help moving barges in New York harbor and shifting other vessels, which DC did before de-crewing at secure facilities per U.S. Coast Guard's guidance. Pennantia continues to fail to meet its obligations under law and is fully derelict and enjoying a free ride while also misrepresenting to the market RCM and DC's actions and status. Pennantia should not be permitted to continuously seek refuge in the Court's Order, with no end in sight. DC and RCM simply cannot continue while Pennantia shirks its financial and maritime responsibilities.

In the aforesaid circumstances, DC respectfully asks the Court to direct Pennantia to immediately remit funding required for DC to continue to perform technical management services OR to continue to demobilize the vessels in accordance with the notice provided to the U.S. Coast Guard and in conformity with any and all of its orders issued following such notice.  For the former, DC requests that the Court direct Pennantia to remit $3,880,050 to DC to cover part of Pennantia's August obligations, for services already rendered, which are due immediately as detailed on the attached DC invoice.  *See* DC August 2015 invoice to Pennantia attached hereto as Exhibit 4.  For the latter, the Court would necessarily be guided by the orders of the U.S. Coast Guard in its capacity as flag state with authority over the Pennantia fleet.  To the extent that such orders required services of DC this Court should order that Pennantia provide adequate compensation to DC.

We appreciate your Honor's time and attention to the foregoing and are available to discuss the same at the convenience of the Court.

Respectfully submitted,

Kevin J. Lennon

KJL/bhs
Encl.