# Holland & Knight

787 Seventh Avenue, 31st Floor | New York, NY 10019 | T 212.513.3200 | F 212.385.9010
Holland & Knight LLP | www.hklaw.com

Michael Frevola, Partner
212.513.3516

August 25, 2025

Honorable Sidney H. Stein
United Stated District Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY

**Re:   25-cv-5904, Pennantia, LLC v. Rose Cay Maritime, LLC and Dove Cay, LLC**
       **Response to Dove Cay Letter of Friday, August 22, 2025 [Doc. 50]**

Your Honor,

       Friday afternoon's letter from counsel for Defendant Dove Cay, LLC ("DC") appears designed to use projection to draw the Court's attention away from the issue which deserves the Court's primary attention: ***RCM and DC have reneged on their representations to this Court that the Pennantia Fleet vessels would be properly manned for 30 days following the termination of the Ship Management Agreement.***   If RCM and DC have done this, then they should neither be permitted to recover under law (because they have not performed as they claim they have) nor equity (because they have unclean hands).

       Accompanying this letter is the Declaration of Michael Ring dated August 25, 2025 ("Ring Decl."), which details – in some cases minute-by-minute – the events of last week in Port Arthur, Texas and the actions by RCM/DC showing that they intentionally removed crewmembers from a Pennantia Fleet tug/barge combination.  That removal of crew by RCM and DC:

       (1) fouled an active vessel berth in the Port Arthur area;

       (2) interfered with vessel navigation in the Port Arthur area in that it precluded a vessel
           from being able to berth at the berth that it had been scheduled to use;

       (3) caused the intercession of the U.S. Coast Guard, and

       (4) raised the possibility of Pennantia having operational or financial penalties (perhaps as
           great as $100,000 per day) imposed.

Atlanta | Austin | Birmingham | Boston | Century City | Charlotte | Chattanooga | Chicago | Dallas | Denver | Fort Lauderdale
Houston | Jacksonville | Los Angeles | Miami | Nashville | Newport Beach | New York | Orlando | Philadelphia | Portland
Richmond | San Francisco | Seattle | Stamford | Tallahassee | Tampa | Tysons | Washington, D.C. | West Palm Beach

2 –   Honorable Sidney H. Stein
August 25, 2025

To summarize Mr. Ring's declaration, he learned from LT Porrata of the U.S. Coast Guard that RCM/DC advised the U.S. Coast Guard Marine Safety Unit Port Arthur last weekend (on Saturday, August 16) that RCM/DC were de-crewing the *Tug REBEKAH ROSE* and *Tank Barge RCM 245* (the "Vessels"), which Vessels were berthed at an active pier that was scheduled to receive another vessel.  Ring Decl., ¶¶ 4-6.  Review of DC's counsel's letter of Friday afternoon shows that DC agrees with this fact – DC (through Mr. Parrott) had alerted the Coast Guard that it was de-crewing the Vessels.  *See* Doc. 50, at 3 (Parrott summary of conversation with Coast Guard's LT Porrata on August 16 that advised "about our [DC's] ***intentions to de-crew***") (emphasis added).  Comparing the timing of Mr. Parrott's telephone call with LT Porrata (which he claims took place slightly after 1 pm) to Mr. Ring's declaration (which provides proof of mobile phone calls and text messages with LT Porrata slightly after 3 pm), it is clear that the Coast Guard received RCM/DC's de-crewing notice and immediately contacted Pennantia to determine what Pennantia was going to do to comply with the Coast Guard's required manning regulations.  And, to be clear, this was taking place a week before the expiration of the 30 day period that RCM/DC had told the Court during which it would continue to man the Pennantia vessels in accordance with U.S. Coast Guard regulations.

As described by Mr. Ring's declaration, the Coast Guard contacted Pennantia to inquire what Pennantia (as the owners) intended to do in light of the fact that the Vessels were required to move and that cargo remained onboard the *RCM 245*.  Ring Decl., ¶¶ 6-12, 17 & Exs. 3, 5, 9. Again, Mr. Parrott's summary does not contradict this account.  On Sunday, August 17, he claimed to have spoken with LT Porrata and that LT Porrata "had contacted the owner [Pennantia] who told her that he [Pennantia] could not reach the 'operator' [RCM/DC]."  Doc. 50, at 3.  In other words, Pennantia was trying to reach its ship manager and crew manager (i.e., RCM/DC) to determine the Vessels' crew status and Pennantia was unable to reach RCM/DC.

