Execution Version

# CONFIDENTIAL SETTLEMENT AGREEMENT

This Confidential Settlement Agreement ("Agreement") is entered into by and between PENNANTIA, LLC ("PENNANTIA"), on the one hand, and ROSE CAY MARITIME, LLC ("RC") and DOVE CAY, LLC ("DC"), on the other hand. PENNANTIA, RC and DC shall collectively be referred to herein as the "Parties" and each a "Party." RC and DC shall collectively be referred to herein as "RCDC". Following execution by the signatories hereto, the effective date of this Agreement shall be September 5, 2025 (the "Effective Date").

# RECITALS

WHEREAS, on March 27, 2025, PENNANTIA and several wholly-owned LLCs of PENNANTIA's filed a Verified Complaint against several vessels owned by the respective wholly-owned LLCs in the Eastern District of New York styled as *Pennantia, LLC et al. v. Tank Barge RCM 252 (Official # 1292046) et al.,* Index No. 1:25cv1711, in which proceeding PENNANTIA sought access to the defendant vessels and related relief (the "EDNY Proceeding");

WHEREAS, on May 7, 2025, PENNANTIA and several wholly-owned LLCs of PENNANTIA's filed a Verified Complaint against several vessels owned by the respective wholly-owned LLCs in the Southern District of Texas styled as *Pennantia, LLC et al. v. Tank Barge RCM 270 (Official # 1257373) et al.,* Index No. 3:25cv137, in which proceeding PENNANTIA sought access to the defendant vessels and related relief (the "SDTex Proceeding");

WHEREAS, on July 18, 2025, PENNANTIA filed a Complaint (the "Complaint") against RC and DC in the Southern District of New York styled as *Pennantia, LLC v. Rose Cay Maritime, LLC and Dove Cay LLC,* Index No. 1:25cv5904, asserting four counts of alleged breach of contract and requested declaratory relief (the "SDNY Proceeding");

WHEREAS, by letter dated July 24, 2025, counsel for RC gave notice to counsel to PENNANTIA of RC's termination of the Shipman;

WHEREAS, DC has asserted rights to alleged maritime lien claims against the *ANNA ROSE*, *LYNNE M. ROSE*, *JORDAN ROSE*, *REBEKAH ROSE*, *SUSAN ROSE*, *CINDY ROSE*, *JESSE ROSE*, and *JOAN ROSE* and the tank barges *RCM 210*, *RCM 225*, *RCM 242*, *RCM 245*, *RCM 250*, *RCM 252*, *RCM 260*, *RCM 262*, *RCM 270*, and *RCM 295* (the "Vessels" and each a "Vessel," which Vessels comprise the "Pennantia Fleet") arising from or in relation to a ship management agreement executed between PENNANTIA and RC dated August 8, 2021 (the "Shipman") and/or DC's technical management and crewing of the Pennantia Fleet, and DC filed Notices of Claims of Liens against the Vessels with the National Vessel Documentation Center ("NVDC") (collectively, "Lien Claims");

WHEREAS, RC and DC dispute the allegations in the Complaint and have asserted in court filings that DC has asserted the right to lien property of PENNANTIA to satisfy certain payments alleged to be due and owing from PENNANTIA;

WHEREAS, PENNANTIA disputes the allegations of RC and DC;

WHEREAS, DC in exercising its alleged lien rights, filed a complaint in Panama against PENNANTIA, Lynne M. Rose LLC, RCM 270, LLC, and against the vessels *LYNN M. ROSE* and *RCM 270*, and arrested said vessels in Panama on August 2, 2025 (the "Panamanian Action," which together with the EDNY Proceeding, the SDTex Proceeding, and the SDNY Proceeding, shall be referred to collectively as "the Lawsuits");

WHEREAS, the Parties submitted their dispute for mediation on July 30, 2025, appearing live on that date and, thereafter, the mediation having been conducted by telephone, email and video conferencing;

WHEREAS, RCDC's management of all Vessels in the Pennantia Fleet has ended with the exception of the *LYNNE M. ROSE*/*RCM 270* currently under arrest in Panama;

WHEREAS, as a result of the mediation, the Parties desire to settle their differences and avoid further expense, time, effort and uncertainty in regard to the Lawsuits referenced herein; and

WHEREAS, the Parties have agreed to a settlement of their disputes and other matters as more particularly set forth in this Agreement.

**NOW THEREFORE**, in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions:

1. **Recitals:** The Parties acknowledge that all the paragraphs, including without limitation the "WHEREAS" clauses, preceding Paragraph 1 are incorporated as material parts of this Agreement.