Mr. Parrot's summary of his communications with the Coast Guard recited in DC's counsel's letter conveniently terminates on Sunday, August 17, 2025.  *See id.* at 3.  It is hardly surprising that the following day (Monday, August 18) was the day when events started to move very quickly.  Upon further discussions with the Coast Guard on Monday, August 18, 2025, Mr. Ring was advised that the Vessels were now unmanned and were in non-compliance of Coast Guard manning regulations, which could result in a deficiency finding restricting the Vessels' ability to move (at the low end) up to fines of up to $100,000 per day (on the high end).  Ring Decl., ¶ 13 & Ex. 7.  A further conversation later that day by Mr. Ring with the Coast Guard confirmed the *Tug REBEKAH ROSE* required a crew of five and the vessel scheduled to use the berth fouled by the Vessels was arriving the following day (Tuesday).  *Id.* ¶¶ 15-16 & Exs. 8-9.

Pennantia also learned from Holland & Knight LLP partner Sean Pribyl – a former U.S. Coast Guard officer and member of the Coast Guard's Judge Advocate General corps – that Mr. Pribyl had been advised by the Coast Guard that "the barge [i.e., *RCM 245*] **had to be manned due to residual cargo on board** and the generator for the gas [inert] system **needed a person to operate**".  *Id.* ¶ 17 & Ex. 9 (emphasis added).  Simply put, the *Tank Barge RCM 245* posed a

3 –   Honorable Sidney H. Stein
     August 25, 2025

pollution threat with cargo remaining on board, as well as an explosive threat because the barge's tanks had not been gas-freed and there was no crew member on board that could manage the inerting system in the barge's tanks to help prevent potential spontaneous combustion.

With RCM and DC having abdicated their management and crewing role for the Vessels on August 17 – which role they had promised to this Court would be performed for 30 days from July 24 (i.e., until Saturday, August 23) – Pennantia was left to scramble to seek to find an option by which it could crew the Vessels. *Id.* ¶ 16 & Ex. 9. This dialogue between Pennantia and the Coast Guard continued until Wednesday, August 20, 2025, when the Vessels were moved during the mid-afternoon. *Id.* ¶ 22 & Ex. 12. To Pennantia's knowledge, the Vessels were moved together by a local towing service in a "dead stick" move – i.e., a move in which outside tugs are brought in to move an unpowered vessel(s) – as the *Tug REBEKAH ROSE* remained unmanned. *Id.* ¶ 24.

Pennantia expects to be invoiced for the move of the Vessels and Pennantia will pay that invoice directly. If the *Tug REBEKAH ROSE* had been manned, however, the Vessels could have performed the move without any outside tug assistance. Instead, an outside tugs (or tugs) apparently were used (likely costing over $10,000) for a move that should have been effected by RCM/DC without external cost if they truly had been performing their jobs. Apparently RCM and/or DC arranged this move – likely because of the U.S. Coast Guard scrutiny – but the Vessels (at the least the *Tug REBEKAH ROSE*) remain undermanned according to the Coast Guard command having jurisdiction over the Vessels.

DC asserts that none of the vessels that it is crewing have manning deficiencies. It is possible this was the case for many of the Pennantia vessels when its counsel's letter was filed Friday. It may be that DC has added crew recently to address the manning shortfalls so that it could tell this Court that the vessel were properly manned. It also could be because DC obtained revised manning certificates on the vessels that permit no crewmembers. *See* Doc. 50, at 5-7 (Certificate of Inspection for *Tank Barge RCM 225* dated August 13, 2025, authorizing no manning on the particular vessel).[1]

To be clear, it is possible that DC is in compliance with U.S. Coast Guard manning requirements currently. That is not the point. The point is that RCM/DC breached their duty to safely and properly man Pennantia Fleet vessels despite promising this Court they would do so. The Ring Declaration provides explicit information – and a dozen contemporaneous exhibits –