2. **No Admission of Liability:** The Parties acknowledge that this Agreement (including any of its discrete sub-parts) is not and shall not be construed as an admission by any Party or their agents of any liability or any act of wrongdoing whatsoever, including without limitation, any violation of: (1) any federal, state or local law, statute, regulation, code or ordinance; or (2) any legal, common law or equitable duty owed by one Party to another.

3. **Settlement Terms:** The Parties agree to the following terms in full and final settlement of their dispute:

    (i) PENNANTIA shall pay to DC the total sum of ▬▬▬▬ (the "Settlement Amount") in the following manner, pursuant to bank wire instructions to be separately provided by counsel for DC:

    a. ▬▬▬▬ to be paid on the Effective Date. Such payment shall be due and payable in full, without set-off, deduction, counterclaim, or withholding.

2

b.  ▮▮▮▮▮ to be paid 48 hours after tender of valid Notice of Readiness at the *LYNNE M. ROSE/RCM 270*'s first port of discharge pursuant to the valid direction by the Charterer, unless PENNANTIA directs the payment of this amount earlier. Such payment shall be due and payable in full, without set-off, deduction, counterclaim, or withholding.

(ii)  Upon PENNANTIA's payment of ▮▮▮▮▮ on the Effective Date, RCDC will (a) take the necessary steps to cause the arrest of the *LYNNE M. ROSE* and *RCM 270* to be lifted and will immediately prepare for and re-commence its voyage to the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and (b) contemporaneously with or immediately following such lifting of the arrest order, DC and PENNANTIA shall, together with Lynne M. Rose LLC, RCM 270, LLC, and Pennantia, LLC, take such other actions as appropriate under applicable law and procedure in Panama to discontinue the Panamanian Action as to all parties and vessels, with prejudice, and stipulating that no costs and/or damages have been caused by the claim and/or arrest.

(iii) Upon PENNANTIA's payment of ▮▮▮▮▮ pursuant to Section 3(i)(b), DC shall within one New York business day file with the NVDC satisfactions/releases of all Lien Claims filed against the Vessels with the NVDC, and deliver to PENNANTIA copies of such satisfactions and releases filed with the NVDC.

(iv) On the Effective Date, 



PENNANTIA will assume management of the *LYNNE M. ROSE* and *RCM 270* on the later of 24 hours after the vessels complete discharge of the cargo currently on board, or arrival at the Re-delivery Location, at which time RCDC's management of the *LYNNE M. ROSE* and the *RCM 270* will terminate.

(v)   PENNANTIA undertakes the obligation to pay for all third-party vendor expenses for the operation of the Vessels. All third-party vendor quotes, estimate and invoices to be sent to PENNANTIA.

(vi)  Commencing on the Effective Date, and so long as PENNANTIA is not in breach of its payment obligations hereunder, RCDC will provide the following services (the subsections (a)-(c) below referred to as "Services"):

a.

b.

c.

d.



  e. ████████████████████████████

  f. ████████████████████████████

(vii)  RCDC will comply with valid directions or orders to discharge the cargo currently on-board the *LYNNE M. ROSE/RCM 270* after tendering Notice of Readiness.

(viii)  Upon the satisfaction and occurrence of the conditions in Section 3(ii) until re-delivery, the Parties stipulate and agree that the provisions in ███████████ ████████████ shall apply to RCDC's provision of the Services for the LYNNE M. ROSE and RCM 270; provided, however, that the ████████████ ████████████████████ shall not apply to claims between the Parties arising out of breach of this Agreement, which shall be governed exclusively by the remedies otherwise available under this Agreement; provided further, that the ████████████████████████████████████ in effect during the applicable period for the Services hereunder shall survive termination of this Agreement.

  4.  **Mutual Release:** (a) Upon the satisfaction of the terms of paragraph 3 above, each of Pennantia, LLC, ████████████████████████████████████ (the "Pennantia Parties"), on the one hand, and RC, DC, ████████████████ ████████████ (the "RCDC Parties"), on the other hand, and their representatives, administrators, employees, attorneys, agents, successors, assigns, assignors, assignees, partners, limited partners, investment advisors, accountants, legal representatives, insurers, affiliates, parent-companies, and predecessors (collectively, as the case may be as to either a Pennantia Party or a RCDC Party, the "Releasing Party"), hereby fully, completely, and forever release, give up and discharges the other Party and its respective current and former partners, shareholders, members, representatives, administrators, employees, attorneys, agents, successors, assigns, assignors, assignees, partners, limited partners, investment advisors, accountants, legal representatives, insurers, affiliates, parent-companies, and predecessors (collectively, as the case may be as to either a Pennantia Party or a RCDC Party, the "Released Party") from any and all debts, demands, actions, suits, damages, losses, sanctions, liens, obligations, reimbursement for attorneys' fees and costs, claims and rights or causes of action of whatever kind or description, whether known or unknown, asserted or unasserted, whether past or present, whether suspected or unsuspected, whether liquidated or unliquidated, whether arising in common law or by statute or by equity, whether based on contract, breach of warranty, indemnification, contribution, tort, strict liability, trespass, nuisance, or otherwise, or whether involving property damage, loss of use of property, or other financial or economic harm or any other form of injury arising out of or stemming from the disputes, contracts and litigations referred to herein or any other claim or claims which one Party may have against the other, as well as of and from any and all claims, defenses, charges, allegations, demands, actions, causes of action, counterclaims, third-party claims, damages, punitive damages, penalties, injuries, losses, liens, costs, attorneys' fees,