---

[1] Using the Certificate of Inspection for *Tank Barge RCM 225* – now berthed in Newark, New Jersey and not required to operate, move, and with no cargo on board – DC claims that "there are no minimum manning requirements for the barges in Pennantia's fleet." Doc. 50, at 2. This is comparing apples to oranges. When vessels have cargo on board which can cause explosions or pollution, or if they are required to move (i.e., navigate), they must be manned. On the basis of the numerous communications from multiple members of the U.S. Coast Guard Marine Safety Unit Port Arthur between Saturday, August 16 and Thursday, August 21, this latter situation (hazardous cargo and required to navigate) is what unfolded in Port Arthur, Texas last week.

4 –   Honorable Sidney H. Stein
       August 25, 2025

detailing that breach. Pennantia should not have to play a game of maritime "whack-a-mole" seeking to ensure that the Pennantia vessels were properly manned during the promised 30-day transition period. And DC certainly should not now be able to draw upon this Court's equitable powers to obtain nearly $4 million for their "services" when (1) DC/RCM misrepresented to this Court (repeatedly) that they would comply with Coast Guard manning regulations and they did not, (2) the crewing services provided were drawn down to minimal manning, yet DC and RCM seek payment for full manning, (3) the DC/RCM skeleton manning has caused Pennantia to incur costs that it should not have incurred if the vessels were manned in accordance with Coast Guard regulations, and (4) DC and RCM already were paid for their August 2025 services and misapplied those funds. As explained in the Ring Declaration, Pennantia has identified a replacement manager/operator and is in the process of seeking to transition the management/operation duties to that new manager this week. Ring Decl., ¶ 26.

As a final point, the undersigned takes umbrage with DC's counsel's statement contained at the bottom of page 3 of its letter. DC's counsel states that "Pennantia's counsel continues a disturbing penchant to misrepresent what DC and/or RCM counsel has stated to this Court." Doc. 50, at 3. DC's counsel then claims that Pennantia's counsel misrepresents that the $1.6 million paid by Pennantia was first to be used to bridge 30-days of operating expenses, then it was reduced to August 1, 2025. *See id.* DC's counsel then purports to support Pennantia's counsel's "misrepresentation" by stating that "the transcript fails to substantiate whatsoever his incorrect assertions." *See id.* These accusations are demonstrably incorrect as discussed below.

The undersigned has attached for the Court's recollection a photograph of the hand-written stipulation prepared during the July 25, 2025 court conference regarding this issue and signed by counsel for Pennantia, DC and RCM. As the Court may recall, that court conference lasted over 3½ hours and the Court dismissed the court reporter once the conference devolved into settlement discussions. ***That is why there is no transcript of this particular issue.*** As can be seen in the attached photograph, the stipulation initially read "for the next 30 days of services" and was changed to "operating through Thursday, July 31, 2025." The undersigned suspects that Your Honor may remember this change from 30 days to a mere 6 days as Your Honor raised the issue with RCM's and DC's counsel as well when their position changed on the issue.

We look forward to receiving the Court's decision on this issue.

Respectfully submitted,

HOLLAND & KNIGHT LLP

  *s/ Michael J. Frevola*
Michael Frevola

7/25/2025

The parties agree that:

1. Defendants Rose Cay Maritime, LLC and Dove Cay, LLC will be provided with $1.6 million in operating funds ~~for the next 30 days of services;~~ operating through Thursday, ~~July Aug.~~ 31, 2025.

2. Plaintiff Pennantia, LLC will pay the $1.6 million to RCM + DC by close of business (5 PM EDT) on Monday, July 28, 2025;

3. The parties agree to mediate their disputes with a professional mediator on either Wednesday, July 30 or Thursday, July 31, 2025;

4. The parties will report to the Court promptly at the end of the mediation as to the results and any relief potentially desired from the Court.

Counsel for Plaintiffs: [signed] 7/25/25

Rose Cay Maritime LLC by: John Tresan [signed]

Dove Cay, LLC by: [signed]

1