expenses, compensation, and any and all incidental or consequential damages, whether known, not now known, claimed, asserted, suspected or discoverable by the Releasing Party arising out of or stemming from the disputes, Lien Claims, contracts, Lawsuits or litigations referenced herein, from the beginning of time to the Effective Date of this Agreement. (b) Each Releasing Party agrees and acknowledges that they may have sustained unknown or unforeseen losses, costs, expenses, liabilities, claims, injuries, damages and consequences thereof arising out of or stemming from the disputes, Lien Claims, contracts, Lawsuits or litigations referred to herein which may be at this time unknown, unrecognized and not contemplated. By executing this Agreement, it is the full intent of the Releasing Party to release the Released Party from any and all liability for such unknown and/or unforeseen losses, costs, expenses, liabilities, claims, damages and consequences thereof arising out of or stemming from the disputes, Lien Claims, contracts, Lawsuits or litigations referred to herein, including those not known, recognized nor contemplated, resulting directly or indirectly from or arising in any way from the disputes, Lien Claims, contracts, Lawsuits or litigation referred to herein.

5.  **No Rights to Name, Trademarks, IP, or otherwise:** PENNANTIA shall have no rights to and may not use any RC or DC name, trade name, trademark, service mark, logo or intellectual property of RC or DC ("RCDC IP Rights") without explicit prior written consent. With respect to the DC or DC name, service mark, and or logo painted on the stack and/or exterior of the Vessels, PENNANTIA covenants and warrants that, within seven days of the Effective Date, or in the case of the *LYNNE M. ROSE/RCM 270* within seven days of the re-delivery, it will cause the removal or replacement of such RC or DC name, service mark, and or logo on the stack and/or exterior of the Vessels.

6.  **Covenant Not to Sue:** Except as required by court order, subpoena or other legal process, each Pennantia Party and each RCDC Party further agree that neither it, nor any person or entity acting on its behalf, will file, charge, claim, sue, or encourage, any legal action or administrative proceeding against a Released Party arising out of the disputes, contracts and litigations referred to herein, except with respect to actions to enforce breach of this Agreement.

7.  **Confidentiality**: The Parties hereby agree to the following regarding the confidentiality of this Agreement:

    a.  The Parties agree that the terms of this Agreement are confidential and will not be disclosed by them, their agents or attorneys to third parties except: 1) pursuant to a lawful subpoena or court order; 2) as may be necessary for tax preparation or reporting purposes; 3) for regulatory purposes; 4) their accountants, lenders, attorneys, agents, brokers, insurers, and prospective insurers, and where necessary to share with the USCG and classification societies in connection with turnover of the vessels; 5) in connection with enforcement of this Agreement; or 6) in the defense of any claims asserted against a Party.

    b.  The Parties agree in good faith to take all reasonable measures available to them to ensure that the terms of this Agreement are not disclosed in any manner to third persons (except as provided above) by individuals in their employ or control. The Parties further agree that there will be no publicity or public comment about the

Agreement, its contents, or the negotiations leading up to this Agreement. Such negotiations have been kept, and will remain, confidential and will not be disclosed to third parties.

c. The Parties further agree that this Agreement shall be filed with the Court under seal, protective order, redaction, or other means to maintain the confidentiality of the terms herein so as to be "So Ordered."

8. **Drafting:** The Parties acknowledge that they were both represented by counsel and were able to consult with counsel regarding the drafting, review, and revisions to this Agreement, and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed against any of the Parties in the interpretation of this Agreement.

9. **Merger:** This Agreement constitutes the entire agreement between the Parties hereto with respect to the matters set forth herein and supersedes in its entirety any and all agreements and communications, whether written or oral, previously made in connection with the matter herein unless specifically noted otherwise herein. Any agreement to amend or modify the terms and conditions of this Agreement must be in writing and executed by the Parties hereto.

10. **Parties' Representations and Warranties:** The Parties hereby warrant, represent and acknowledge that: (a) they have the right and authority to execute this Agreement; (b) they have the right to receive the consideration given for this Agreement; (c) they have not sold, assigned, transferred, conveyed or otherwise alienated their respective claims; (d) the consideration received in connection with this Agreement is fair, reasonable, sufficient, just, adequate, and constitutes lawful consideration supporting the execution and enforceability of this Agreement; (e) through their duly authorized attorneys or representatives, they have carefully read and reviewed all provisions of this Agreement in full, and understand the terms of this Agreement and voluntarily agree to be bound thereby; and (f) they are entering into this Agreement based solely and exclusively upon their own analysis, arrived at with the assistance of their own counsel, experts, and/or other agents, of the facts and/or information of which they and/or their counsel are independently aware and not based upon or in reliance upon any statements and/or representations of any of the Released Parties, Releasing Parties, and/or any of their respective counsel (except to the extent such statements and/or representations are fully and expressly set forth herein). Each of the Pennantia Parties and RCDC Parties warrant, represent, and acknowledge that they have the right and authority to execute this Agreement for the purposes indicated on the applicable signature block. ████████████████████████████████████████████████████████████████████████ The Parties further acknowledge that they have read and understand the terms of this Agreement and the releases contained herein, and that they voluntarily accept the same.

11. **Governing Law and Jurisdiction:** This Agreement shall be deemed to be made and entered into in the State of New York, and shall in all respects be interpreted, enforced, and governed under the laws of New York. The Parties agree that the appropriate venue for any litigation brought to enforce this Agreement shall lie exclusively with the District Court for the

Southern District of New York, or, if that court refuses jurisdiction, in any court of competent jurisdiction in the City of New York, State of New York.

12. **Interpretation:** The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.  If any portion or provision of this Agreement (including, without implication of limitation, any portion or provision of any section of this Agreement) is legally determined to be unenforceable, the remainder of this Agreement shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law and said unenforceable portion or provision shall be deemed not to be a part of this Agreement.

13. **Enforcement**: In the event of a breach of this Agreement, the non-breaching party shall be entitled to recover its attorneys' fees and costs and collection costs incurred in connection with the enforcement of this Agreement. This Paragraph 13 shall be in addition to, and not in lieu of, any and all remedies that the Parties may have to enforce the terms of this Agreement.

14. **Headings:** The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

15. **Signatures in Counterparts:** This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original.  However, such counterparts shall together constitute one and the same document.  A facsimile or scanned copy of any Party's signature, including electronic signature, shall be deemed as legally binding as the original signatures.

16. **Reliance on Own Counsel:** In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party.  The Parties represent and acknowledge that, in executing this Agreement, they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other Party or by that other Party's agents, representatives or attorneys with regard to the subject matter, basis or effect of this Agreement or otherwise.

17. **Non-disparagement:** The Parties agree and covenant that each will not at any time make, publish, or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments, or statements concerning the other or its businesses, or any of its employees, officers, and existing and prospective customers, suppliers, investors and other associated third parties; provided, however, that the foregoing shall not restrict a Party from taking legal action to enforce this Agreement. To the extent that one Party has previously made statements that would, if made after the Effective Date of this Agreement, constitute a breach of this provision, such Party shall mitigate such statements or writings, to the reasonable satisfaction of the affected Party, such as by releasing retractions or other mitigating statements or actions.

18. 

**IN WITNESS WHEREOF**, and intending to be legally bound, each of the Parties hereto has caused this Agreement to be executed as of the date written below.

*Signature page follows*

*[signature: Michael R.]*

Pennantia LLC
By: Michael Ring, Authorized Signatory of Pennantia, LLC
Dated: September 4, 2025

---

Rose Cay Maritime, LLC
By:
Dated:

---

Dove Cay, LLC
By:
Dated:

The following execute and agree to be bound to paragraph 4, and with respect to the provisions expressly obligating a Pennantia Party and a RCDC Party:



Settlement Agreement – Signature Page

_____
Pennantia LLC
By:
Dated:

_____*Aly 2*_____
Rose Cay Maritime, LLC
By: Alex Porter
Dated: 9/4/25

_____*Aly 2*_____
Dove Cay, LLC
By: Alex Parker
Dated: 9/4/25

The following execute and agree to be bound to paragraph 4, and with respect to the provisions expressly obligating a Pennantia Party and a RCDC Party:



Pennantia LLC
By:
Dated:

_____
Rose Cay Maritime, LLC
By: Alex Parker
Dated: 4/4/25

_____
Dove Cay, LLC
By: Alex Parker
Dated: 4/4/25

The following execute and agree to be bound to paragraph 4, and with respect to the provisions expressly obligating a Pennantia Party and a RCDC Party:



September 5, 2025
N.Y.N.Y. So Ordered.
Sidney H. Stein

Settlement Agreement – Signature Page